IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────

MAXIMO DOE,

                    Petitioner,              Civil Action No.
                                             9:13-CV-0921 (DNH/DEP)

        v.

ADA PEREZ,

                    Respondent.

─────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PETITIONER:

MAXIMO DOE, *Pro se*
10-A-3480
Downstate Correctional Facility
Box F
Fishkill, NY 12524

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN         HANNAH S. LONG, ESQ.
New York State Attorney General   PAUL B. LYONS, ESQ.
120 Broadway                      Assistant Attorneys General
New York, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* petitioner Maximo Doe, a New York State prison inmate as a result of a six-count felony drug conviction, has commenced this proceeding pursuant to 28 U.S.C. § 2254, seeking the court's habeas intervention. In his petition, Doe asserts that his guilty plea was involuntary or unlawfully induced, due, in part, to his attorney's alleged ineffective representation during plea negotiations. For the reasons set forth below, I recommend a finding that petitioner is precluded from raising the two grounds set forth in his petition based upon a determination by a state appellate court that consideration of those claims is precluded by his failure to move for leave to withdraw his guilty plea or to vacate his judgment of conviction.

I.    <u>BACKGROUND</u>

On May 7, 2008, petitioner and twenty-three co-defendants were indicted by a Schenectady County grand jury and accused of various crimes related to a drug conspiracy allegedly involving large quantities of cocaine and heroin imported from New York City and distributed into the Upstate New York community. [Dkt. No. 3-1 at 12-65](). Petitioner, who is named in six of the eighty-four counts of the indictment , was charged with second- and fourth-degree conspiracy and criminal sale of a controlled substance in the

first, second, and third degrees.[1] *Id.* at 12-32. If convicted as charged, Doe faced a maximum sentence of two determinate terms of imprisonment of between twelve and twenty-four years for each count of first-degree criminal sale of a controlled substance, which is an A-I felony. N.Y. Penal Law §§ 60.04(2), 70.71(3)(b)(ii); *see also* Dkt. No. 3-1 at 94. In addition, those terms of imprisonment, as well as any others imposed for the additional charges, could have been imposed on a consecutive basis. N.Y. Penal Law § 70.25(1)(2).

Petitioner was taken into custody more than one year after the return of the indictment and resulting issuance of an arrest warrant, Dkt. No. 3-1 at 66-67, and was brought before Schenectady County Court Justice Karen A. Drago for arraignment on September 2, 2009, *id.* at 90-98. At that time, petitioner entered a plea of not guilty. *Id.* at 95.

Pretrial conferences in the matter were conducted in Schenectady County Court on December 2, 2009, and again on March 2, 2010, to address the possibility of a negotiated plea agreement. Dkt. 3-1 at 99-109. During the course of those discussions, Justice Drago announced that, in light of Doe's prior criminal history, she would not accept anything less than a plea of guilty to a Class A-II felony as a second felony offender non-violent

---

[1]     Petitioner was charged with two counts of first-degree criminal sale of a controlled substance. Dkt. No. 3-1 at 30, 31-32.

predicate, with an agreed-upon fourteen year determinate prison sentence and an additional five years of post-release supervision.[2] *Id.* at 101. The court adjourned the matter for petitioner's consideration of the plea offer, and the case was thereafter removed to Schenectady County Supreme Court and scheduled for trial before Supreme Court Justice Michael V. Coccoma. *Id.* at 76, 104, 111-12.

On May 24, 2010, the date on which his trial was to begin, petitioner elected to plead guilty to all of the charges pending against him in the indictment, in return for the promise by the trial court to impose an aggregate sentence of fourteen years of imprisonment. Dkt. No. 3-1 at 157-206. A colloquy ensued during which Justice Coccoma placed the petitioner under oath and inquired concerning his background, awareness of the consequences of his plea, including constitutional rights that he was voluntarily relinquishing, and the factual circumstances surrounding each of the six counts to which he was pleading guilty. *Id.* After confirming that petitioner had discussed the matter with his attorney and was satisfied with the advice received, and that he understood his rights and possible

---

[2]     Petitioner was convicted of second-degree criminal sale of a controlled substance in Suffolk County on or about December 17, 1999, and was imprisoned in connection with that conviction from December 17, 1999 through April 22, 2005. Dkt. No. 3-1 at 81, 214.

defenses, the court accepted petitioner's guilty plea. *Id.* at 201-03. On July 12, 2010, petitioner was sentenced as a second felony drug offender to a determinate period of incarceration of fourteen years, to be followed by a period of five years of supervision upon his release from prison. Dkt. No. 3-1 at 207-226.

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Third Department. *See People v. Doe*, 95 A.D.3d 1449 (3d Dep't 2012). In that appeal, he raised the same two issues that are now before this court, arguing that his plea was not knowing, voluntary, and intelligent and that he was denied effective assistance of counsel in connection with his plea. *Doe*, 95 A.D.3d at 1449. Both of those contentions were rejected by the Appellate Division as not preserved for review based upon petitioner's failure to move to withdraw his plea or to vacate the judgment of conviction. *Id.* Petitioner did not institute any collateral state court challenges to his conviction prior to commencing this proceeding.

## II.    PROCEDURAL HISTORY

Petitioner commenced this proceeding on August 5, 2011. Dkt. No. 1. In his petition, Doe argues that his plea was not knowing, voluntary, and intelligent and that he received ineffective assistance of counsel because his attorney failed to inform him of a plea offer that would have required him

to serve only twelve years in prison, instead of fourteen, allegedly conveyed by the prosecution during the plea negotiations. *Id.* at 4. Appropriately named as the respondent in Doe's petition is Ada Perez, who was the Superintendent at Downstate Correctional Facility, where Doe was housed at the time of filing. *Id.* at 1. On November 5, 2013, the Office of the New York State Attorney General responded to the petition on behalf of Perez by submitting an answer, a memorandum of law, and the relevant state court records associated with petitioner's state-court prosecution. Dkt. No. 3. Doe's petition, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Adequate and Independent State Ground

A review of the Appellate Division's decision in this case unequivocally reflects that the two grounds now raised in Doe's petition, challenging the validity of his guilty plea and the effectiveness of the assistance he received from counsel, were rejected as not preserved for review based upon his failure to move to withdraw his plea or to vacate his conviction. *See Doe*, 95 A.D.3d at 1449.

As a matter both of comity, and in keeping with the principles of federalism, a federal court ordinarily will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on a ground that is both independent of the federal question presented and adequate to support the resulting judgment. *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 736, (1991)); *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011). "This rule applies whether the state law ground is substantive or procedural." *Coleman*, 501 U.S. at 729. The habeas court's function is "to determine only whether the state ruling falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct." *Down*, 657 F.3d at 101 (citing *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011)).

"Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, such reliance on state law must be clear from the face of the opinion." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (internal quotation marks and citations omitted). As the Supreme Court has explained,

> the state court must actually have relied on the
> procedural bar as an independent basis for its
> disposition of the case . . . . [W]e will not assume that
> a state-court decision rests on adequate and
> independent state grounds when the state court
> decision fairly appears to rest primarily on federal

law, or to be interwoven with federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.

*Caldwell v. Miss.*, 472 U.S. 320, 327 (1985); *accord, Coleman*, 501 U.S. at 733.

In addition to being "independent," the state procedural bar must also be "adequate." *Downs*, 657 F.3d at 102. Courts "generally assess the adequacy of the state ground of decision by examining whether the rule upon which the state court relied is 'firmly established and regularly followed.'" *Id.* at 102 (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)). The Second Circuit has observed that

a procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question. When a federal court finds that the rule is inadequate under this test the rule should not operate to bar federal review. Nonetheless, the principles of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law.

*Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (internal citations and quotation marks omitted).

In a case where both procedural and substantive arguments have been advanced by the parties but no opinion is issued by the state court

explaining its rejection of a claim, a federal court may properly assume that the state court based its decision on state procedural grounds absent "good reason" to believe the state court's silence renders its decision on substantive grounds. *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993); *accord Jimenez v. Walker*, 458 F.3d 130, 138-39 (2d Cir. 2006). Where a state court has expressly found a failure to preserve the argument for appellate review and, alternatively or "in any event," that the argument lacks merit, the procedural bar applies. *Fama*, 235 F.3d at 810 n.4 (citing *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996)). If there is ambiguity, however, as in "when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama*, 235 F.3d at 810 (footnote omitted); *accord, Jiminez*, 458 F.3d at 139.

Under New York law, it is firmly established that a defendant's claims that he involuntarily entered his guilty plea in the trial court due, in part, because he was denied effective assistance of counsel must be preserved through either a motion to withdraw the plea or a motion to vacate the judgment of conviction. *See, e.g., People v. Lopez*, 71 N.Y.2d 662 (1988) ("In order to preserve a challenge to the factual sufficiency of a plea

allocution there must have been a motion to withdraw the plea . . . or a motion to vacate the judgment of conviction[.]"); *accord, People v. Campbell*, 899 A.D3d 1279, 1279 (3d Dep't 2011); *People v. Gomez*, 72 A.D.3d 1337, 1338 (3d Dep't 2010) ("[A]s defendant did not move to withdraw his plea or to vacate the judgment of conviction, his claims that his plea was not voluntarily entered and that he was denied the effective assistance of counsel are not preserved for our review."); *People v. Anderson*, 63 A.D.3d 1191, 1193 (3d Dep't 2009), *lv. denied* 13 N.Y.3d 194 (2009). Courts in this and other districts in New York have routinely recognized that this rule provides an adequate and independent state ground on which to deny habeas relief. *See, e.g., Smith v. Superintendent of Wende Corr. Facility*, No. 10-CV-0901 2015 WL 1036328, at *7 (W.D.N.Y. Mar. 10, 2015) ("[T]he Appellate Division's determination that petitioner failed to preserve [his claim that his plea was not knowing and voluntary] for review renders the claim procedurally defaulted."); *Coons v. Superintendent*, No. 11-CV-1502, 2014 WL 316757, at *7 (N.D.N.Y. Jan. 28, 2014) (Mordue, J., *adopting report and recommendation by* Hummel, M.J.); *Belle v. Superintendent*, No. 11-CV-0657, 2013 WL 992663, at *5 (N.D.N.Y. Mar. 13, 2013) (Mordue, J.); *Haynes v. N.Y.*, No. 10-CV-5867, 2012 WL 6675121, at *14 (E.D.N.Y. Dec. 21, 2012) ("Petitioner also argues

that his guilty plea was involuntarily induced because he received ineffective assistance of counsel. As discussed *supra*, this Court finds that petitioner's claim is procedurally barred on an independent and adequate state-law ground."); *Crumpler v. Khahaifa*, No. 10-CV-0819, 2011 WL 6409221, at *7 (W.D.N.Y. Dec. 21, 2011); *Bennefield v. Kirkpatrick*, 741 F. Supp. 2d 447, 453 (W.D.N.Y. 2010).

In the instant case, petitioner neither sought leave to withdraw his plea of guilty at or prior to the time of sentencing, nor did he move in the state courts to vacate his guilty plea. Dkt. No. 3-1 at 207-26; *Doe*, 95 A.D.3d at 1449. On that basis, the Appellate Division rejected petitioner's contentions that his guilty plea was not knowingly, voluntarily, and intelligently entered and that he received ineffective assistance of counsel, finding the claims unpreserved for review. *Doe*, 95 A.D.3d at 1449. Accordingly, petitioner is procedurally barred from raising either of those issues before this court, absent a basis to overlook his procedural default. [3]

---

[3]     In *Lopez*, the New York Court of Appeals recognized "the rare case" where a defendant's plea allocution "casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea[.]" *Lopez*, 71 N.Y.2d at 666. In its decision affirming petitioner's judgment, the Appellate Division addressed this "narrow exception," finding that petitioner "did not make any statements during the plea allocution that negated a material element of the crime or otherwise raised any doubt as to his guilt[.]" *Doe*, 95 A.D.3d at 1449. Like the Appellate Division, having reviewed petitioner's plea allocution before Justice Coccoma in Schenectady County Court, I find no basis to conclude either that the petitioner's recitation of the facts associated with the crimes charged casts doubt on his guilt or that his plea colloquy otherwise suggests that

*Belle*, 2013 WL 992663, at *5-11.

To excuse petitioner's failure to preserve the two grounds now raised, the court must find either (1) both good cause for and actual prejudice resulting from his procedural default, or (2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice.[4]  *Coleman*, 501 U.S. at 750; *Fama*, 235 F.3d at 809. To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Examples of such external mitigating circumstances can include ineffective assistance of counsel, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable."[5]  *Murray*, 477

---

his plea was not knowing, voluntary, and intelligent.

[4]    In 2007, the Second Circuit noted that, in certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d 709, 713-14 (2d Cir. 2007). While determination of whether the application of a particular rule is exorbitant requires consideration of three factors, *Garvey*, 485 F.3d at 714, I have not addressed this claim because petitioner does not raise it as a ground for excusing his procedural default in state court.

[5]    It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).

U.S. at 488 (quotation marks and citations omitted); *Coleman*, 501 U.S. at 753. When a petitioner has failed to establish adequate cause for his procedural default, the court need not proceed to examine the issue of prejudice because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *accord, Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. March 21, 2006) (McCurn, J.).

In this case, petitioner has offered no circumstances that would rise to a level sufficient to support a finding of cause for his default. This deficiency alone would suffice to preclude review of petitioner's arguments on the merits. In any event, petitioner has also failed to demonstrate any prejudice resulting from his procedural default. Had petitioner proceeded to trial and been found guilty, he risked the imposition of a significantly greater term of imprisonment, including prison terms that could have been imposed on a consecutive basis for each of the six felonies charged in the indictment. N.Y. Penal Law § 70.25(1), (2). There is nothing in the record before the court that would suggest that, had petitioner been permitted to withdraw his guilty plea, he would have proceeded to trial and a different result would have obtained. Indeed, the record of the plea allocution in Schenectady

County Supreme Court reflects that petitioner entered his guilty plea knowingly, voluntarily, and intelligently, and with the assistance of counsel, whose representation of petitioner was satisfactory. Dkt. No. 3-1 at 157-206. Similarly, plaintiff has failed to demonstrate that he can satisfy the actual innocence or fundamental miscarriage exception to the finding of procedural default. I therefore recommend that plaintiff's claims in this matter be barred on the basis of an independent and adequate state law ground and, consequently, that his petition be denied and dismissed on this procedural basis.

B.    Certificate of Appealability

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."). In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A

petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted). A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."); *accord, Rosa v. United States*, 785F.3d 856, 858 n.3 (2d Cir. 2015). In this instance, I conclude that the petitioner has not made a substantial showing of the denial of a constitutional right, and therefore recommend against the issuance of a COA.

IV.    SUMMMARY AND RECOMMENDATION

The two grounds raised in the petition in this matter, challenging the voluntariness of petitioner's guilty plea and the assistance that he received from trial counsel, have both been procedurally forfeited based upon petitioner's failure to move to withdraw his plea of guilty or to vacate his

judgment of conviction and this court's finding that the arguments were rejected by the Appellate Division on this independent and adequate ground. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is further

RECOMMENDED, based upon my finding that Doe has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to either of the claims set forth in his petition; and it is further

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      October 30, 2015
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

2013 WL 992663
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Isiah BELLE, Petitioner,

v.

SUPERINTENDENT, Respondent.

No. 9:11–CV–0657 (NAM).  |  March 13, 2013.

**Attorneys and Law Firms**

Isiah Belle, Schenectady, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Paul M. Tarr, Esq., Ass't Attorney General, of Counsel, New York, NY, for Respondent.

**DECISION AND ORDER**

NORMAN A. MORDUE, District Judge.

## I. INTRODUCTION

 **\*1** Petitioner Isiah Belle has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges a 2008 judgment of conviction in Schenectady County Court, following his guilty plea, of second degree criminal possession of a weapon and several related charges. Dkt. No. 1, Petition ("Pet.") at 1. [1] Respondent has filed a response to the petition, a memorandum of law, and the relevant state court records. Dkt. No. 6, Response; Dkt. No. 7, Respondent's Memorandum of Law ("Resp't Mem."); Dkt. No. 8, State Court Records. Petitioner has answered. Dkt. No. 11, Traverse. For the reasons that follow, the petition is denied and dismissed. [2]

## II. BACKGROUND

### A. The Crime and Arrest

The Appellate Division, Third Department, concisely summarized the facts underlying petitioner's criminal offense as follows:

> In August 2007, at around 3:00 a.m., police received a telephone call reporting that shots had been fired in the vicinity of Hulett Street and Lincoln Avenue in the City of Schenectady, Schenectady County. The caller reported

that the shooter was wearing a blue shirt with white stripes, light colored shorts and a white hat. When police arrived at the location a few minutes later, they observed a man matching the description of the suspect. Upon being ordered to stop, the man, who was later identified as [petitioner], fled into a nearby backyard, resulting in a foot chase. During this pursuit, [petitioner] appeared to throw something over a fence into a neighboring yard. Upon tackling [petitioner], police noticed that a baggie with a white powdery substance had fallen partially out of the pocket of defendant's pants. The police proceeded to arrest [petitioner], and found on his person a stun gun and marihuana. The police then searched the other side of the fence and recovered a handgun. Back at police headquarters, [petitioner] made an oral statement to a detective, "The cocaine was mine, but it was for personal use."

[Petitioner] was charged with two counts each of criminal possession of a weapon in the second degree and third degree, two counts of criminal possession of a controlled substance in the third degree, and one count each of resisting arrest and unlawful possession of marihuana. After a *Huntley* hearing, [petitioner's] motion to suppress the oral statement made at police headquarters was denied. After *Mapp/Dunaway* hearings, [petitioner's] motion to suppress all evidence obtained by police was denied.

While no plea offers were made by the People, on the date of trial, County Court, over the People's objection, indicated to [petitioner] that, upon a plea of guilty to the entire indictment, it would sentence [petitioner] to a six-year prison term with four years of postrelease supervision. [Petitioner] consulted with counsel and then elected to plead guilty to all charges contained in the indictment. As part of his plea, [petitioner] waived his right to appeal, preserving his right to appeal the suppression rulings. Sentencing was adjourned three times to provide [petitioner] with time to review certain evidence, to obtain a second opinion from a second assigned counsel and to decide whether to make a motion to withdraw his plea. After electing not to move to withdraw his plea, [petitioner] was sentenced to an aggregate prison term of five years with four years of postrelease supervision.

 **\*2** *People v. Belle,* 74 A.D.3d 1477, 1478–79 (3d Dep't 2010).

## B. Petitioner's Appeal and Collateral Attacks on the Verdict

On May 20, 2009, petitioner filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, in which he raised the following grounds: (1) the police lacked probable cause to stop and search him; (2) the police did not possess accurate information to justify a warrantless search and seizure; (3) the prosecution never established constructive possession of a firearm; (4) the police officers' testimony before the grand jury was conflicting and false; (5) the prosecution fraudulently breach the terms of a negotiated agreement, causing him to be sentenced to a Class B felony; (6) the trial court violated double jeopardy by denying him a downward departure in his charges; and (7) ineffective assistance of trial counsel. Dkt. No. 8, Ex. H, Motion to Vacate the Judgment at 3–16.

On July 17, 2009, the trial court denied petitioner's motion in its entirety.Dkt. No. 8, Ex. K, Decision and Order. With regard to petitioner's claims that the police lacked probable cause and the prosecution presented false evidence to the grand jury, the court found that these issues had already been determined on the merits in a prior proceeding. *Id.* at 2–3 (citing N.Y. Crim. Proc. Law § 440 .10(3)(b)). Turning to the alleged breach of the plea agreement, the court found that petitioner clearly understood the terms of the plea agreement and voluntarily pled guilty to each count in the indictment.*Id.* at 3. Thus, the court continued, there is no support for the contention that the trial court improperly sentenced him to a Class B felony. *Id.* In rejecting petitioner's ineffective assistance of counsel claim, the court noted that petitioner's counsel filed pre-trial motions, fully explained to petitioner the consequences of pleading guilty, and negotiated an advantageous plea agreement. *Id.* Accordingly, under the totality of the circumstances, petitioner received effective assistance. *Id.* at 4–5.The court denied petitioner's double jeopardy claim because he failed to set forth any evidence that he was punished for the same crime twice. *Id.* at 4. Finally, the court dismissed petitioner's remaining claims as meritless. *Id.* at 5.

Petitioner moved for leave to appeal to the Appellate Division, Third Department, who denied his request in a summary order. Dkt. No. 8, Ex. N, Appellate Division Order Denying Leave.

In July 2009, petitioner, represented by counsel, filed a direct appeal with the Appellate Division raising three claims: (1) his guilty plea was involuntary because of pressure from counsel and the extensive jail time he faced if the case proceeded to trial; (2) his sentence was harsh and excessive; and (3) ineffective assistance of trial counsel. Dkt. No. 8, Ex. A, Appellant's Br. at 3. With regard to the ineffective assistance claim, petitioner specifically argued that counsel: (a) failed to meet with him before the guilty plea; (b) failed to file appropriate pre-trial motions; (c) pressured him into entering a guilty plea and waiving his appellate rights; and (d) failed to secure cooperation from the district attorney in a related case involving his son. *Id.* at 19–23.

**\*3** Apparently unsatisfied with appellate counsel's choice of issues, petitioner also filed a pro se supplemental brief, arguing (1) the police apprehended and searched petitioner without probable cause; (2) the police lacked sufficient information to justify a warrantless search and seizure; (3) the prosecution breached their plea agreement; and (4) the prosecution presented false testimony at the grand jury proceedings and at the *Mapp/Dunaway* hearing. Dkt. No. 8, Ex. C, Appellant's Supplemental Br. at 1.

On June 10, 2010, the Appellate Division unanimously affirmed the conviction.*Belle,* 74 A.D.3d at 1478–80. First, the court ruled that by failing to withdraw his guilty plea or vacate the judgment, petitioner failed to preserve his claim that the plea was involuntary. *Id.* at 1479.In any event, the court also concluded that his plea and appeal waiver were knowing, voluntary, and intelligent. *Id.* Next, the court concluded that the police had reasonable suspicion to believe that a crime had been committed, which justified the pursuit and subsequent detention of petitioner. *Id.* Accordingly, the evidence gained from petitioenr was not subject to suppression and provided probable cause for the arrest. *Id.* at 1480.

Turning to petitioner's ineffective assistance claim, the court held that his appeal waiver precluded review of this argument outside of any contention that counsel's improper advice impacted the plea. *Belle,* 74 A.D.3d at 1480. To the extent petitioner's ineffective assistance claim survived the appeal waiver, the court concluded that it was unpreserved due to his failure to move to withdraw the plea or vacate the judgment. *Id.* The court also found petitioner's allegations of prosecutorial misconduct unpreserved for review, and his sentencing claim barred on account of the appeal waiver. *Id.* Finally, the court found petitioner's remaining claims "to be without merit." *Id.*

On July 6, 2010, petitioner sought leave to appeal to the New York Court of Appeals, raising the claims set forth in his counseled brief. Dkt. No. 8, Ex. E, Letter Requesting Leave to Appeal. The Court of Appeals denied petitioner's request. Dkt. No. 8, Ex. G, Certificate Denying Leave.

### C. The Petition

Petitioner then timely filed this action, which raises the following grounds for habeas relief: (1) his guilty plea was not knowingly and voluntarily entered; (2) the trial court's sentence violated his double jeopardy rights; (3) he was improperly forced to waive his appellate rights; (4) the indictment was obtained through false evidence, obstruction of justice, and a coerced confession; (5) the conviction was supported by an invalid search and seizure; (6) ineffective assistance of trial counsel; and (7) ineffective assistance of appellate counsel. Pet. at 4–5, 13, 20–21, 24–25, 28, 36, 67–68.

### III. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) was based on an unreasonable determination of the facts in light of the evidence presented. *Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 1398–1400 (2011) (citing 28 U.S.C. §§ 2254(d) (1), (2)); *Premo v. Moore,* —— U.S. ——, 131 S.Ct. 733, 739 (2011); *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson,* —— U.S. ——, 131 S.Ct. 1305, 1307 (2011) (per curiam) (citation omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable— a substantially higher threshold." *Schriro,* 550 U.S. at 473.

**\*4** When evaluating whether a state court decision is "contrary to" Supreme Court law, the habeas court must consider whether the decision under review "applies a rule that contradicts the governing law" or "confronts a set of facts that are materially indistinguishable" from precedent and

nonetheless arrives at a different result. *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (citation omitted). The Supreme Court has explained that "clearly established [f]ederal law" refers to the Supreme Court's holdings as of the time of the relevant state court decision. *See Williams v. Taylor,* 529 U.S. 362, 412 (2000).

A decision involves an "unreasonable application" of Supreme Court precedent when the state court either "identifies the correct governing legal rule" but "unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle ... to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002).

Moreover, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004); *see also Cullen,* 131 S.Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with " "clear and convincing evidence." " *Schriro,* 550 U.S. at 473–74 (quoting § 2254(e) (1)).

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.' " *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)).

### B. Petitioner's Guilty Plea

Petitioner appears to argue, as he did on direct appeal, that his guilty plea is invalid because it was not knowingly and voluntarily entered. Pet. at 4, 20, 28–29. According to petitioner, defense counsel forced him to plead guilty by, among other things, commenting that he would surely lose if the case went to trial. Pet. at 24, 67. Petitioner also suggests

that his guilty plea was involuntary because it was a "take it or leave it" deal offered by the trial court. Pet. at 20. As discussed below, this claim is procedurally barred, and in any event, meritless.

**\*5** A federal court will not ordinarily review a federal claim presented in a habeas petition if it has been rejected by the state courts on an "independent and adequate" state law ground. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Murden v. Artuz,* 497 F.3d 178, 194 (2d Cir.2007); *see also Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

In its decision, the Appellate Division dismissed petitioner's claim attacking the validity of his guilty plea on state law preservation grounds. *Belle,* 74 A.D.3d at 1479. The court specifically held that "by failing to move to withdraw his plea or vacate the judgment of conviction, defendant failed to preserve his claim that his plea was involuntary."*Id.* It is well settled in this Circuit that this preservation rule provides an adequate and independent state ground on which to deny habeas relief, and this Court agrees with the analysis contained in these decisions. *See, e.g., Hunter v. McLaughlin,* No. 1:04–CV–4058, 2008 WL 482848, at \*1–4 (S.D.N.Y. Feb. 21, 2008); *Shanks v. Greiner,* No. 1:01–CV–1362, 2001 WL 1568815, at \*3–4 (S.D.N.Y. Dec. 10, 2001). Because the Appellate Division rejected this claim on independent and adequate state procedural grounds, federal review is barred unless petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. *See Coleman,* 501 U.S. at 750.

Petitioner has failed to establish either of these mitigating factors in this case. Even if petitioner could demonstrate cause, which does not appear from the record, he cannot show prejudice insofar as this claim is meritless. *See infra* at 11–12; *Pettigrew v. Bezio,* No 1:10–CV–1053, 2012 WL 1714934, at \*4 (W.D .N.Y. May 15, 2012) (concluding that a petitioner cannot show actual prejudice where the underlying defaulted claim is meritless); *see also Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) (noting that federal habeas relief is unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated).

Moreover, for purposes of the miscarriage of justice exception, petitioner has made no showing that he is "actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986) (noting that the miscarriage of justice exception extends to cases of "actual innocence," that is, when a constitutional violation "has probably resulted in the conviction of one who is actually innocent [of the offense of which he has been convicted]"). The Supreme Court "has made clear that the concept of actual innocence is distinct from the concept of legal innocence."*Poindexter v. Nash,* 333 F.3d 372, 380 (2d Cir.2003). Actual innocence means that the petitioner "in fact [did] not commit[ ] the crimes on which the calculation or imposition of [his] sentence was based."*Poindexter,* 333 F.3d at 381. A petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used ... in habeas jurisprudence generally."*Poindexter,* 333 F.3d at 380. Here, petitioner raises several technical arguments contesting his conviction. For instance, he asserts that his conviction is the result of an invalid search and seizure. Pet. at 28. Petitioner does not, however, proffer any evidence that he is actually innocent of the acts on which his sentence is based. *See Williams v. Brown,* No. 1:08–CV–10044, 2010 WL 850182, at \*3 (S.D.N.Y. Mar. 11, 2010) (rejecting actual innocence claim where "[t]he evidence adduced by [the petitioner] in his petition solely concerns certain alleged procedural irregularities ... none of which casts any doubt on [the petitioner's] underlying guilt").

**\*6** Accordingly, petitioner's claim contesting the validity of his guilty plea is procedurally barred and is dismissed on that basis.

Even reaching the merits, however, petitioner cannot prevail. In order to comply with the requirements of due process, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant."*North Carolina v. Alford,* 400 U.S. 25, 31 (1970). The Second Circuit has summarized the relevant factors as follows:

> [A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's

sheer inability to weigh his options rationally.

*Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988). Importantly, statements made by a defendant at a plea hearing constitute a "formidable barrier" that cannot be easily overcome in subsequent collateral proceedings because "[s]olemn declarations in open court carry a strong presumption of verity."*Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977).

At the plea hearing in this case, the court promised petitioner a six-year sentence in exchange for his plea of guilty to the entire indictment. Dkt. No. 8, Plea Transcript, April 7, 2008 ("Plea Tr.") at 2. After counsel indicated that petitioner wished to accept the offer, petitioner was sworn in and stated that he had a clear mind, was free from drugs, and understood the plea offer. *Id.* at 2, 5–9, 22.Petitioner affirmed that he had consulted with his lawyer about the case and that he understood the nature of the charges, the possible sentence, and the rights he was waiving. *Id.* The court then explained to petitioner that he would have to waive his right to appeal as a condition of the plea agreement, which petitioner agreed to do after the waiver was amended to permit the appeal of suppression issues. *Id.* at 9–22.Petitioner then reaffirmed that his plea to the entire indictment was voluntary. *Id.*

Petitioner has offered only conclusory allegations as proof that his plea was invalid. *See* Pet. at 20, 24, 27. Not only are these allegations insufficient to disturb the plea, *see Blackledge,* 431 U.S. at 73–74, they are directly contradicted by petitioner's sworn allocution discussed above. *See United States v.. Davis,* 48 F. App'x 809, 811–12 (2d Cir.2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with the advice of counsel .... Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence.").

**\*7** Moreover, defense counsel's alleged statement that petitioner would lose if he went to trial does not render the resulting plea involuntary. *See Lightfoot v. Smith,* No. 1:05–CV–0444, 2008 WL 515051, at \*9 (S.D.N.Y. Feb. 25, 2008) (noting that truthful advice regarding the strength of the prosecution's case and the advisability of accepting a plea bargain does not constitute coercion). Nor does it matter

that the court offered petitioner a "take it or leave it" plea bargain. *See Izaguirre v. Lee,* 856 F.Supp.2d 551, 568–69 (E.D.N.Y.2012) (noting that under New York law trial judges are permitted to participate in plea negotiations with criminal defendants and there is no element of impropriety as long as the accused is free to accept of reject the offer). In sum, petitioner has provided no basis to refute the validity of his guilty plea.

**C. Effect of Petitioner's Guilty Plea**
It is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."*Tollett v. Henderson,* 411 U.S. 258, 267 (1973).

The Court has concluded that petitioner's guilty plea is valid. *See supra* Section III(B). Consequently, petitioner is precluded from obtaining habeas relief on claims arising out of matters that occurred prior to the plea.*Tollett,* 411 U.S. at 267. Therefore, petitioner's claim that the indictment was obtained through false evidence, obstruction of justice, and a coerced confession must be denied. *See Crispino v. Allard,* 378 F.Supp.2d 393, 414 (S.D.N.Y.2005) ("[I]f [petitioner] entered a voluntary, knowing, and intelligent guilty plea, any and all non jurisdictional defects raised in the indictment are waived."). [3]

Additionally, petitioner's ineffective assistance of counsel claim only survives to the extent it challenges the voluntariness of the plea and the advice petitioner received from counsel. *Parisi v. United States,* 529 F.3d 134, 138 (2d Cir.2008); *see also Blackledge,* 417 U.S. at 29–30 (following a guilty plea, a defendant "is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases"). To the extent petitioner contends that he received ineffective assistance outside of this scope, his claims are denied. *See Garver v. Superintendent Oneida Corr. Facility,* No. 6:10–CV–6142, 2011 WL 3236386, at \*3 (W.D.N.Y. July 28, 2011) (finding petitioner's ineffective assistance claim barred from habeas review where said claim alleged that counsel committed errors related to Fourth Amendment issues and did not relate to the voluntariness of the plea itself).

Petitioner's surviving claims are discussed below.

### D. Fourth Amendment Claim

**\*8** Petitioner alleges that his Fourth Amendment rights were violated because the police apprehended and searched him without probable cause. Pet. at 5, 27–28, 36, 47. According to petitioner, his conviction was supported by evidence from this illegal search and seizure. *Id.*

Respondent urges the Court to bar this claim as a result of petitioner's guilty plea. Resp't Mem. at 27. According to respondent, petitioner's Fourth Amendment claim is "unrelated to the voluntariness of his guilty plea" and is "therefore waived." *Id.* (citing *Tollett,* 411 U.S. at 267). This argument is unpersuasive.

In general, a defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."*Tollett,* 411 U.S. at 267. However, a relevant exception to this rule has been recognized: where a state permits appeal of a pre-plea constitutional ruling, federal courts will address such claims on habeas review notwithstanding the guilty plea. *Lefkowitz v. Newsome,* 420 U.S. 283, 293 (1975) ("[W]hen state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding."). Pursuant to New York Criminal Procedure Law § 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial motion to suppress evidence, despite conviction upon a guilty plea. Accordingly, in New York, a guilty plea does not bar habeas review of constitutional claims arising from an illegal search provided the search was contested in state court. *Lugo v. Artus,* No. 1:05–CV–1998, 2008 WL 312298, at \*2–4 (S.D.N.Y. Jan. 31, 2008). Given petitioner unsuccessfully sought to suppress the evidence gained from his search and seizure, the guilty plea does not waive his right to challenge the admissibility of that evidence through a habeas corpus petition. *See, e.g., Perez v. Ercole,* No. 1:09–CV–2180, 2010 WL 2541974, at \*4 n. 3 (S.D.N.Y. June 22, 2010).

Nonetheless, review of petitioner's Fourth Amendment claim is precluded pursuant to *Stone v. Powell,* 428 U.S. 465 (1976). In *Stone,* the Supreme Court held that federal habeas review is unavailable for Fourth Amendment claims where the state has provided a full and fair opportunity to litigate such a claim. *Id.* at 494.It is well settled that New York

provides an adequate corrective procedure for such claims, and petitioner does not dispute that he had the opportunity to litigate his Fourth Amendment claims in state proceedings. *See, e.g., Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992); *Guzman v. Greene,* 425 F.Supp.2d 298, 318 (E.D.N.Y.2006). Accordingly, federal habeas relief is unavailable on this claim and it is dismissed. *See Brown v. New York,* No. 1:08–CV–0582, 2012 WL 3597361, at \*2 (E.D.N.Y. Aug. 20, 2012).

### E. Appeal Waiver

**\*9** Petitioner argues, as he did on direct appeal, that he was coerced into waiving his appellate rights as part of the guilty plea. Pet. at 24, 67. In dismissing this claim, the Appellate Division concluded that petitioner's appeal waiver complied with New York law because it was knowing, voluntary, and intelligent. *Belle,* 74 A .D.3d at 1479. This decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

It is well settled that appeal waivers set forth in plea agreements are constitutional provided the waiver was knowing, voluntary and intelligent. *See Steele v. Filion,* 377 F.Supp.2d 332, 334–35 (W.D.N.Y.2005) (citations omitted). To be effective, a defendant must be informed of the nature of the right and must evidence a full understanding of the consequences of the waiver. *United States v. Ready,* 82 F.3d 551, 556–57 (2d Cir.1996).

Here, it is clear from the record that the trial court engaged in a thorough colloquy to ensure that petitioner made a knowing, voluntary, and intelligent waiver of his appellate rights. Plea Tr. at 9–22. During the plea proceedings, the court stated that petitioner would have to waive his right to appeal as a condition of the plea agreement. *Id.* at 9. Although petitioner initially protested, he subsequently agreed to the waiver after it was modified to permit the appeal of suppression issues. *Id.* at 14–15.Then, in response to the court's questions, petitioner affirmed that he understood the rights he was waiving. *Id.* at 13–22.The court further verified several times that petitioner understood the terms of the plea agreement and that he had discussed the matter fully with his attorney. *Id.*

While petitioner now contends that he was forced to waive his appellate rights, he has offered no evidence of this alleged coercion outside of conclusory allegations. *See* Pet. at 24, 67; *United States v. Walker,* 411 F.Supp.2d 336, 337 (W.D.N.Y.2006) (holding that a defendant cannot defeat an appeal waiver through conclusory allegations); *see also Harris v. Hulihan,* No. 1:11–CV–3019, 2012 WL 5265624,

at *17 (S.D.N.Y. Aug. 8, 2012) ("[I]t is clear that counsel did not act unreasonably in encouraging petitioner to accept the plea bargain containing a waiver of the right to appeal."). Indeed, petitioner's sentencing was postponed three times so he could consider whether to withdraw the plea and appeal waiver. Further, the court's position that the appeal waiver was required as part of the guilty plea does not render the waiver invalid under federal law. *See Nicholas v. Smith,* No. 1:02–CV–6411, 2007 WL 1213417, at *10 (E.D.N.Y. Apr. 24, 2007).

Accordingly, petitioner has not demonstrated that enforcement of the waiver deprived him of any rights under the federal Constitution. *See Salaam v. Giambruno,* 559 F.Supp.2d 292, 298 (W.D.N.Y.2008) (finding petitioner failed to show that the state court's enforcement of a valid appeal waiver infringed on his constitutional rights). This claim is therefore dismissed.

**F. Double Jeopardy Claim [4]**

**\*10** While not entirely clear, it appears that petitioner is arguing that the trial court violated double jeopardy when it sentenced him as a predicate felony offender because the statute of limitations had already expired on his first felony offense. Pet. at 13. Petitioner also appears to argue that his double jeopardy rights were violated when the trial court refused a downward departure in his class B felony charge. *Id.* As set forth below, this claim is procedurally barred and meritless.

It is well settled that a petitioner must exhaust his state court remedies before seeking habeas relief. *See* 28 U.S.C. § 2254(b) (1). [5] This requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004)."A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.' " *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (citation omitted).

Petitioner's double jeopardy claim is unexhausted because he never presented it to the Appellate Division after the trial court rejected his arguments. *See* Dkt. No. 8, Ex. L, Application for Leave to Appeal; *Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 190 n. 3 (2d Cir.1982) ("Exhaustion of available state remedies requires presentation of the claim

to the highest state court from which a decision can be had."(citation omitted)); *Deberry v. Spitzer,* No. 1:05–CV–5286, 2011 WL 1239999, at *6 (E.D.N.Y. Feb. 17, 2011) (noting that a claim asserted in a section 440 motion is only fully exhausted once it has been presented to the Appellate Division).

Because petitioner no longer has remedies available to pursue this unexhausted claim, *see Garner v. Superintendent,* No. 9:10–CV–1406 (GTS), 2012 WL 3929944, at *6 (N.D.N.Y. Sept. 10, 2012), it is also procedurally defaulted. *See Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994) (noting that if a petitioner has failed to exhaust his state court remedies, and no longer has remedies available to pursue his claims, they are deemed exhausted and are also procedurally defaulted).

Further review of this claim is therefore conditioned upon the Court finding cause and prejudice, or a fundamental miscarriage of justice. *Murden,* 497 F.3d at 194 (noting that a federal court may review a procedurally barred claim only if the petitioner demonstrates either cause for the default and actual prejudice, or a fundamental miscarriage of justice). Petitioner fails to allege, much less prove, that there was cause for his procedural default or that he has suffered prejudice as a result. *See* Pet. at 13. Indeed, petitioner offers no explanation for his failure to properly pursue this claim. *Id.* Moreover, as discussed above, petitioner has clearly failed to show a miscarriage of justice. *See supra* Section III(B). As such, this claim is subject to an unexcused procedural default and is dismissed.

**\*11** Even assuming this claim is not procedurally barred, petitioner's arguments have no support in the record. First, petitioner's contention that he was improperly sentenced as a predicate felony offender has no merit because he was not sentenced as such. *See* Plea Tr. at 6, 7–9. Additionally, no "downward departure" in petitioner's charge is required under these circumstances. *See* N.Y.Crim. Proc. Law §§ 220.10(2), (5)(a)(iii) ("Where the indictment charges any class B felony ... any plea of guilty ... must be or must include *at least* a plea of guilty of a class D felony."(emphasis added)). In any event, petitioner's assertions clearly do not suggest a violation of the Double Jeopardy clause. *See Ramos v. Racette,* No. 1:11–CV–1412, 2012 WL 12924, at *29 (E.D.N.Y. Jan. 4, 2012) ("It does not violate double jeopardy principles for a defendant's sentence to be enhanced for conduct for which the defendant was previously prosecuted, [and] Double Jeopardy protections are inapplicable to classifications under felony offender schemes because the determinations at issue do

not place a defendant in jeopardy for an offense."(citations omitted)).

### G. Ineffective Assistance of Trial Counsel

Petitioner alleges that trial counsel provided ineffective assistance by (a) failing to take action when the prosecution presented false testimony to the grand jury; (b) neglecting to contest fabricated evidence; (c) forcing petitioner to plead guilty and; (d) coercing petitioner to waive his appellate rights as part of the guilty plea. *See* Pet. at 67. As discussed below, these claims provide no basis for habeas relief.

An ineffective assistance of counsel claim survives a guilty plea only where the claim concerns the advice the defendant received from counsel by connecting the knowing and voluntary nature of petitioner's plea decision with the attorney's conduct. *Parisi,* 529 F.3d at 138–39. In other words, a defendant who has pled guilty "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards."*United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996) (citation omitted). Therefore, as a result of petitioner's valid guilty plea, *see supra* Section III(B), the aforementioned ineffective assistance claims that relate to pre-plea events—i.e., counsel's failure to contest the false testimony and fabricated evidence—fail to state a violation of constitutional rights that this Court can consider. *See, e.g., Hill v. West,* 599 F.Supp.2d 317, 392–93 (W.D.N.Y.2009) (holding that petitioner's ineffective assistance claims relating to "pre-plea events, such as the failure to investigate potential witnesses, acquisition of discovery material, and his decisions regarding a psychiatric examination" were effectively waived as a result of a valid guilty plea). As such, these claims are dismissed.

Although petitioner's remaining ineffective assistance claims survive the guilty plea, they nonetheless do not entitle petitioner to habeas relief. *See Burnell v. United States,* Nos. 1:09–CV–0497, 1:09–CV–0375 (TJM), 2009 WL 3698386, at *2–6 (N.D.N.Y. Nov. 2, 2009) (noting that claims of improper coercion from defense counsel survive a guilty plea). Petitioner's allegations that counsel forced him to plead guilty and coerced him into waiving his appellate rights are barred under the independent and adequate state grounds doctrine. *Velasquez,* 898 F.2d at 9 ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."). On

direct appeal, the Appellate Division found these claims "unpreserved" given petitioner failed to move to withdraw his plea or vacate the judgment.*Belle,* 74 A.D.3d at 1480. This preservation rule is recognized as a firmly established and regularly followed state procedural rule that precludes habeas review. *See, e.g., Escalante v. Smith,* No. 9:06–CV–1506 (LEK/RFT), 2009 WL 1405440, at *5–6 (N.D.N.Y. May 18, 2009) (concluding that the Appellate Division's ruling that petitioner's claim was unpreserved constituted an independent and adequate state barrier to habeas review).

**\*12** Although the Court is aware that it may excuse petitioner's default, it declines to do so. *See Coleman,* 501 U.S. at 750 (holding that a procedural default may be excused if the petitioner demonstrates cause for the default and actual prejudice, or that the failure to consider the claims will "result in a fundamental miscarriage of justice"). As discussed above, petitioner offers no viable explanation for his failure to move to withdraw his plea or vacate the judgment. *See supra* Section III(B). Further, petitioner has clearly failed to allege a miscarriage of justice. *Id.* Accordingly, these claims are subject to an unexcused procedural default and are dismissed.

Even reaching the merits, however, petitioner cannot prevail. In order to maintain a claim of ineffective assistance of counsel following a guilty plea, a petitioner must show (1) that his attorney's advice to plead guilty was not "within the range of competence demanded of attorneys in criminal cases," and (2) that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."*Hill v. Lockhart,* 474 U.S. 52, 56 (1985); *see also Roe v. Flores–Ortega,* 528 U.S. 470, 485 (2000). Improper coercion from defense counsel to accept a guilty plea can constitute ineffective assistance. *See Davis,* 48 F. App'x at 811–12.

Petitioner, however, has offered nothing except conclusory allegations as proof that his plea and appeal waiver were the result of coercion. Where, as here, a defendant "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him to them."*Padilla v. Keane,* 331 F.Supp.2d 209, 217 (S.D.N.Y.2004) (citing *Blackledge* 431 U.S. at 74);*see also United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."). Nor can petitioner maintain that trial counsel improperly

pressured him into pleading guilty by providing a truthful assessment that the prosecution would ultimately prevail at trial. *See United States v. Juncal,* 245 F.3d 166, 172 (2d Cir.2001) ("[D]efense counsel's blunt rendering of an honest but negative assessment of [defendant's] chances at trial, combined with advice to enter the plea, [does not] constitute improper behavior or coercion that would suffice to invalidate a plea.").

Moreover, the overall favorable disposition of petitioner's case belies his ineffective assistance claims. *See Seifert v. Keane,* 74 F.Supp.2d 199, 206 (E.D.N.Y.1999) ("Given the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient[.]"), *aff'd,*205 F.3d 1324 (2d Cir.2000). Defense counsel successfully negotiated a favorable plea bargain directly with the court after the prosecution refused to extend any plea offers. *See* Plea Tr. at 9. In light of the fact that petitioner was charged with several violent felonies and admittedly had no viable defense, *see* Pet. at 37, the sentence promise of six years offered by the court is a highly favorable outcome. Moreover, counsel negotiated an amendment to the appeal waiver that reserved the right to appeal suppression issues, which was a major concern for petitioner. *See* Plea Tr. at 23.

 **\*13** Even assuming that counsel's performance somehow fell below an objective standard of reasonableness, habeas relief would not be warranted because petitioner has failed to satisfy the prejudice prong. In the context of a guilty plea, the defendant must show a reasonable possibility that but for counsel's errors the outcome would have been different—i.e., the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence. *See Hill,* 474 U.S. at 59–60; *Pham v. United States,* 317 F.3d 178, 182 (2d Cir.2003) (citations omitted). There is no support for the conclusion that, but for counsel's allegedly deficient representation, petitioner would have proceeded to trial or obtained a more favorable result. As noted above, counsel obtained a highly favorable sentence for petitioner notwithstanding the fact that he had no viable defense. Further, it is clear from the plea colloquy that petitioner had little intention, if any, of proceeding to trial in light of the charges he faced. *See*Dkt. No. 8, Sentencing Transcript, Aug. 22, 2008 at 12.

For the reasons set forth above, petitioner's ineffective assistance of counsel claim is denied and dismissed.

**H. Ineffective Assistance of Appellate Counsel**

Petitioner alleges, for the first time in this petition, that his appellate counsel provided ineffective assistance by citing incorrect facts in her brief and raising issues other than those petitioner intended to raise on appeal. *See* Pet. at 68. Petitioner further argues that appellate counsel was ineffective because the Appellate Division chose not to address the claims raised in his pro se brief. *Id.*

This claim is unexhausted because petitioner has never raised these arguments in any state court proceeding. *See Daye,* 696 F.2d at 191 ("[T]he exhaustion doctrine provides that a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim."). Nonetheless, petitioner may still bring these allegations to the state courts' attention through a writ of error coram nobis. *See Boynton v. Hicks,* No. 1:02–CV–1439, 2003 WL 22087634, at \*3 (S.D.N.Y. Sept. 9, 2003) ("In New York, a common law writ of error coram nobis is the proper vehicle for bringing a claim of ineffective assistance of appellate counsel[.]"); *Rodriguez v. New York,* No. 1:00–CV–1399, 2000 WL 962748, at \*2– 3 (S.D.N.Y. July 11, 2000) (noting that there is no time limit for filing a writ of error coram nobis, and such a motion may be filed after direct appeal).

Because petitioner still has state court remedies available to pursue this unexhausted claim, his habeas petition is considered "mixed" inasmuch as it includes both exhausted and unexhausted claims. *Pratt v. Greiner,* 306 F.3d 1190, 1197 (2d Cir.2002). When faced with a mixed petition such as this, a district court may: (1) dismiss the petition in its entirety without prejudice; (2) consider the unexhausted claim and deny the entire petition on the merits; (3) allow the petitioner to delete the unexhausted claims and proceed only with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims. *See*28 U.S.C. § 2254(b)(2); *Rhines v. Weber,* 544 U.S. 269, 273–74 (2005); *Manzullo v. New York,* No. 1:07–CV–0744, 2010 WL 1292302, at \*3 (E.D.N.Y. Mar. 29, 2010). In the interest of judicial efficiency, the Court elects to consider this unexhausted claim and deny the petition in its entirety. [6]

 **\*14** A criminal defendant has the right to the effective assistance of counsel on direct appeal of his conviction. *Evitts v. Lucey,* 469 U.S. 387, 395–96 (1985). A petitioner alleging ineffective assistance of appellate counsel must prove (1) that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) that, absent counsel's deficient performance, there was a reasonable probability that

the defendant's appeal would have been successful. *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001).

Appellate counsel's failure to raise any particular claim does not, by itself, demonstrate ineffectiveness. The Supreme Court has clearly stated that appointed counsel is not required to "press [even] nonfrivolous points" if, as a matter of "professional judgment," counsel opts against such a strategy.*Jones v. Barnes,* 463 U.S. 745, 751 (1983). Counsel is entrusted with discretion to decide which points to argue because effective appellate advocacy involves focusing on a few key issues and "winnowing out weaker arguments" that may detract from those claims. *Id.* at 751–52.Just as a trial counsel's strategic choices deserve deference, an appellate counsel's strategy in the selection of issues should not be second-guessed based on hindsight. *McKee v. United States,* 167 F.3d 103, 106 (2d Cir.1999).

A review of the appellate brief filed on behalf of petitioner indicates that appellate counsel's strategy was reasonable and sound, and the claims asserted in her brief were cogently argued. *See*Dkt. No. 8, Ex. A, Appellant's Br. at 12–31. Appellate counsel raised three colorable arguments on appeal, all of which, if successful, would have resulted in vacatur of petitioner's guilty plea or reduction of his sentence. *Id.* Her decision to focus on the validity of petitioner's guilty plea was certainly reasonable. *See Belle,* 74 A.D.3d at 1479–80.

Petitioner, nonetheless, contends that appellate counsel was ineffective for failing to argue the claims raised in his pro se brief. Pet. at 68. However, as the Appellate Division correctly determined, these claims were either meritless or unpreserved for review. *See Belle,* 74 A.D.3d at 1479–80. For instance, petitioner's Fourth Amendment argument was flatly contradicted by the evidence. *Id.* at 1479 ("[B]ased on the caller's description of the shooter and upon [petitioner's] act in fleeing upon being confronted, ... the police had reasonable suspicion to believe a crime had been committed such that [petitioner's] pursuit and detention were justified."). It is well settled that appellate counsel is not required to raise every conceivable issue, especially claims that have little or no chance of success. *See Jones v. Barnes,* 463 U.S. 745, 751–52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio,* 269 at 99 (holding that it is not ineffective assistance for counsel to omit meritless claims).

**\*15** Moreover, despite petitioner's contention otherwise, appellate counsel's mistake in stating that a *Wade* had hearing

occurred in this case does not evidence ineffective assistance. *See* Pet. at 68; Dkt. No. 8, Ex. A, Appellant's Br. at 9. To the extent appellate counsel erred, it was harmless. The Appellate Division was aware that such a hearing never occurred because it rejected petitioner's pro se argument that the trial court improperly failed to conduct such a hearing. *See Belle,* 74 A.D.3d at 1479. Inconsequential drafting errors do not result in ineffective assistance. *See Clarke v. Poole,* 440 F.Supp.2d 235, 242 (W.D.N.Y.2006) (rejecting ineffective assistance claim where, although motion papers were "inartfully drafted," the state court considered the underlying argument); *Boyd v. Hawk,* 965 F.Supp. 443, 452 (S.D.N.Y.1996) (rejecting ineffective assistance claim where, despite sloppy drafting, the motion submitted was not alleged to have "omitted any issues that should have been raised").

Petitioner's argument that counsel was ineffective because the Appellate Division did not address the claims raised in his pro se brief is equally meritless. First, it appears the Appellate Division did in fact address the claims advanced by petitioner. *See Belle,* 74 A.D.3d at 1479–80. In any event, it is within the court's discretion to respond specifically, or not at all, to arguments made by the parties. *See Bennett v. United States,* No. 1:05–CV–3666, 2013 WL 139551, at \*4 (S.D.N.Y. Jan. 13, 2013). Counsel can hardly be faulted for the Appellate Division exercising its discretion in addressing petitioner's arguments.

The record in this case is clear that there was no deficiency in appellate counsel's representation, and even if there was, there is no reasonable probability that the result of the proceedings would have been different. Habeas relief on this ground is therefore denied.

# IV. CONCLUSION
**WHEREFORE,** it is

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED** in its entirety and **DISMISSED;** and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Decision and Order on the parties in accordance with the Local Rules; and it is further

**ORDERED** that no certificate of appealability shall be issued in this case because petitioner has failed to make a

"substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2). [7]

**All Citations**

Slip Copy, 2013 WL 992663

Footnotes

1    For the sake of clarity, the cited page numbers refer to the electronically generated numbers at the top right hand corner of each page of the petition.

2    Online records from the New York State Department of Corrections indicate that petitioner was released from custody in December 2012, after serving five years, and that he remains on parole until 2016. Because petitioner is on parole and was incarcerated at start of this action, this case remains justiciable by this Court. *See Ruddy v. Bocaud,* No. 9:08–CV–1319 (LEK), 2009 WL 5030790, at *2 (N.D.N.Y. Dec. 14, 2009) (citing *Spencer v. Kemna,* 523 U.S. 1, 6–7 (1998)).

3    In any event, Petitioner's claim attacking the indictment is not cognizable on federal habeas review. *See, e.g., Brazeau v. Zon,* No. 1:04–CV–0031, 2007 WL 2903617, at *7 (W.D.N.Y. Oct. 1, 2007) (holding that claims attacking the indictment process are not reviewable in a federal habeas action).

4    Although a valid guilty plea can foreclose habeas review of a double jeopardy claim under appropriate circumstances, *compare Menna v. New York,* 423 U.S. 61, 62 (1975) (holding that otherwise valid guilty pleas can be set aside where the charges violate double jeopardy), *with Hall v. Conway,* 630 F.Supp.2d 283, 291 (W.D.N.Y.2009) (finding that petitioner's guilty plea foreclosed review of his double jeopardy claim), the lack of clarity with respect to petitioner's double jeopardy arguments precludes the Court from determining whether this bar is appropriate here. As such, the Court declines to find that petitioner's double jeopardy claim is barred by the guilty plea.

5    A petitioner need not exhaust available state remedies if there is no opportunity to obtain redress in state court, or if the corrective process is so clearly deficient as to render futile any effort to obtain relief. *See* 28 U.S.C. § 2254(b)(1). Petitioner does not contend, nor does the Court find, that New York's post-conviction procedures are inadequate to adjudicate this claim.

6    The Second Circuit and the Supreme Court have not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2). Some lower federal courts have expressed the test as whether it is "perfectly clear" that the petitioner does not raise even a colorable federal claim, while others have asked whether the petitioner's unexhausted claims are "patently frivolous ." *See Morgan v. Lee,* No. 1:11–CV–0390, 2012 WL 5336167, at *7 (W.D.N.Y. Oct. 26, 2012) (collecting and comparing cases). The Court need not decide which standard is appropriate, as the unexhausted claim presented here does not warrant habeas relief under any possible standard of review.

7    *See Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003) ( "[Section] 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right' " (citation omitted)).

WestlawNext® © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 316757
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

David A. COONS, Petitioner,
v.
SUPERINTENDENT, Respondent.

No. 9:11–CV–1502 (NAM/
CFH).    |    Jan. 28, 2014.

**Attorneys and Law Firms**

David A. Coons, Auburn, NY, pro se.

Hon. Eric T. Schneiderman, Alyson J. Gill, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for Defendants.

---

### *ORDER*

NORMAN A. MORDUE, Senior District Judge.

 **\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Christian F. Hummel,
duly filed on the 9th day of September 2013. Following
fourteen (14) days from the service thereof, and two
extensions having been given, the Clerk has sent me the file,
including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including
the Magistrate Judge's Report–Recommendation, and no
objections submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby adopted in its
entirety.

2. Coon's petition for a writ of habeas corpus is denied.
Pursuant to 28 U.S.C. § 2253(c)(2), no certificate of
appealability will be issued.

3. The Clerk of the Court shall serve a copy of this Order upon
all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION AND ORDER [1]

CHRISTIAN F. HUMMEL, United States Magistrate Judge.

Petitioner pro se David A. Coons ("Coons") is an inmate
currently in the custody of the New York State Department
of Corrections and Community Supervision ("DOCCS")
at Auburn Correctional Facility. On January 9, 2009, the
Schenectady County Court entered a judgment of conviction
against Coons after Coons pled guilty to three counts of
burglary in the third degree on May 5, 2008. Tr. (Dkt. No.
10–18) at 38:7–11, 90:11–91:5. [2] The county court sentenced
Coons as a persistent felony offender ("PFO") to three
concurrent indeterminate prison terms of fifteen years to life.
Pet. (Dkt. No. 1) ¶ 3; Tr. at 101:10–102:14. Coons is presently
serving that sentence. [3]

Coons now seeks a writ of habeas corpus pursuant to 28
U.S.C. § 2254 on the grounds that: (1) his sentence as a PFO
was unconstitutional pursuant to *Apprendi v. New Jersey,* 530
U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (5–4) and
illegally imposed under New York Criminal Procedure Law
("CPL") § 400.20; (2) his Florida conviction was improperly
used to enhance his sentence; (3) he received ineffective
assistance of appellate counsel because on direct appeal,
appellate counsel failed to raise the claims contained in his
pro se CPL § 440 .20 motion; (4) his plea was involuntarily
entered; [4] and (5) his motion to set aside his sentence was
improperly dismissed as a motion to vacate his conviction.
Pet. ¶ 12. Respondent opposes Coons's petition. Resp't Mem.
of Law (Dkt. No. 8). Coons filed a traverse, in which he
renewed his motion for appointment of counsel. Dkt. No. 18
at 1. For the reasons that follow, it is recommended that the
petition and motion be denied.

### I. Background

#### A. Plea

On September 8, 2006, May 7, 2007, and May 9, 2007, Coons
unlawfully entered and remained in different buildings with
the intent to commit a crime. Tr. at 39, 63:24–65:3. Coons was
charged in two separate indictments that were consolidated
with a third indictment. Dkt. No. 10–3 at 8. All indictments
included burglary charges. *Id.*

***2** On May 5, 2008, Coons reached a plea agreement with prosecution and appeared before the Honorable Richard E. Sise. Tr. at 38:7–11. In exchange for Coons's guilty plea, the prosecution agreed to dismiss part of the third indictment. *Id.* at 39:8–41:15.Prosecution proceeded to present the county court with a PFO Statement pursuant to CPL § 400.20 and New York Penal Law ("PL") § 70.10. *Id.* at 41:16–42:1.The PFO Statement indicated that Coons was previously convicted of burglary twice in New York and once in Florida, the latter of which resulted in a five-year sentence. [5] *Id.* at 92:6–18; Dkt. No. 10–17.Prosecution explained to Coons that the PFO status would enhance Coons's sentencing range. Tr. at 62:23–63:13. Coons acknowledged this enhancement and pled guilty to three counts of burglary.*Id.* at 63:16–65:3.

On June 19, 2008, the county court adjourned sentencing because a pre-sentencing report indicated that Coons had attempted to commit suicide during an interview with a probation officer. Tr. at 76:17–77:6, 79:19–23. Two psychiatric examiners found Coons to be mentally incapacitated and Coons was remanded to the custody of the Commissioner of Mental Health for treatment.Dkt. No. 10–1 at 4, 6–7.On November 14, 2008, another psychiatric examiner determined that Coons was "no longer an incapacitated person." Dkt. No. 10–2 at 2.

### B. Sentencing

On January 9, 2009, Coons reaffirmed his guilty plea. Tr. at 90:17–91:5. The county court advised Coons that he could admit, deny, or stand mute as to whether he was the same person as indicated in the PFO Statement, to which Coons replied that he was the same person indicated in the PFO Statement and did not contest the existence or constitutionality of his prior convictions.*Id.* at 93:11–22.

To support its sentencing range, the county court reasoned that Coons had twenty-four prior convictions in New York State, two prior youthful offender adjudications, four prior felony convictions in total, and "much of [Coons's] ... criminal arrests in New York State involve[d] crimes related to theft of property, more specifically burglary."Tr. at 97:2–20. The county court commented that Coons had a lengthy criminal history in Florida, which included a burglary conviction. *Id.* at 97:20–25.The county court turned to Coons's personal life and noted "a tragic accident in his life, wherein his sister was killed in connection with a firearm" and "it's clear that [Coons] ... continues to punish himself, continues to medicate himself on illegal substance...."*Id.* at 98:12–13.The county court next stated,

> I am of the opinion that your own criminal history, character, based upon the nature of the crimes that you've committed in the past, have been convicted of committing in the past, the burglaries, which I have no doubt relate to your difficulty which drug addition, indicate to me that an extended period of incarceration and lifetime supervision will best serve the public interest.

***3** *Id.* at 99:4–11.The county court then sentenced Coons. *Id.* at 101:24–103:20.

### C. Direct Appeal

On November 30, 2009, Coons filed a counseled brief on direct appeal to the Appellate Division, Third Department ("Appellate Division").Dkt. No. 10–3.Coons argued that since he was found incapacitated subsequent to his guilty plea, Coons should have been presumed incompetent at the time of the plea, and the county court should have sua *sponte* ordered a CPL § 730 [6] psychiatric examination for Coons prior to taking the plea. *Id.* at 18–21.On May 10, 2010, the Appellate Division unanimously affirmed the conviction.*People v. Coons,* 73 A.D.3d 1343, 1344, 901 N.Y.S.2d 406 (3d Dep't 2010). First, the Appellate Division noted that Coons failed to preserve his claim of an involuntary plea because Coons failed to move to withdraw his plea or vacate his judgment of conviction. *Id.* (citing *inter alia People v. Dantzler,* 63 A.D.3d 1376, 1377, 881 N.Y.S.2d 222 (3d Dep't 2009), *lv. denied*14 N.Y.3d 799, 899 N.Y.S.2d 133, 925 N.E.2d 937 (2010)). Second, the exception to the preservation requirement was inapplicable as Coons did not make any statements during his plea allocution that were either inconsistent with his guilt or doubted the voluntariness of the plea. *Id.* Third, upon review of the record, the Appellate Division found that Coons had actively participated in his own defense and understood the plea proceeding despite being medicated at the time. *Id.* at 1375, 899 N.Y.S.2d 133, 925 N.E.2d 937. Fourth, the Appellate Division reasoned "a determination that defendant was incapacitated subsequent to his plea is not evidence that defendant was incapacitated at the time of his plea."*Id.* (citing *inter alia People v. Gelikkaya,*

84 N.Y.2d 456, 459–60, 618 N.Y.S.2d 895, 643 N.E.2d 517 (1994)). And finally, it was noted that Coons ultimately did not request a competency hearing or move to withdraw his plea once he was found fit to proceed and reaffirmed his plea prior to sentencing. *Id.*

Coons's appellate counsel sought leave to appeal to the New York Court of Appeals ("Court of Appeals"), raising the same claim contained in the direct appeal. Dkt. No. 10–6.On August 4, 2010, the Court of Appeals denied Coons leave to appeal. *People v. Coons,* 15 N.Y.3d 803, 803, 908 N.Y.S.2d 163, 934 N.E.2d 897 (2010).

### D. New York Criminal Procedure Law ("CPL") § 440.20 Motion to Set Aside the Sentence

On December 24, 2010, Coons moved to set aside the sentence pursuant to CPL § 440.20, arguing that (1) sentencing him as a PFO was unconstitutional pursuant to the Sixth Amendment of the United States Constitution as construed by *Apprendi v. New Jersey* and its progeny, (Dkt. No. 10–10 at 52–56) [7] and (2) his Florida conviction was improperly used to enhance his sentence as a PFO. *Id.* at 48.

On July 19, 2011, Schenectady County Court Judge Karen A. Drago framed Coons's motion as one to vacate judgment rather than to set aside the sentence. Dkt. No. 10–13.Without reaching the merits, Judge Drago denied the motion pursuant to CPL § 440.10(2)(c) [8] because Coons's allegations "appear on the record and could have been raised on [Coons's] ... direct appeal." *Id.* at 2. Coons sought leave to appeal to the Appellate Division. Dkt. No. 10–4.Coons first enumerated certain claims raised in his CPL § 440 .20 motion and stated that motion was attached to his leave application. *Id.* at 5. Coons proceeded to argue how the county court improperly relied on CPL § 440.10 to deny his motion. *Id.* at 6–10.Coons also indicated that his appellate counsel was ineffective for failing to raise the sentencing claims in his CPL § 440.20 motion. *Id.* at 10.On October 5, 2011, the Appellate Division denied Coons application for leave to appeal. Dkt. No. 10–16.This petition followed.

### II. Exhaustion [9]

**\*4** It is well-settled that before seeking habeas review, a petitioner must first exhaust all state remedies. 28 U.S.C.

§ 2254(b), (c); *Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir.2003) (quoting *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001)). Specifically, 28 U.S.C. § 2254(b)(1)(A) & (B) directs that

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

*Id.*

The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Thus, pursuant to § 2254(b)(1)(A), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). State remedies are *properly* exhausted when the petitioner has "fairly presented" to the state court, *O'Sullivan,* 526 U.S. at 848, "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc) (citations omitted). The petitioner may fairly present the constitutional nature of his claim by

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194.In addition, the petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claim. *See O'Sullivan,* 526 U.S. at 847–48; *Brown v. Senkowski,* 152 F. App'x 15, 17 (2d Cir.2005). The petitioner bears the burden of proving exhaustion. *Colon v. Johnson,* 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998) (citations omitted).

In this case, Coons has partially exhausted the claim that his PFO sentence was unconstitutional. In his CPL § 440.20 motion, Coons employs *Apprendi v. New Jersey* and its progeny to argue that his sentence was unconstitutional. Thus, Coons had fairly presented the constitutional nature of this claim to the Appellate Division. *Daye,* 696 F.2d at 194. In his leave application, Coons alluded to this claim and attached the CPL § 440.20 motion. The Second Circuit has concluded that "[r]eferences to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting review leave to appeal."*Ramirez v. Attorney General of State of New York,* 280 F.3d 87, 97 (2d Cir.2001). Coons did more than incorporate his motion by reference. Coons alluded to specific claims in his motion, including the unconstitutionality of his PFO sentence. *Ford v. Crinder,* No. 97–CV–3031 (RMB/JCF), 2001 WL 640807, at *4 (S.D.N.Y. June 8, 2001) ("[Petitioner's] leave application did not merely incorporate by reference his entire appellate brief; rather, it alluded to each particular claim."). [10] Therefore, Coons has also fairly presented this portion of the claim in his leave application and it is exhausted. *Daye,* 696 F.2d at 194.

 **\*5** As for the portion of the claim alleging that Coons's PFO sentence was illegally imposed pursuant to CPL § 400.20 (Dkt. No. 10–10 at 24–39), this is partially exhausted. In his CPL § 440.20 motion, Coons argued that all mandatory procedural provisions of CPL § 400.20 were violated. Specifically, Coons was not afforded notice, a hearing, or fair adjudicative procedures. *Id.* at 24–25.Coons relied on two Supreme Court cases to support his right to reasonable notice before the deprivation of life, liberty, or property. *Id.* at 26 (citing *Specht v. Patterson,* 386 U.S. 605, 608–09, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) (concluding under the Colorado Sex Offenders Act, whether a defendant is an habitual offender was a "new finding of fact," requiring reasonable notice be provided the defendant); and *Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) ("there can be no doubt that at a minimum ... [the Due Process Clause] require[s] that deprivation of life,

liberty or property by adjudication be preceded by notice and opportunity....")). For the waiver of a hearing on his PFO status, Coons relied on *People v. Seaberg,* 74 N.Y.2d 1, 11, 543 N.Y.S.2d 968, 541 N.E.2d 1022 (1989), which in turn cited *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).*Id.* at 30.However, the portion Coons referred to in *Seaberg* concerns a different kind of waiver-the right to appeal a plea agreement. Finally, on adjudicative process, Coons relied on two state courts cases citing federal cases for the proposition that a defendant has a due process right to be sentenced based on reliable and accurate evidence. *Id.* at 36–38, 543 N.Y.S.2d 968, 541 N.E.2d 1022 (*People v. Naranjo,* 89 N.Y.2d 1047, 1049, 659 N.Y.S.2d 826, 681 N.E.2d 1272 (1997) (citing *United States v. Pugliese,* 805 F.2d 1117, 1123 (2d Cir.1986)); and *People v. Outley,* 80 N.Y.2d 702, 712, 594 N.Y.S.2d 683, 610 N.E.2d 356 (1993) (citing *Mempa v. Rhay,* 389 U.S. 128, 133, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)). Even though Coons alluded to the illegality of how he was sentenced as a PFO in his leave application, Dkt. No. 10–14 at 5, because Coons only raised certain arguments in federal constitutional terms, this claim is only partially exhausted.

Next, Coons has failed to exhaust the claim that county court had improperly used his Florida conviction in imposing his sentence. Dkt. No. 10–10 at 48.Coons couched this claim solely in state law terms, failing to raise it in federal constitutional terms. *Daye,* 696 F.2d at 194. Therefore, this claim is unexhausted. *Simpson v. Poole,* No. 07–CV–651, 2011 WL 1560963, at *9 (W.D.N.Y. Mar. 29, 2011) (reasoning petitioner's sentencing claim must fail because he "challenged his sentence on appeal solely as a violation of CPL § 400.21(2)").

Coons's ineffective assistance of appellate counsel claim is also unexhausted. Under New York law, a petitioner must raise an ineffective assistance of appellate counsel claim in a *coram nobis* motion. *Taylor v. Scully,* 674 F.Supp. 462, 463 (S.D.N.Y.1987) (citations omitted); *People v. Bachert,* 69 N.Y.2d 593, 595–96, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987). Despite indicating in the leave application that his appellate counsel was ineffective, because Coons failed to file a *coram nobis* motion in state court, he never apprised each state court level of his federal ineffective assistance of appellate counsel claim. However, Coons can return to the Appellate Division and raise this claim in a *coram nobis* motion. *Smith v. Duncan,* 411 F.3d 340, 347 n. 6 (2d Cir.2005) (noting there is no time limit for filing a writ of error coram nobis) (citations omitted); *People v. Bachert,* 69

N.Y.2d 593, 595–96, 599, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987) (holding that a *coram nobis* motion is the appropriate mechanism for raising a claim of ineffective assistance of appellate counsel at the appellate court). Thus, this claim remains unexhausted.

**\*6** Coons's involuntary plea claim is exhausted. Coons's appellate counsel presented the claim to the Appellate Division by relying on Supreme Court precedents. Dkt. No. 10–3 at 18.Appellate counsel raised the same claim in the leave application to the Court of Appeals, citing *Medina v. California,* 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). As such, Coons has fairly presented this claim in federal constitutional terms to the highest state court of New York. Thus, this claim is exhausted. *Daye,* 696 F.2d at 194.

Lastly, Coons's claim that his CPL § 440.20 motion was improperly dismissed remains unexhausted. Coons presented this claim in his leave application. Even though the state court had employed an incorrect statute to dismiss the CPL § 440.20 motion, Coons's claim is a dispute between the application of two state statutes and Coons did not present it in federal constitutional terms. Thus, this claim is unexhausted.

A claim that was not fairly presented to the state courts and does not satisfy the requirements of § 2254(b)(1) may still be "deemed" exhausted by the habeas court "if it is clear that the state court would hold the claim procedurally barred."*Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (collecting cases); *Aparicio,* 269 F.3d at 90 ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile."). Here, Coons's sentencing claims are not deemed exhausted and procedurally barred. The county court incorrectly dismissed Coons's CPL § 440.20 motion pursuant to CPL § 440.10, which is inapplicable to Coons's motion. "Section 440.20 permits a movant to bring a collateral attack on the legality of his sentence any time after conviction unless the issue was previously determined on the merits on direct appeal."*Saracina v. Artus,* No. 04–CV–521, 2007 WL 2859722, at \*7 (W.D.N.Y. Sept. 26, 2007), *aff'd,*452 F. App'x 44 (2d Cir.2011) (citations omitted). Coons did not raise his unexhausted sentencing claims on direct appeal; therefore, they can be raised in a second CPL § 440.20 motion. *Id.* ("Saracina is not procedurally barred from presenting his federal claims to the state courts ... by way of a third § 440.20

motion...."). As for the ineffective assistance of appellate counsel claim, Coons can return to state court and file a *coram nobis* motion.

Accordingly, Coons's unexhausted sentencing and ineffective assistance of appellate counsel claims are not deemed exhausted.

### III. Independent and Adequate State Law Ground

Federal habeas review of a question of federal law decided by a state court is prohibited if the state court rested its judgment "on a state law ground that is independent of the federal question and adequate to support the judgment."*Coleman,* 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); *see also Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995)."This rule applies whether the state law ground is substantive or procedural."*Coleman,* 501 U.S. at 729 (citation omitted)."Because it can be difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference, ... such reliance on state law must be clear from the face of the opinion."*Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000) (internal quotation marks omitted) (citing *Coleman,* 501 U.S. at 732, 735). Thus, the mere existence of a state procedural default is not enough, as the Supreme Court explained,

> **\*7** the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case. Moreover, we will not assume that a state-court decision rests on adequate and independent state grounds when the state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.

*Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (internal quotation marks and citations omitted).

In addition to being "independent," the state procedural bar must also be "adequate." *Cotto,* 331 F.3d at 239. Adequacy requires a state procedural ground that is "strictly or regularly followed." *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (citations omitted). A violation of such "firmly established and regularly followed" state rules would ordinarily be adequate to bar federal review. *Cotto,* 331 F.3d at 239–40 (internal quotation marks omitted). In an "exceptional case[ ] in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question[,]" the court considers three guideposts in determining whether a procedural bar is adequate to preclude federal review of claims raised in the petition:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* at 240. A claim that is procedurally defaulted due to an adequate and independent state law ground may also avoid the procedural bar if the petitioner shows cause for the default and actual prejudice, or a miscarriage of justice will result if the claims are not considered. *Coleman,* 501 U.S. at 750; *DiGuglielmo,* 366 F.3d at 135.

For the reasons stated *supra,* Coons's unexhausted sentencing claims are not barred by an independent and adequate state law ground because an incorrect statute was employed in dismissing Coons's CPL § 440.20 motion. However, the Appellate Division denied Coons's involuntary plea claim because Coons failed to preserve this claim by moving to withdraw his plea or vacate his judgment of conviction.

*People v. Dantzler,* 63 A.D.3d 1376, 1377, 881 N.Y.S.2d 222 (3d Dep't 2009); *People v. Sorey,* 55 A.D.3d 1063, 1064, 866 N.Y.S.2d 393 (3d Dep't 2008), *lv. denied* 11 N.Y.3d 930, 874 N.Y.S.2d 16, 902 N.E.2d 450 (2009). Such a procedural bar is provided by CPL § 440.10(3)(a), [11] which constitutes an independent and adequate state law ground. *Witt v. Racette,* No. 10–CV9180 (JPO), 2012 WL 3205177, at *8 (S.D.N.Y. Aug.7, 2012) (citation omitted).

**\*8** As for cause and prejudice or a miscarriage of justice, neither is present in the record. Ineffective assistance of counsel may constitute cause and to successfully allege it, the petitioner must raise it as a separate and meritorious claim. *Edwards v. Carpenter,* 529 U.S. 446, 451–52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Even though Coons raised ineffective assistance of appellate counsel as a separate claim, as discussed *infra,* he has failed to demonstrate that the claim is meritorious. Thus, Coons has failed to establish cause for overcoming the procedural bar. Because cause is not established, the Court does not need to reach the inquiry on prejudice. *Horton v. Ercole,* 557 F.Supp.2d 308, 323 (N.D.N.Y.2008) (citations omitted). As for the fundamental miscarriage of justice, Coons does not allege new evidence tending to establish his actual innocence. Thus, Coons's exhausted involuntary plea claim is procedurally defaulted.

Accordingly, Coons's involuntary plea claim is barred by an independent and adequate state law ground.

### IV. Mixed Petition

A habeas petition containing both exhausted and unexhausted claims is a "mixed" petition. *Rhines v. Weber,* 544 U.S. 269, 271, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). A district court confronted with a mixed petition has discretionary power to dismiss it in its entirety, or "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Rhines,* 544 U.S. at 275. The stay-and-abeyance procedure is available only when the petitioner's failure to exhaust his claims was based on good cause. *Id.* at 277. However, even if good cause exists, granting a stay would be an abuse of discretion if the unexhausted claims are plainly meritless. *Id.* (citation omitted). Here, Coons has not provided good cause for his failure to exhaust his claims.

Coons argues that the ineffectiveness of his appellate counsel serves as good cause. However, as discussed infra, this claim, alongside all of Coons's exhausted and unexhausted claims, are meritless. Accordingly, this Court may review the merits of these claims.

## V. Merits

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may grant a writ of habeas corpus only if the state court's adjudication on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir.2006); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir.2005).

**\*9** The Supreme Court has given independent meaning to the "contrary to" and "unreasonable application" clauses in § 2254(d)(1).Williams, 529 U.S. at 405. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."Id. at 412–13.As for the "unreasonable application" clause, a writ may be granted if "the state court's application of clearly established federal law was objectively unreasonable."Id. at 409, 413."[A]n unreasonable application of federal law is different from an incorrect application of federal law."Id. at 410.In addition, the statutory phrase "clearly established Federal law ... refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions...."Id. at 412 (internal citations omitted).

The petitioner bears the burden of proving, by a preponderance of the evidence, that "he is in custody in

violation of the Constitution or laws or treaties of the United States."28 U.S.C. § 2254(a); see also Smalls v. Batista, 191 F.3d 272, 278 (2d Cir.1999); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir.1997). Further, when evaluating a habeas petition, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."28 U .S.C. § 2254(e)(1); DeBerry, 403 F.3d at 66.

On the other hand, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo."Kimbrough v. Bradt, No. 12–CV–0034 (DNH), 2013 WL 2545379, at \*4 (N.D.N.Y. June 11, 2013) (citing Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir.2009) (quoting Spears v. Greiner, 459 F.3d 200, 203 (2d Cir.2006)). Furthermore, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."Harrington v. Richter, ––– U.S. ––––, ––––, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011). Except for the involuntary plea claim, because the state court did not adjudicate the merits of Coons's claims, this Courts review the merits of those claims de novo.

### B. Unconstitutionality of PFO Sentence

Coons contends that being sentenced as a PFO violated his Sixth Amendment right to an impartial jury as construed by the Supreme Court in Apprendi v. New Jersey and its progeny. The Apprendi Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt...."Apprendi, 530 U.S. at 490. This holding does not apply to judicial factfinding of a defendant's sentence that is within the authorized statutory range. Apprendi, 530 U.S. at 490 ("[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed."). Coons essentially contends that the imposition of an enhanced sentence based on additional factual findings, other than the fact of a prior conviction, should have been made by a jury.

**\*10** Under New York law, a PFO "is a person ... who stands convicted of a felony after having previously been convicted

of two or more felonies."N.Y. PENAL LAW § 70.10(1)(a). A PFO sentence

> may not be imposed unless, based upon evidence in the record of a hearing ... the court (a) has found that the defendant is a[PFO] ... and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest.

N.Y. CRIM. PROC. LAW § 400.20(1). After determining a defendant is a PFO, a court may, in its discretion, impose an indeterminate sentence authorized for a class A–I felony, which ranges from a minimum of fifteen years and a maximum of life in prison. *Id.* §§ 70.00(3)(a)(i), 70.10(2)."[T]he statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (emphasis in original) (internal quotation marks and citations omitted). The Second Circuit found that "judicial factfinding that is undertaken to select an appropriate sentence *within* an authorized range—up to and including the *Apprendi* maximum-does not offend the Sixth Amendment."Portalatin v. Graham,* 624 F.3d 69, 88 (2d Cir.2010) (en banc), *cert. denied,*131 S.Ct. 1691 (2011).

The Second Circuit also upheld the constitutionality of PL § 70.10, stating, "the PFO statute—as interpreted by the New York Court of Appeals—creates a recidivist sentencing scheme in which the only factual predicates necessary to impose the enhanced sentence relate to the defendant's criminal history."Portalatin, 624 F.3d at 93–94. Specifically, the Court of Appeals interpreted the PFO statute to mean that "defendants are eligible for [PFO] sentencing based *solely* on whether they had two prior convictions" and "no additional factfinding beyond the fact of two prior felony convictions is required" to impose the enhanced PFO sentence. *Id.* at 88–89 (citing *People v. Rivera,* 5 N.Y.3d 61, 66–68, 800 N.Y.S.2d 51, 833 N.E.2d 194 (2005) (emphases in original). Any facts other than the fact of the two prior convictions merely inform the judge's discretion to select the appropriate sentence. *Id.* at 89, 800 N.Y.S.2d 51, 833 N.E.2d 194.

Here, the county court determined that Coons was a PFO. Further fact-finding was unnecessary to sentence Coons as a PFO, rather, such additional facts going to the history and character of Coons, as well as the nature and circumstances of Coons's criminal conduct, merely informed the county court's discretion in crafting the appropriate sentence. Coons was sentenced to a minimum of fifteen years with life-imprisonment as the maximum. Given that Coons was properly sentenced within the statutory range pursuant to *Apprendi* and its progeny, and the Second Circuit's affirmation of PL § 70.10's constitutionality, Coons's claim based on the constitutionality of his PFO sentence is without merit.

**\*11** Accordingly, Coons's petition on this claim should be denied.

## C. Illegality of PFO Sentence & Improper Use of Florida Conviction

Coons contends that he was illegally sentenced as a PFO under CPL § 400.20 and his sentence was improperly enhanced based on a Florida conviction. These claims must be denied for several reasons outlined below.

First, Coons's claims are not cognizable on habeas review. Both these claims are grounded in state-law. "As the Supreme Court has long held, 'state courts are the ultimate expositors of state law;'" thus, these issues are not cognizable on federal habeas review. *Portalatin,* 624 F.3d at 88–89 (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)). Further, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."Ortiz v. N.Y.S. Parole in Bronx, N.Y.,* 586 F.3d 149, 158 (2d Cir.2009) (quoting *inter alia Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). As such, judicial review of the state court's application of § 400.20 is unavailable.

Furthermore, with regard to Coons's Florida conviction, the Second Circuit has held that "[w]hether a New York court erred in applying a New York recidivist sentencing enhancement statute is a question of New York State law...."Saracina v. Artus,* 452 F. App'x 44, 46 (2d Cir.2011). The Second Circuit continued, "[i]ndeed, we have previously held that whether a foreign conviction can serve to enhance a New York State sentence is a question of state law not cognizable on federal habeas review."Id.* (citing *inter alia*

*United States v. ex rel. Dennis v. Murphy,* 265 F.2d 57, 58 (2d Cir.1959) (per curiam)). Therefore, whether the Florida conviction should be employed as one of two prior felony convictions for purposes of determining Coons's PFO status is a matter of state law not cognizable on habeas review.

Second, Coons's claims are without merit. Pursuant to CPL § 400.20, in determining whether to sentence a defendant as a PFO, a sentencing court must conduct a hearing and apply the two-pronged analysis as discussed *supra,* first determining whether the defendant was previously convicted of at least two felonies then whether an enhanced sentence is in the public interest. N.Y. CRIM. PROC. LAW § 400.20(1)(b).

In this case, the necessary procedures to determine Coons's PFO status were properly followed. Pursuant to CPL § 400.20 and PL § 70.10, prosecution filed a PFO statement alleging that Coons was a PFO based on three prior felonies: 1987 and 1991 convictions in New York State for third-degree burglary and a 2000 conviction in Florida for burglary in the first degree. At his sentencing hearing, Coons admitted he was the same person referenced in the PFO statement and did not challenge the constitutionality of the prior convictions. As such, Coons waived his right to a hearing on this issue, became eligible for a PFO sentence, and both a hearing notice and adjudicative processes became unnecessary. *People v. Andre,* 232 A.D.3d 884, 885–86 (3d Dep't 1996) (noting a defendant's admission to the PFO charge serves as an effective waiver of the right to a hearing on the matter). The second prong of the test was satisfied when the county court explained on-the-record why an extended period of incarceration and lifetime supervision would best serve the public interest.*Id.* at 886.Therefore, the county court complied with CPL § 400.20 and Coons was legally sentenced.

**\*12** Coons's claim involving his Florida conviction is also without merit. An out-of-state conviction qualifies as a prior felony conviction if it is "a crime in any other jurisdiction provided that a sentence to a term of imprisonment in excess of one year ... was imposed...."N.Y. CRIM. PROC. LAW § 70.10(1)(b)(i). Here, Coons was sentenced to a five-year prison term for the Florida conviction. This conviction clearly fits into requirements of PL § 70.10(1)(b)(i). Moreover, "Penal Law § 70.10 does not require that a crime in another jurisdiction be a felony under New York law."*People v. Ortiz,* 180 Misc.2d 783, 789, 691 N.Y.S.2d 683 (N.Y.Sup.Ct.1998). Thus, the county court properly employed the Florida

conviction in determining Coons's PFO status and this claim is without merit.

Accordingly, Coons's petition on these claims should be denied.

### D. Ineffective Assistance of Appellate Counsel

Coons's claim of ineffective assistance of appellate counsel is also without merit. The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."U.S. CONST. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel."*McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To prevail on this claim, petitioner must satisfy a two-prong test showing that his counsel's performance was deficient and that such deficient performance caused actual prejudice to the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Deficient performance" requires petitioner to show that counsel's performance "fell below an objective standard of reasonableness."*Murden v. Artuz,* 497 F.3d 178, 198 (2d Cir.2007) (quoting *Strickland,* 466 U.S. at 688). "Prejudice" requires petitioner to show that there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."*Id.*

Federal courts apply a "highly deferential" standard of review for a claim of ineffective assistance of counsel alleged in a habeas corpus petition. *Premo v. Moore,* —— U.S. ——, ——, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011) (collecting cases). A federal habeas court must not equate unreasonableness under *Strickland* with unreasonableness under § 2254(d) for once the latter applies, "the question is not whether counsel's actions were reasonable ... [but it is] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."*Id.*

The *Strickland* standard for examining the effectiveness of trial counsel applies equally to the effectiveness of appellate counsel. *Aparicio,* 269 F.3d at 95. Appellate counsel is not ineffective for failing to raise meritless or weak claims. *Id.* at 99;*see Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (holding that appellate counsel is not obligated to raise every nonfrivolous claim

or argument). A petitioner may prevail on this claim if he or she shows that appellate counsel omitted "significant and obvious issues while pursuing issues that were clearly and significantly weaker."*Clark v. Stinson,* 214 F.3d 315, 322 (2d Cir.2000) (citation omitted).

**\*13** Appellate counsel's performance did not fall below an objective standard of reasonableness and was not deficient. Appellate counsel filed a brief claiming that Coons was incompetent at the time he entered the plea and the plea court should have sua *sponte* ordered a CPL § 730 competency evaluation to determine whether Coons's plea was knowing, voluntary, and intelligent. Appellate counsel's legal arguments are "reasonable and sound, and ... the claims asserted ... were cogently argued."*Johnson v. Ricks,* No. 02–CV–1366, 2007 WL 3171782, at *6 (N.D.N.Y. Oct. 29, 2007). Because Coons cannot establish that merit of his sentencing claims, see subsection V(B)(C), such a motion as envisioned by Coons would be meritless and counsel is not required to make meritless arguments. *See, e.g., United States v. Kirsh,* 54 F.3d 1062, 1071 (2d Cir.) ("the failure to make a meritless argument does not rise to the level of ineffective assistance), *cert. denied,*516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995). Coons cannot show that appellate counsel had "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."*Clark,* 214 F.3d at 322. Thus, it follows that even assuming appellate counsel's performance was deficient, the deficiency did not cause actual prejudice to Coons because Coons's sentencing claims are without merit and the outcome would not have been different.

Accordingly, Coons's petition on this claim should be denied.

### E. Involuntary Plea

Coons's claim based on the voluntariness of his plea is without merit. Coons argued that his plea was not knowingly and voluntarily entered on May 5, 2008 because he was found incompetent to proceed subsequent to that date. Coons also argued the county court should have *sua sponte* ordered a CPL § 730 examination at the time.

"When evaluating the voluntariness of a guilty plea, a habeas court must examine the totality of the circumstances surrounding that plea."*Joseph v. Fischer,* No. 02–CV–4809, 2003 WL 68032, at *5 (S.D.N.Y. Jan.7, 2009) (citing *Henderson v. Morgan,* 426 U.S. 637, 644–45, 96 S.Ct. 2253,

49 L.Ed.2d 108 (1976)). The Court asks "whether the accused understand[s] the nature of the constitutional protections that he is waiving and whether his admission can stand as an intelligent admission of guilt."*Id.* (quoting *Henderson,* 426 U.S. at 645 n. 13 (internal quotation marks omitted)).

Here, the record belies Coons's claims. First, as the Appellate Division found, Coons had actively participated in his plea allocution. During the plea allocution, Coons was able to answer basic questions concerning his age, date of birth, address, and whether he understands English. Dkt. No. 10–18 at 51:17–52:15.The county court inquired into Coons's medication intake, to which Coons replied that while he was medicated, he was able to think and speak clearly that day. *Id.* at 52:16–54:4.Coons responded that no one had threatened, coerced, or forced him to plead guilty and he plea was free and voluntary. *Id.* at 57:19–24.Coons also acknowledged that he understood the terms of his plea agreement and he could face an enhanced sentence. *Id.* at 58:19–59:19.Thus, the plea colloquy demonstrates that Coons voluntarily entered the guilty plea. Second, also noted by the Appellate Division, the Court of Appeals has concluded that "mental illness subsequent to indictment is not evidence of incompetency at the time of the [the plea] proceeding."*People v. Gelikkaya,* 84 N.Y.2d 456, 459–60, 618 N.Y.S.2d 895, 643 N.E.2d 517 (1994). Therefore, the fact that Coons was found incompetent after entering his plea does not negate the voluntariness of the plea. The Appellate Division's decision to dismiss this claim was not an unreasonable determination of the facts. This claim is without merit.

**\*14** Accordingly, Coons's petition on this claim should be denied.

### F. Improper Dismissal of CPL § 440.20 Motion

Coons's contention concerning the county court's improper dismissal of his CPL § 440.20 motion is without merit. As discussed, claims grounded in state-law, such as this claim concerning Judge Drago's decision, are not cognizable on federal habeas review. *Portalatin,* 624 F.3d at 88–89. Moreover, as discussed *supra,* those claims raised in the CPL § 440.20 motion are without merit. As such, it was reasonable for the Appellate Division to deny Coons's application for leave to appeal. *Harrington v. Richter,* ——U.S. ——, ——, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011).

Accordingly, Coons's petition on this claim should be denied.

## VI. Motion for Appointment of Counsel

In his traverse, Coons seeks the appointment of counsel for purposes of this petition. Courts cannot use a bright line-test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). As the Second Circuit stated in *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986), "the district judge should first determine whether the indigent's position seems likely to be of substance."*Id.* at 61.If the claim satisfies that requirement, the court must then consider

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge,* 802 F.2d at 61–62). That is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (citing *Hodge,* 802 F.2d at 61).

Here, the record reflects that Coons has made repeated requests for the appointment of counsel. Dkt. Nos. 3, 12, 18.Because it is recommended that Coons's habeas petition be denied, appointment of counsel at this time is unwarranted.

Accordingly, Coons's renewed motion for the appointment of counsel is denied without prejudice.

## VI. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that Coons's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED.**It is further **ORDERED** that Coons's renewed motion for appointment of counsel (Dkt. No. 18) be **DENIED** without prejudice.

It is further **RECOMMENDED** that no certificate of appealability should be issued with respect to any of Coons's claims as Coons has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).*See*28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

**\*15** Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.***Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Sec'y of HHS,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

### All Citations

Slip Copy, 2014 WL 316757

---

Footnotes

1    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2    The page numbers following "Tr." refer to the header numbers generated by CM/ECF, not the pagination of the individual transcripts.

3    Coons commenced service of his sentence on January 16, 2009. *See* DOCCS, INMATE POPULATION INFORMATION SEARCH, http:// nysdoccslookup.docs.ny.gov/GCA00P00/WIQ1/WINQ000 (lasted visited Aug. 29, 2013).

4    Coons brought the involuntary plea claim in his traverse.Dkt. No. 18 at 1.

5    Specifically, Coons was: (1) on or about January 21, 2000 convicted of burglary in the first degree in Florida; (2) on or about April 30, 1991 pled guilty to and convicted of burglary in third degree in Albany County, New York; and (3) on or about February 26, 1987 pled guilty to and was convicted of burglary in the third degree in Jefferson County, New York. Tr. at 66:15–67:7.

6   Section 730.30(1) of the New York Criminal Procedure Law states

> At any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held for the action of the grand jury, the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person.
>
> N.Y. CRIM. PROC. LAW § 730.30(1).

7   Coons cited additional Supreme Court precedents in support of this claim, including *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007).Dkt. No. 10–10 at 53–54.

8   The New York Criminal Procedure Law provides that

> [T]he court must deny a motion to vacate a judgment when:
>
> ...
>
> (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him....
>
> N.Y. CRIM. PROC. LAW § 440.10(2)(c).

9   Respondent concedes that Coons's petition was timely filed. Resp't Mem. of Law at 10–11. Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ( "AEDPA"), the one-year time period for filing a federal habeas corpus petition starts to run when the conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review."28 U.S.C. § 2244(d)(1)(A); *Cook v. N.Y. State Div. of Parole,* 321 F.3d 374, 279–80 (2d Cir.2003). A judgment of conviction becomes final at the conclusion of the ninety-day period during which the defendant could seek certiorari review from the United States Supreme Court. *Epps v. Poole,* 687 F.3d 46, 49 (2d Cir.2012) (citations and footnote omitted). Here, the Court of Appeals denied Coons leave to appeal on August 4, 2010; thus, Coons's time to seek a writ of certiorari expired ninety days thereafter, on November, 2 2010. Coons had until November 2, 2011 to file his petition. However, the time limitation period was tolled while the § 440.20 motion was pending. *Smith v. McGinnis,* 208 F.3d 13, 16 (2d Cir.2000) (citing 28 U.S.C. § 2244(d)(2)). The limitation ran for fifty-two days from when the conviction became final on November 2, 2010 through December 24, 2010, when Coons filed the § 440.20 motion. The limitation period was tolled until October 5, 2011 when the Appellate Division denied leave to appeal the § 440.20 decision. The limitations period ran for seventy-five days from October 5, 2011 until December 19, 2011, the date on the federal habeas petition. Thus, the petition was timely filed because the limitation period ran for a total of 127 days.

10  All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Recommendation.

11  New York Criminal Procedure Law provides

> Notwithstanding the provisions of subdivision one, the court may deny a motion to vacate a judgment when:
>
> (a) Although facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal.
>
> N.Y. CRIM. PROC. LAW § 440.10(3)(a).

---

**End of Document**                                   © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 6409221
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Lamon C. CRUMPLER, Petitioner,

v.

S. KHAHAIFA, Superintendent, Respondent.

No. 10–CV–0819.  |  Dec. 21, 2011.

**Attorneys and Law Firms**

Lamon C. Crumpler, Jacksonville, FL, pro se.

Alyson J. Gill, Office Of New York State Attorney General, New York, NY, for Respondent.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

 *1 Petitioner *pro se* Lamon C. Crumpler ("Crumpler" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being detained in state custody in violation of his federal constitutional rights. Crumpler was convicted on January 16 2009, in New York State County Court, Niagara County, following a negotiated guilty plea to one count of Assault in the Second Degree (N.Y. Penal Law ("P.L.") § 120.05(2)).

**II. Factual Background and Procedural History**

Crumpler's conviction stems from an incident that occurred on September 25, 2007, in Niagara County, in which Crumpler attempted to forcibly steal property from Aaron Jackson ("Jackson"), and intentionally injured Jackson with a knife. Petitioner was charged with four offenses: two counts of Attempted Robbery in the First Degree (P.L. §§ 110/160.15(1), (3)); Assault in the First Degree (P.L. § 120.10(1)); and Criminal Possession of a Weapon in the Third Degree (P.L. § 265.02(1)).

On February 13, 2008, Petitioner was brought to testify before the grand jury wearing his prison uniform. Petitioner objected to testifying while wearing prison attire, and he was removed and returned to prison. The grand jury was rescheduled for the next day.

On February 14, 2008, the prosecution requested that the jail transport Petitioner to the courthouse in civilian clothes. *See* People's Response to Motion to Dismiss, ¶ 10 & Attachments, submitted as part of Respondent's Exhibits. However, Petitioner appeared in prison garb again. Neither Petitioner nor defense counsel raised an issue before entering the grand jury room.*Id.,* ¶ 10.Petitioner then announced that he was being prejudiced by having the jury see him in prison garb, and refused to testify.

On February 21, 2008, the prosecution again returned Petitioner to the grand jury, this time wearing civilian clothing. Petitioner indicated his displeasure with counsel, and was brought before the trial judge who informed him there would be no substitution of counsel. Petitioner refused to testify before the grand jury with his present attorney.

The prosecution returned Petitioner to court on February 26, 2008, attired in civilian clothes. The trial judge informed Petitioner there had not been an error, noting that anybody who comes from jail to testify in [the] grand jury usually comes in garb ...." Transcript of February 26, 2008 Hearing ("2/26/08 Tr.") at 2 (quoted in Petitioner's Memorandum of Law, ¶ 19 (Docket No. 1)). Petitioner told the judge that having the jury see him in his "prison orange" garb, shackles, and handcuffs had prejudiced him and effectively had removed the presumption of innocence. *Id.* The prosecutor explained that Petitioner had not raised an issue about his attire until he actually was brought over and appeared before the grand jury. *Id.* In light of this fact, the trial judge commented that Petitioner's argument was "not going anywhere," and Petitioner responded, "All right. I understand." *Id.*

 *2 The trial judge noted that Petitioner was appearing that day in civilian clothing and advised him that if he wished to testify, he would have to do so with his current counsel. Petitioner, fearing prejudice as the result of his earlier appearance in prison clothing, refused to testify. The prosecutor issued a curative instruction to the grand jury on the issue of Petitioner's attire, stating that whether Petitioner was is custody could not be considered by them in their deliberations. *See* Grand Jury Minutes at 7, attached to Petition (Docket No. 1).

On April 18, 2008, Petitioner moved to dismiss the indictment on the ground that he was not afforded a sufficient opportunity to testify before the grand jury and was prejudiced by having

to appear in prison garb. After hearing oral argument, the newly assigned trial judge agreed that was "improper for the government to submit him for testimony before the grand jury dressed in his jail clothing," but held that "the curative instruction given by the prosecutor dispelled any prejudice[.]" Order of Niagara County Court Judge Matthew Murphy at 1 (citing *People v. DiFondi,* 275 A.D.2d 1018, 1018, 713 N.Y.S.2d 599 (4th Dept.), *lv. denied,* 95 N.Y.2d 933, 721 N.Y.S.2d 610, 744 N.E.2d 146 (N.Y.2000)).

On November 21, 2008, Petitioner appeared with counsel before the trial judge for a final pre-trial conference. *See generally* Respondent Exhibit ("Resp't Ex.") A, Plea Transcript ("Plea Tr."). At that time, Crumpler decided to enter a guilty plea in satisfaction of all four counts of the indictment. The prosecutor explained that, in exchange for his guilty plea to Assault in the Second Degree, and his concession to being sentenced as a second felony offender, Petitioner would be offered the minimum three-year prison term. Petitioner's counsel confirmed with the prosecutor that under the plea offer Petitioner would retain his right to appeal the judgment of conviction. The prosecutor agreed to move to dismiss charges pending against Petitioner in an unrelated Niagara County indictment. Petitioner and his counsel then stated that he wished to enter the guilty plea.

The trial court questioned petitioner and verified that he had spoken with defense counsel about the guilty plea, and that he was "willing to accept the plea." The trial court then conducted a colloquy with Crumpler, who was 48–years–old, had completed high school, had no problems understanding English, and had had "enough time to speak with [his counsel] about this proposed plea." Plea Tr. at 9–10. Petitioner affirmed that he had no complaints about his counsel's representation of him, stating counsel had "done the best he could." Plea Tr. at 10–11.

Petitioner also stated that he had not taken any alcohol or drugs in the past twenty-four hours; that he was not under a doctor's care for mental, emotional, or psychological problems; and that he took prescription drugs for an "arm injury" but they did not affect his ability to think clearly. *Id.* at 11, 721 N.Y.S.2d 610, 744 N.E.2d 146. Petitioner confirmed that his mind was clear. *Id.*

**\*3** In response to the trial judge's questions, Petitioner stated he understood that under the plea agreement, he would plead guilty to second-degree assault, a Class D violent felony. Petitioner was reminded that he must admit

to being sentenced as a second felony offender based upon a prior attempted drug-sale conviction. Plea Tr. at 11–12. As a second felony offender, he faced a maximum prison sentence of seven years on a second degree assault conviction. However, the trial court informed him, it would sentence him to a determinate three year prison term in exchange for his guilty plea plus a mandatory five-year term of post-release supervision. *Id.* at 12–13, 721 N.Y.S.2d 610, 744 N.E.2d 146.

Petitioner confirmed that, aside from the terms of the plea agreement that had been discussed, no one had promised him anything in connection with the guilty plea. Petitioner stated that no one told him he would receive a prison sentence of less than three years, and that he had not been threatened, intimidated, or forced into taking the plea. Plea Tr. at 13. Petitioner agreed that he was entering the guilty plea "freely and voluntarily after full consultation with [his] attorney." *Id.*

Petitioner indicated his understanding of the constitutional rights he would waive by entering the plea and foregoing a jury trial, including the rights to be represented by counsel, participate in jury selection, cross-examine the People's witnesses, testify or choose not to testify in his defense, and have the People prove his guilt beyond a reasonable doubt. Plea Tr. at 14–15.

Crumpler then gave a factual allocution, admitting to having had a "scuffle" with Jackson on September 25, 2007, during which he intentionally caused Jackson physical injury by using a dangerous instrument. *Id.* at 15–16, 721 N.Y.S.2d 610, 744 N.E.2d 146. Finding that there was "a factual basis for the entry of the plea," the trial court accepted Crumpler's guilty plea. *Id.* at 16–18, 721 N.Y.S.2d 610, 744 N.E.2d 146.

On January 16, 2009, Petitioner appeared for sentencing and admitted that as a result of his January 2000 conviction for attempted criminal sale of a controlled substance in the third degree, he was a second felony offender. He accordingly was sentenced as contemplated by the plea agreement. At the conclusion of sentencing, the court granted the prosecutor's motion to dismiss the charges under Petitioner's pending, unrelated indictment.

The Appellate Division, Fourth Department unanimously affirmed the conviction, and the New York Court of Appeals denied leave to appeal. *People v. Crumpler,* 70 A.D.3d 1396, 894 N.Y.S.2d 303 (4th Dept.), *lv. denied,* 14 N.Y.3d 839, 901 N.Y.S.2d 146, 927 N.E.2d 567 (N.Y.2010).

Crumpler timely filed the instant petition raising the following grounds for relief: (1) the grand jury proceedings violated his federal due process and equal protection rights because he was brought to testify before the grand jury in prison attire and restraints; (2) he was induced to plead guilty by the prosecutor, who informed him that under the plea agreement he would be able to appeal the grand jury issues; and (3) the prosecutor breached the plea agreement by opposing Petitioner's appeal raising the grand jury issues.

**\*4** On September 9, 2010, Petitioner was conditionally released from prison, and remains under the supervision of the New York Division of Parole as a result of the judgment of conviction at issue in this petition.

For the reasons that follow, the petition is dismissed.

## III. Jurisdiction

Respondent has not raised any jurisdictional issues to the petition, notwithstanding Crumpler's release to parole supervision. Federal courts, however, are obliged to consider the question of federal subject matter jurisdiction *sua sponte. Manway Const. Co., Inc. v. Housing Auth. of City of Hartford,* 711 F.2d 501, 503 (2d Cir.1983) ("It is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte,* at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.").

## A. The Habeas Statute's "In Custody" Requirement

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Maleng v. Cook,* 490 U.S. 488, 491, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (quotation omitted) (citing 28 U.S.C. § 2254(a) (emphasis in original)). As noted above, Petitioner was released on parole during the pendency of this petition. However, Crumpler was incarcerated when he filed the petition, and therefore he meets the "in custody" requirement of the habeas statute. *Carafas v. LaVallee,* 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

## B. Mootness

Crumpler's release to parole supervision raises the question of whether the petition satisfies Article III, § 2 of the U.S. Constitution, by presenting a live "case or controversy."

*E.g., Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)."[W]here the issues presented by a party in an action are no longer 'live,' or the party lacks a legally cognizable interest in the outcome, the federal action is properly dismissed as moot."*City of Erie v. Pap's A.M .,* 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). When a term of imprisonment has expired, "some concrete and continuing injury other than the now-ended incarceration or parole-some collateral consequence of the conviction-must exist if the suit is to be maintained."*Spencer,* 523 U.S. at 7.

In *Sibron v. New York,* 392 U.S. 40 (1968), the United States Supreme Court determined that collateral consequences are presumed to attach to criminal convictions post-release. *Id.* at 54–56;*accord, e.g., Perez v. Greiner,* 296 F.3d 123, 125 (2d Cir.2002). Following *Sibron,* the Second Circuit held that "a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."*Perez,* 296 F.3d at 125 (internal citations omitted).

At the present time, Crumpler continues to bear certain adverse collateral consequences from his criminal conviction in terms of continuing restraints on his liberty, including being subject to supervision by the New York State Division of Parole. Therefore, the Court concludes that the petition is not moot.

## IV. Exhaustion

**\*5** A habeas court may not consider the merits of a claim unless the federal nature of that claim was fairly presented to the "highest state court from which a decision can be had."*Daye v. Attorney Gen'l of N.Y.,* 696 F.2d 186, 190 n. 3 (2d Cir.1982) (*en banc* ), *cert. denied,*464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *see generally*28 U.S.C. § 2254(b)(1). Respondent concedes that Petitioner has exhausted his claim that was deprived of due process during the grand jury proceedings because he was brought to testify while in restraints and wearing prison garb. Respondent also admits that Petitioner has exhausted his claim that he was induced to plead guilty by the prosecutor, who inaccurately informed him that he would be able to challenge all grand jury issues on appeal. However, Respondent argues, Petitioner has not exhausted his claim that the prosecutor breached the plea agreement by opposing his arguments concerning the alleged grand jury errors on appeal. Respondent notes that Petitioner

did not raise that argument at any point on direct appeal, and he has not raised it in any subsequent state motion.

Respondent explains that this particular claim arose during the course of the direct appeal and thus was based on facts not available to appellate counsel at the time she filed the brief. Thus, Petitioner presumably could still raise that issue in a collateral motion to vacate the judgment under C.P.L. § 440.10. Respondent accordingly has not argued that the claim should be deemed exhausted but barred from this Court's review.

Respondent instead urges the Court to exercise its discretionary authority under 28 U.S.C. § 2254(b)(2) to deny a petition containing unexhausted claims on the merits. The Court agrees that dismissal of the entire claim under Section 2254(b)(2) is appropriate because the unexhausted claim is without merit under any standard of review. *See, e.g., Carr v. Senkowski,* No. 01–CV–689 (RJA)(VEB), 2007 WL 3124624, at *20 (W.D.N.Y. Oct. 23, 2007) (adopting Report & Recommendation) ("Carr's ineffective assistance of counsel claims fail either the 'patently frivolous' or 'nonmeritorious' test, the two standards utilized by the district courts in this Circuit to have considered the issue so far. Moreover, they also fail under a pre-AEDPA standard of review. Thus, it is appropriate for the Court to recommend reliance upon 28 U.S.C. § 2254(b)(2) in order to deny the habeas petition in its entirety, notwithstanding Carr's failure to exhaust state remedies.").

## V. Analysis of the Petition

### A. Defects in the Grand Jury Proceeding
Petitioner argues that he was improperly brought before the grand jury in restraints and prison garb, and that the trial court erroneously denied his motion to dismiss the indictment on that ground. The Appellate Division found that while the claim survived Petitioner's guilty plea, it lacked merit. Specifically, the Appellate Division held that the prosecutor's "cautionary instructions to the grand jurors dispelled any possible prejudice to [petitioner]." *People v. Crumpler,* 70 A.D.3d 1397, 893 N.Y.S.2d 789 (quotation and citations omitted). This claim does not assert an error of federal constitutional magnitude cognizable on habeas review.

 *6 The Supreme Court has explained that "a guilty plea represents a break in the chain of events which has preceded it," and a defendant who admits his guilt in open court "may not thereafter raise independent claims relating to the

deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *accord, e.g., United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996). The Supreme Court explained that *Tollett* and the earlier cases on which it relied stand for the proposition "that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case" and therefore, a guilty plea "simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." *Menna v. New York,* 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (concluding that a guilty plea did not bar the petitioner's double jeopardy claim, as "the claim is that the State may not convict petitioner no matter how validly his factual guilt is established").

Crumpler's argument concerning his attire when he first appeared before the grand jury, unlike the claim raised in *Menna,* does not go to the constitutional permissibility of the state's initiation of proceedings against him or otherwise represent an argument that, had it been accepted before trial, "would forever preclude the state from obtaining a valid conviction against him, regardless of how much the state might endeavor to correct the defect," *United States v. Curcio,* 712 F.2d 1532, 1539 (2d Cir.1983). Therefore, his claim concerning the grand jury proceedings does not survive his knowing, voluntary, and intelligent guilty plea on the underlying indictment. *Accord, e.g., Sullivan v. Goord,* No. 05–CV–6060L, 2007 WL 2746900, *9 (W.D.N.Y. Sept.19, 2007) (adopting Report & Recommendation of Bianchini, M.J.) (citations omitted).

### B. False Inducement to Plead Guilty by the Prosecutor

#### 1. Factual Overview of Claim
Crumpler argues that he was induced to plead guilty by the prosecutor who informed him that, under the plea agreement, he would able to appeal issues relating to errors in the grand jury proceeding. It is true that under the plea agreement, Crumpler was not required to waive his direct appellate rights and thus he retained the ability to argue the grand jury issues on appeal.

However, Crumpler did not move to withdraw his guilty plea or to vacate the judgment before pursuing direct review of his conviction. The Appellate Division accordingly held that Crumpler had "failed to preserve for [its] review his

contention that his plea was not voluntarily, knowingly and intelligently entered on the ground that he was unaware at the time of the plea that he was thereby forfeiting his right to challenge the sufficiency of the evidence before the grand jury[.]" *People v. Crumpler,* 70 A.D.3d at 1397, 894 N.Y.S.2d 303 (citations omitted). Respondent contends that the Appellate Division relied upon an adequate and independent state ground to dismiss the claim as procedurally barred, thereby precluding further federal habeas review of the claim.

## 2. The Adequate and Independent State Ground Doctrine and Procedural Default

**\*7** The Supreme Court has held that federal courts shall "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." *Id.* (citations omitted). The independent and adequate state ground doctrine may bar federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement" for in such cases "the state judgment rests on independent and adequate state procedural grounds." *Id.* (citing, *inter alia, Wainwright v. Sykes,* 433 U.S. 72, 81, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Thus, an adequate and independent finding of procedural default precludes federal habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto, *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or demonstrate that his failure to consider the federal claim on habeas will result in a "fundamental miscarriage of justice," *id.* at 495 (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

The Court agrees with Respondent that the Appellate Division relied upon an "adequate and independent state ground" in rejecting Crumpler's contention regarding the voluntariness of his guilty plea. The procedural bar clearly was an "independent" ground since it was the sole basis for the state court's decision. Furthermore, as discussed below, it was a fully "adequate" basis for the decision.

"[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999) (quoting *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). Whether application of the procedural rule is " 'firmly established and regularly followed' " must be judged in the context of "the specific circumstances presented in the case," and "of the asserted state interest in applying the procedural rule in such circumstances." *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (quoting *Lee v. Kemna,* 534 U.S. 362, 386–87, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

In New York, the "firmly established and regularly followed rule," *Lee,* 534 U.S. at 386, for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgment of conviction. *See, e.g., People v. Hilliard,* 39 A.D.3d 1021, 1022, 832 N.Y.S.2d 461 (3d Dept.2007) ("[D]efendant's assertion that his guilty plea was involuntarily entered is unpreserved for our review in light of his failure to move to withdraw the plea or vacate the judgment of conviction [.]"); *People v. Johnson,* 25 A.D.3d 331, 331, 805 N.Y.S.2d 830 (1st Dept.2006) ("Since defendant did not move to withdraw his plea, his challenge to the plea's voluntariness is unpreserved[.]").

**\*8** As noted above, the procedural rule requiring a motion to withdraw the plea to preserve a claim of involuntariness constituted the Appellate Division's sole basis for its ruling on the involuntariness claim. As the foregoing New York state cases make clear, compliance with the rule was demanded in the circumstances presented here, and Crumpler failed to comply with the procedural rule. Thus, the procedural bar relied upon by the appellate court in this case was "firmly established and regularly followed," and therefore constitutes an adequate state ground barring review of the merits of Crumpler's claim.

The next consideration is consider whether there exists "cause" for Crumpler's procedural default of this claim and, in addition, whether he will suffer actual "prejudice" as a result of being precluded from asserting this claim on habeas review. Neither "cause" nor "prejudice" is discernible on the record before the Court. Furthermore, Crumpler has not demonstrated that he is "factually innocent" so as to warrant the fundamental miscarriage of justice exception. Accordingly, the Court finds that this claim is subject to an excused procedural default, and it is dismissed on that basis. *Accord, e.g., Bennefield v. Kirkpatrick,* 741 F.Supp.2d 447, 454 (W.D.N.Y.2010).

## C. Breach of Plea Agreement by the Prosecutor

Petitioner contends that the prosecutor induced him to plead guilty by informing him he would be able to appeal unpreserved grand jury claims, and then violated the plea agreement's terms by opposing those claims when petitioner raised them on direct appeal. This claim lacks a factual or legal basis.

As part of the plea agreement, the prosecutor agreed that Petitioner would not waive his right to appeal any challenges to the grand jury proceedings. *See, e.g.,* Plea Tr. at 3 (The Prosecutor: "The People agree to not have him waive his right to appeal. He would like to appeal the issue of the grand jury proceedings, Judge ....). The Court has reviewed the plea and sentencing transcripts and nowhere does the prosecutor promise to refrain from opposing Petitioner's claims or guarantee that the claims would be found to be preserved or meritorious on appeal. Instead, the prosecutor simply agreed that Petitioner would retain his right to directly appeal the judgment of conviction. By doing so, the prosecutor in no way induced Petitioner's guilty plea.

Petitioner cites *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), which held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."Here, however, there is nothing in the record to suggest the existence of *any* promise by the prosecutor not to oppose Crumpler's arguments concerning the grand jury issues on appeal. This claim is factually and legally baseless, and must be dismissed.

## VI. Motion to Appoint Counsel

**\*9** Crumpler has filed a motion to have *pro bono* counsel appointed to represent him. The factors to be considered in ruling on a motion for *pro bono* counsel are well settled and include "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, [plaintiff's] efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by

counsel."*Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1986). Of these, "[t]he factor which command[s] the most attention [is] the merits."*Id.*" 'In deciding whether to appoint counsel ... the district judge should first determine whether the indigent's position seems likely to be of substance.'"*Hendrick v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997) (quotation omitted).

As discussed above, Crumpler's habeas claims are not meritorious, and it would be an abuse of discretion for this Court to utilize scarce attorney resources in such a case. *See Cooper,* 877 F.2d at 174 ("Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention. Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent."). Crumpler's request for *pro bono* counsel is accordingly denied.

## VII. Conclusion

For the foregoing reasons, Lamon Crumpler's request for a writ of habeas corpus is denied and the petition (Docket No. 1) is dismissed. Petitioner's motion to appoint counsel (Docket No. 9) is denied with prejudice. Petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R.App.P. 24(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore the Court denies leave to appeal as a poor person from this Decision and Order. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

## All Citations

Not Reported in F.Supp.2d, 2011 WL 6409221

---

2012 WL 6675121
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

James T. HAYNES, Petitioner,

v.

People of the State of NEW YORK, Respondent.

No. 10–CV–5867 (JFB).  |  Dec. 21, 2012.

**Attorneys and Law Firms**

James T. Haynes, pro se.

Thomas Spota, District Attorney of Suffolk County, by Karla
L. Lato, Riverhead, NY, for Respondent.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

 **\*1** James T. Haynes (hereinafter "Haynes" or "petitioner")
petitions this Court for a writ of habeas corpus pursuant to 28
U.S.C. § 2254, challenging his conviction in County Court,
Suffolk County. Petitioner pled guilty to attempted burglary
in the second degree, a Class D Violent Felony (N.Y. Penal
Law §§ 110.0 and 140.25(2)). Petitioner was sentenced to an
indeterminate period of imprisonment of twelve years to life
as a persistent violent felony offender. The court also imposed
a mandatory surcharge of $375.00 and issued the victim a
permanent order of protection against petitioner.

In the instant petition, petitioner challenges his conviction
on the following grounds: (1) New York's Sentence
Enhancement Statute is unconstitutional; (2) petitioner
was improperly adjudicated as a persistent violent felony
offender; (3) petitioner's guilty plea was less than voluntary,
knowing and intelligent; and (4) petitioner was denied
effective assistance of counsel. (Pet. at 2–3.)

For the reasons set forth below, the petition is denied in its
entirety.

**I. BACKGROUND**

**A. Facts**

The Court has adduced the following facts from the instant
petition and the underlying record. [1]

At approximately 9:15 a.m. on September 10, 2007, petitioner
rode his bicycle to 450 Patchogue Yaphank Road, New York
and illegally entered the building located there. (Apr. 9 H. at
33.) Once inside, petitioner encountered Kimberly Quinones
("Quinones"), a resident of the home, and robbed her. (Id.
at 33–34.)Petitioner proceeded to take $300.00 in cash, a
quantity of marijuana from the night stand, a cell phone
battery, and the house phone. (Id. at 34.)He then rode off on
his bicycle to a nearby Hess gas station and bought cigarettes
and mints. [2] (Id . at 35.)

Shortly after receiving a local notification on a burglary
suspect, Police Officers Frascogna and Rowe arrived at the
gas station and found petitioner, who matched the description
of the suspect, sitting on a fence behind the station. (Apr.
21 H. at 29.) The officers approached petitioner, asked him
to identify himself, and to explain what he was doing there.
(Id. at 29–30.)Haynes identified himself and informed the
police that he was waiting for a cab. (Id.) The officers
also questioned petitioner about whether he had anything
on him; petitioner indicated that he possessed marijuana.
(Id. at 30.)Petitioner then handed the marijuana over to the
police officers; the officers proceeded to search petitioner
and recovered $294.56, a pack of Newport cigarettes, a pack
of mints, and a cell phone battery. (Id . at 30–31). While
stopped, petitioner also informed police officers that he had
just come from a house on County Road 101. [3] (Apr. 9 H. at
72.) Petitioner said, "I went to the house to look for 'Boo'
Jackson[,] who is a drug dealer in Coram and stole a .40
caliber pistol from a friend[.] I was there to get the gun[;]
the girl answered the door and said Boo didn't sell drugs or
have a pistol. She gave me all of her money and told me
to leave."(Apr. 21 H. at 52.) During this brief questioning,
petitioner did not indicate to police officers that he did not
wish to speak with them. [4] (Apr. 9 H. at 73.)

 **\*2**  Approximately ten minutes after receiving the initial
burglary notification, Officer Bowen transported Quinones to
the gas station to determine if petitioner was the individual
who robbed her. (Apr. 21 H. at 5–7.) As Officer Bowen drove
past petitioner, Quinones immediately identified petitioner
as the person who had committed the burglary. (Id. at 8–

9.)While Quinones was driven past petitioner, Haynes stated, "That was the lady's house that I was in ."(*Id.* at 31.)

At the Fifth Precinct, petitioner stated that he entered the victim's home and took $300.00 in cash, a quantity of marijuana, a cell phone battery, and the house phone. [5] (Apr. 9 H. at 34.) As petitioner recounted the events that had taken place earlier, Detective Truesdell reduced petitioner's statements to a written document, which petitioner signed after having it read back to him. (*Id.* at 29–32.)Additionally, petitioner offered to show Detective Truesdell where he had disposed of the house phone after the burglary, and proceeded to do so after his statement had been taken. (*Id.* at 35.)Detective Truesdell found the phone in the location given to him by petitioner. (*Id.* at 36.)

### B. Procedural History

#### 1. Trial Court Proceedings

##### a. *Huntley/Mapp* Hearing

Petitioner was indicted in October 2007 under indictment number 3211–07. On April 9, 2008, and April 21, 2008, a suppression hearing was held to determine the admissibility of alleged statements made by petitioner to the police, and to determine if the identification procedure used by law enforcement was permissible. (Opinion of the County Court of the State of New York, Suffolk County, dated May 19, 2008 at 1.)

At the suppression hearing, petitioner's attorney argued that the oral statements made by Haynes at the gas station were inadmissible. (Apr. 21 H. at 53–54.) In support of her argument, petitioner's attorney said that the police officers had failed to warn petitioner of his *Miranda* rights before the contested statements were made, even though petitioner was allegedly under custody at the time. (*Id.* at 53.)With respect to petitioner's statements at the Fifth Precinct, petitioner's attorney urged that they be suppressed because the police had already failed to warn petitioner of his *Miranda* rights at the gas station; therefore, the recital of later *Miranda* warnings could not correct this failure. (*Id.* at 53–54.) Additionally, petitioner's attorney argued that the exigent circumstances necessary to justify show-up identifications were not present in this case. (*Id.* at 51.)

As a threshold matter, the court determined that the People's witnesses (Detective Truesdell and Police Officers Rathburn, Bowen and Frascogna) were accurate and truthful in their testimony. (Opinion of the County Court of the State of New York, Suffolk County, dated May 19, 2008 at 1.) The court then found that there was no evidence to suggest that petitioner's statement at the Fifth Precinct was involuntary or in any respects coerced. (*Id.* at 2.) The court proceeded to find that Detective Truesdell read petitioner the *Miranda* warnings before questioning him, and that petitioner voluntarily agreed to waive his rights and to speak with the police. (*Id.*) Therefore, the court concluded that petitioner "gave a voluntary, uncoerced confession to the police only after having been advised of, and knowingly waiving, his *Miranda* rights."(*Id.*) The court also noted that the statement petitioner made after Quinones was driven through the gas station was spontaneous and not made in response to any questioning. (*Id.*) Accordingly, the court denied petitioner's motion to suppress his statements. (*Id.*)

**\*3** The court also denied petitioner's motion to suppress the out-of-court identification employed at the gas station. (*Id.* at 3.) The court found that petitioner's apprehension near the scene of the crime, along with the temporal proximity to the commission of the crime, was sufficient to deem the show-up identification permissible. (*Id.*)

##### b. The Plea Proceeding

On May 19, 2008, petitioner pled guilty to attempted burglary in the second degree, a Class D Violent Felony (N.Y. Penal Law §§ 110.00 and 140.25(2)). (P. at 20–21.) In exchange, the court agreed that it would impose a sentence of no more than 12 years to life imprisonment. (*Id.* at 3.) Before entering his plea, Haynes was fully advised of the nature of the charges against him and of the rights he was waiving by entering a guilty plea, including the right to appeal. (*Id.* at 6–8.)Petitioner stated that he was entering the plea voluntarily and of his own free will. (*Id.* at 8–9.)Petitioner also denied that he was subjected to any threats or coercion.(*Id.* at 9.) Moreover, petitioner confirmed that he was not under the influence of any drugs, medicine, alcohol, or any substance that could affect or impair his ability during the proceedings. (*Id.* at 9.) Finally, petitioner stated under oath that he had enough time to discuss the plea with his attorney and that he was satisfied with her representation in the case.(*Id.* at 5–6.)

Before entering his plea, petitioner consulted with his attorney and admitted to the accusations made in a predicate statement pursuant to § 400.16(2) of the New York Criminal Procedure Law. (*Id.* at 15, 18.)In its statement, the People accused Haynes of being previously subjected to two predicate violent felony convictions as defined in Penal Law § 70.04(1)(b).(*Id.* at 16.)Specifically, the People accused Haynes of being convicted of attempted burglary in the second degree on December 20, 2000, and of receiving a subsequent sentence of 7 years' incarceration on January 9, 2001. (*Id.* at 17.)Additionally, the People accused Haynes of being convicted of robbery in the second degree on August 4, 1983, and of receiving a subsequent sentence of one and a half to four and a half years' incarceration on August 4, 1983. (*Id.*) By admitting to this statement, petitioner recognized that the court would classify him as a persistent violent felony offender. (*Id.*) Petitioner did not raise any constitutional or other objections to the prior convictions contained in the predicate felony statement, even after being questioned by the court. (*Id.* at 17.)

### c. Sentencing

On July 30, 2008, petitioner was sentenced as a persistent violent felony offender to an indeterminate period of imprisonment of twelve years to life. (S. at 7.) Further, the court imposed a mandatory surcharge of $375.00 upon petitioner and issued a permanent order of protection against him in favor of the victim, Miss Quinones. (*Id.* at 6.)

 **\*4** During the sentencing hearing, petitioner's counsel addressed his persistent violent felony offender status. (*Id.* at 4.) Petitioner's counsel stated, "I would just want to point that out, that the initial crime that categorized him as a prior violent I believe happened in 1983. Judge, I have gone over the dates with my client. This is the category he does fall into."(*Id.*)

### 2. Petitioner's State Appeals

Petitioner appealed his conviction to the Appellate Division, Second Department on the following grounds: (1) New York's Sentence Enhancement Statute is unconstitutional; (2) petitioner was improperly adjudicated as a persistent violent felony offender; (3) petitioner's guilty plea was less than voluntary, knowing, and intelligent; and (4) petitioner was denied effective assistance of counsel.[6] *See People v.*

*Haynes,* 70 A.D.3d 718, 718–19 (2d Dep't 2010). In a decision dated February 2, 2010, a panel of the Appellate Division affirmed petitioner's conviction. *Id.* Although the predicate statement filed by the People failed to set forth any tolling periods, the court concluded that petitioner's valid waiver of his right to appeal precluded him from challenging the legality of the procedure used in sentencing him as a persistent violent felony offender. *Id.* The court also found petitioner's contention that the omission of the tolling information rendered his plea less than knowing, voluntary, and intelligent to be unpreserved for appellate review because petitioner did not move to withdraw his plea on that basis. *Id.* at 719.In any event, the court found that the omission of the tolling information in the statement was harmless; petitioner did not dispute that his incarceration was long enough that the prior sentence was imposed within the 10–year limitation period. *Id.*

Further, the court concluded that petitioner's valid waiver of his right to appeal precluded review of his contention that his adjudication as a persistent violent felony offender violated the principles announced in *Apprendi v. New Jersey,* 530 U.S. 466 (2000).*Id.*

With respect to petitioner's claim that he was denied effective assistance of counsel, the court held that petitioner's valid waiver of his right to appeal also precluded review, except to the extent that the alleged ineffective assistance of counsel may have affected the voluntariness of petitioner's plea. *Id.* Furthermore, the court stated that this contention was not properly presented on direct appeal to the extent it was premised on his attorney's failure to investigate, because such a claim involves matters outside the record. *Id.* Finally, the court found that to the extent the claim can be reviewed because it concerned an alleged effect on the voluntariness of petitioner's plea of guilty, petitioner was afforded meaningful representation. *Id.*

Petitioner applied for leave to appeal to the Court of Appeals, raising the same grounds he did in his appeal to the Appellate Division. (Pet. at 3.) On June 23, 2010, the application was denied. *Id.*

### C. The Instant Petition

 **\*5** Petitioner filed the instant petition on December 12, 2010. Respondent filed its response on February 25,

2011. The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). " 'Clearly established Federal law' " is comprised of " 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.' " *Green v. Travis,* 414 F.3d 288, 296 (2d Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."*Williams,* 529 U.S. at 412–13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."*Id.* at 413.

AEDPA establishes a deferential standard of review: " 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.' " *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (quoting *Williams,* 529 U.S. at 411). The Second Circuit added that, while " 'some increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.' " *Id.* (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.*' " *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)).

## III. DISCUSSION

### A. Procedural Bar

#### 1. Failure to Exhaust

**\*6** As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state."28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida,* 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Att'y Gen. of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."*Duncan v. Henry,* 513 U.S. 364, 365 (1995) (internal alteration, citation, and quotation marks omitted).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts."*Picard,* 404 U.S. at 275–76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."*O'Sullivan v.*

*Boerckel,* 526 U.S. 838, 845 (1999); *see also Duncan,* 513 U.S. at 365–66. "A petitioner has 'fairly presented' his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court."*Jones v. Keane,* 329 F.3d 290, 294–95 (2d Cir.2003) (internal citation and quotation marks omitted)."Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim."*Daye,* 696 F.2d at 191 (internal citations omitted). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."*Id.* at 192 (footnote omitted.)

### 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issue in a petitioner's claim.*Coleman v. Thompson,* 501 U.S. 722, 731–32 (1991)."[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " *Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997) (quoting *Coleman,* 501 U.S. at 735 n. 1) (additional citations and emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are ... to be deemed exhausted." *DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2d Cir.2004) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9 (1989); *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane,* 118 F.3d at 139 (internal citation and quotation marks omitted).

*7 However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding."*Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland,* 518 U.S. 152, 162 (1996); *Coleman,*

501 U.S. at 744–51))."[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."*Netherland,* 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell,* 547 U.S. 518, 536 (2006). Petitioner's federal claims may also be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent procedural grounds. *See Coleman,* 501 U.S. at 729–33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730–31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent.*Murray v. Carrier,* 477 U.S. 478, 496 (1986).

### 3. Application

#### a. Claims Relating to New York's Persistent Violent Felony Offender Statute

Petitioner makes two separate claims in relation to New York's recidivist persistent violent felony offender statute. First, petitioner argues that New York's persistent violent felony offender statute is unconstitutional because it violates the principles announced by the Supreme Court in *Apprendi.* (Pet'r's Br. at 9.) Second, petitioner argues that he was improperly adjudicated as a persistent violent felony offender because the People violated N.Y.Crim. Proc. Law § 400.16(2).(*Id.* at 10.)Respondent argues that both claims are procedurally barred because petitioner validly waived his right to appeal such claims during the plea hearing. (Resp't's Br. at 9–11.) Because a valid waiver of the right to appeal constitutes an independent and adequate state law ground, and

because the waiver was valid (for reasons discussed *infra* ), both claims are barred from federal habeas review.

**\*8** The Appellate Division declined to review the merits of petitioner's claims with respect to the Persistent Violent Felony Offender Statute because it found that petitioner had validly waived his right to appeal such challenges. *Haynes,* 70 A.D.3d at 718–19. In foreclosing its review, the Appellate Division relied on New York law regarding the validity of waivers of appeal. *Id.* (citing *People v. Lassiter,* 48 A.D.3d 700 (2d Dep't 2008); *People v. Backus,* 43 A.D.3d 409, 410 (2d Dep't 2007)).

Courts within this Circuit have held that affirmative waiver of a petitioner's right to appeal can provide an adequate and independent state ground on which to deny habeas relief, and this Court agrees with the analysis contained in these decisions. *See, e.g., Colon v. New York,* No. 08 Civ. 0170(DC), 2009 WL 1116478, at \*4 (S.D.N.Y. Apr. 27, 2009) ("Waiver of a right to appeal is an adequate and independent state ground for the Appellate Division to have denied [petitioner]'s appeal."); *Gordon v. Poole,* No. 07–CV–474, 2008 WL 495510, at \*3 (W.D.N.Y. Feb. 21, 2008) ("A state procedural bar arises through a failure to make a timely appeal, or through a failure to preserve a claim of appeal through contemporaneous objection, or waiver of right to appeal with guilty plea."(internal citation omitted)). Therefore, the individual claims related to New York's persistent violent felony offender statute cannot be reviewed by this Court because the Appellate Division dismissed them on an independent and adequate state procedural ground. *See Coleman,* 501 U.S. at 729–31. When a state court relies on an independent and adequate state law ground—such as, in this case, a valid waiver of right to appeal—federal habeas review is denied. *See Spikes v. Graham,* No. 9:07–CV–1129 (DNH/GHL), 2010 WL 4005044, at \* 11 (N.D.N.Y. July 14, 2010). Accordingly, petitioner's two separate claims related to New York's persistent violent felony offender statute are procedurally barred from review by this Court. [7]

In order for a petitioner to overcome a procedural bar, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. However, petitioner has failed to meet his burden with respect to either claim regarding New York's persistent violent felony statute. Moreover, petitioner has not demonstrated that a fundamental miscarriage of justice will

take place if the Court fails to consider these procedurally defaulted claims. Thus, petitioner's claims regarding New York's persistent violent felony offender statute are not reviewable by this Court. However, assuming *arguendo* that these claims were properly before this Court, as discussed *infra,* these claims are clearly without merit.

### b. Ineffective Assistance of Counsel

Petitioner argues that he was denied effective assistance of counsel because counsel failed to: (1) investigate the constitutionality of his 1983 conviction; (2) challenge the prosecutor's statement to the court that petitioner had two prior convictions, thereby violating *Crawford v. Washington,* 541 U.S. 36 (2004); and (3) address petitioner's drug use at either the plea or sentencing hearing. (Pet'r's Br. at 4–7.) Respondent contends that petitioner's valid waiver of his right to appeal at the plea hearing precludes federal habeas review of this claim, except to the extent that the alleged ineffective assistance of counsel may have affected the voluntariness of petitioner's plea. (Resp't's Br. at 14–15.) Moreover, insofar as petitioner's ineffective assistance of counsel claim is based on his attorney's failure to investigate, respondent argues that it involves matters outside the record and it is not properly presented on direct appeal. (*Id.*) The Court finds that petitioner's valid waiver of his right to appeal constitutes an independent and adequate state law ground which bars federal review of petitioner's ineffective assistance of counsel claim, except to the extent the claim may have affected the voluntariness of petitioner's plea. Furthermore, to the extent petitioner's ineffective assistance of counsel claim is based on his attorney's failure to investigate, this Court determines that the claim is unexhausted and thus not reviewable.

**\*9** The Appellate Division concluded that "defendant's valid waiver of his right to appeal precludes appellate review of his contention that he was denied the effective assistance of counsel, except to the extent that the alleged ineffective assistance of counsel may have affected the voluntariness of his plea."*Haynes,* 70 A.D.3d at 719 (citing *People v. Perazzo,* 65 A.D.3d 1058, 1059 (2d Dep't 2009); *People v. Velez,* 64 A.D.3d 799 (2d Dep't 2009)). As discussed *supra,* established New York law recognizes the validity of waivers of appeal, and federal courts have thus found valid waivers of the right to appeal to constitute an independent and adequate state-law ground that precludes review. *See id.*(citing *Lassiter,* 48 A.D.3d at 700; *Backus,* 43 A.D.3d at 409); *Gordon,* 2008 WL 495510 at \*3). New York law exempts from the general

bar produced by such waivers those claims that affect the voluntariness of a defendant's plea. *See Cross v. Perez,* 823 F.Supp.2d 142, 153 (E.D.N.Y.2011) ("To survive the waiver, according to New York courts, the claim of ineffective assistance must directly pertain to the defendant's decision to plead guilty—in other words, the claim must go to the very heart of the process."(internal citation and quotation marks omitted)); *People v. Finklestein,* 25 A.D.3d 456, 457 (1st Dep't 2009) ("Although defendant waived his right to appeal, his claim that his attorney rendered ineffective assistance ... is reviewable to the extent it affects the voluntariness of his plea ....").

In addressing petitioner's claim, the Appellate Division relied on established New York law that the valid waiver of petitioner's right to appeal precluded appellate review of his ineffective assistance of counsel claim, with exception to any alleged effect this claim may have on the voluntariness of his plea. Petitioner's ineffective assistance of counsel claim, with the exception described above, cannot be reviewed because the Appellate Division relied on an independent and adequate state procedural ground. *See Coleman,* 501 U.S. at 729–31. This claim is therefore procedurally barred from federal habeas review.[8]

In addition, the Appellate Division ruled that, to the extent petitioner's ineffective assistance of counsel claim is based on his attorney's failure to investigate, the claim was not properly before the court because it relied on matters outside the record. *Haynes,* 70 A.D.3d at 719. Petitioner may raise arguments outside the record in a motion to vacate judgment pursuant to N.Y.Crim. Proc. Law § 440.10. Because, petitioner's ineffective assistance of counsel claim with respect to his attorney's failure to investigate is unexhausted, it is not properly reviewable by this Court.

Even if an independent and adequate state ground bars the petitioner's claim, a federal court may review the merits of the claim if petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman,* 501 U.S. at 750. Petitioner has failed to meet his burden with respect to both the state procedural requirement and exhaustion components of his ineffective assistance of counsel claim. First, petitioner shows no external cause or prejudice to warrant the setting aside of his waiver. Second, petitioner has not provided any explanation for his failure to properly exhaust his ineffective assistance of counsel claim in

state court. Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will result if the Court fails to consider his procedurally defaulted claim. Accordingly, petitioner's ineffective assistance of counsel claim is not reviewable by this Court, except to the extent it concerns the voluntariness of petitioner's plea. However, assuming *arguendo* that this claim was properly before this Court, as discussed *infra,* this claim is clearly without merit.

### c. Validity of Guilty Plea

**\*10** Petitioner argues that his guilty plea was not knowing, intelligent, and voluntary because: (1) the statement according to which he was adjudicated as a persistent violent felony offender was defective; and (2) he received ineffective assistance of counsel. (Pet'r's Br. at 7.) As to petitioner's first argument, respondent argues that petitioner's claim is procedurally barred because petitioner failed to withdraw his plea on the basis that it was not knowing, voluntary and intelligent. (Resp't's Br. at 18.) The Court agrees with respondent and finds this claim to be procedurally barred because petitioner did not move to withdraw his plea on the basis of its purported involuntary nature, or to vacate the judgment of conviction. This leaves the claim unpreserved for review and serves as an independent and adequate state law ground wherefrom federal habeas review is denied.

In order to preserve a claim that a guilty plea was involuntarily made, New York courts have held that "a defendant must either move to withdraw the plea under C.P.L. § 220.60(3) or move to vacate the judgment of conviction under C.P.L. § 440.10."[9] *Snitzel v. Murry,* 371 F.Supp.2d 295, 300–01 (W.D.N.Y.2004) (citing New York cases); *accord Larweth v. Conway,* 493 F.Supp.2d 662, 668–69 (W.D.N.Y. June 29, 2007) ("In New York, the firmly established and regularly followed rule for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to vacate the judgment of conviction."(internal citations and quotation marks omitted)); *Vibbert v. Superintendent,* No. 09–CV–506 (GTS/DRH), 2010 WL 1817821, at *3 (N .D.N.Y Mar. 26, 2010) (Report and Recommendation) ("[A]lthough [petitioner]'s contention that his plea was not knowingly entered survives the waiver of the right to appeal, by failing to move to withdraw his plea or to vacate the judgment before his initial appeal, [petitioner] failed to preserve his claim for federal habeas review. The procedural bar relied upon by the Appellate Division in this case was firmly established and regularly followed, and

therefore constitutes an adequate state-law ground barring review of the merits of [petitioner]'s claim." (internal citation and quotation marks omitted)).

The Appellate Division found "defendant's contention that the omission of the tolling information rendered his plea less than knowing, voluntary and intelligent is unpreserved for appellate review because he did not move to withdraw his plea on this basis." *Haynes,* 70 A.D.3d at 719 (internal citations omitted). The Appellate Division thus disposed of petitioner's claim based on established New York law that a defendant's failure to withdraw a plea or to vacate a judgment of conviction leaves his claim of an involuntary guilty plea unpreserved for review. Therefore, petitioner's claim cannot be reviewed by this Court because it was decided on an independent and adequate state procedural ground. *See Coleman,* 501 U.S. at 729–31. Accordingly, federal habeas review of this claim is foreclosed. [10]

**\*11** Notwithstanding petitioner's failure to preserve his claim of an involuntary guilty plea, this Court may still review the merits of this claim if petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman,* 501 U.S. at 750. Here, petitioner has failed to demonstrate cause or prejudice. Petitioner does not offer any arguments for why he did not move to withdraw his plea or to vacate his judgment of conviction. To the extent petitioner suggests that the procedural default was a result of ineffective assistance of counsel, "[w]here, as here, a petitioner cannot prevail on the merits of his claim[ ], he cannot overcome a procedural bar by claiming ineffective assistance of counsel." *McLeod v. Graham,* No. 10 Civ. 3778(BMC), 2010 WL 5125317, at \*4 (E.D.N.Y. Dec. 9, 2010) (citing *Aparicio v. Artuz,* 269 F.3d 78, 99 n. 10 (2d Cir.2001); *Larrea v. Bennett,* 368 F.3d 179, 182 (2d Cir.2004)). Petitioner has also failed to show that a miscarriage of justice would occur if the Court failed to review his claim on the merits. Thus, petitioner's claim of an involuntary guilty plea is barred from federal habeas review on state procedural grounds. However, assuming *arguendo* that this claim was properly before this Court, as discussed *infra,* this claim is clearly without merit.

**B. The Merits**

**1. Constitutionality of New York's Persistent Violent Felony Offender**

Petitioner claims that New York's persistent violent felony offender sentencing statute, Penal Law § 70.08, is unconstitutional and in contravention of Supreme Court rulings because it denies him the right to a jury trial. (Petr's Br. at 9.) Petitioner presumably relies on *Apprendi,* 530 U.S. at 490, and *Ring v. Arizona,* 536 U.S. 584, 597 n. 4 (2002). For the reasons set forth below, petitioner's claim fails on the merits and does not provide a basis for habeas relief.

Penal Law § 70.08 requires that, when the sentencing court finds that a person who "stands convicted of a violent felony offense" has previously "been subjected to two or more predicate violent felony convictions," then it "must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment," and the minimum term of which depends on the nature of the violent felony offense for which the defendant stands convicted. N.Y. Penal Law § 70.08.

In *Apprendi,* the Supreme Court determined that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; *see also Cunningham v. California,* 549 U.S. 270, 281 (2007); *People v. Quinones,* 12 N.Y.3d 116, 122–24; *People v. Rivera,* 5 N.Y.3d 61, 67 (2005).

Although the Second Circuit has not ruled on the validity of Penal Law § 70.08 in light of *Apprendi* challenges, it has addressed the validity of New York's parallel recidivist enhancement statute, Penal Law § 70.10, in appeals raising identical contentions. Under Penal Law § 70.10, the court is allowed to enhance a convicted felon's sentence if that felon has both: (1) two prior felony convictions; and (2) a history and character such that the court may find extended incarceration to be warranted and in the public's best interest. *Id.* The Second Circuit held that it was not unreasonable for the state courts to uphold this statute because this recidivist sentencing scheme was distinct from those that had been struck down by the Supreme Court in the wake of *Apprendi.* *See Portalatin v. Graham,* 624 F.3d 69, 93 (2d Cir.2010) (en banc). Under Penal Law § 70.10, unlike the statutes that had been overturned, "the predicate felonies alone expand the indeterminate sentencing range within which the judge has the discretion to operate, and that

discretion is cabined only by an assessment of defendant's criminal history."*Id.* at 94.

**\*12** Unlike New York's persistent felony offender statute, the persistent violent felony offender statute pursuant to which petitioner was sentenced requires only a finding that the defendant had two or more predicate violent felony offenses. *See* N.Y. Penal Law § 70.08. Because Penal Law § 70.08 enhances a defendant's liability based solely on the facts of prior convictions, district courts in this circuit have rejected similar challenges to this statute based on the principles articulated in *Apprendi;* the Court agrees with the analysis contained in these decisions. *See, e.g., Crowder v. Ercole,* No. 09–cv–3401(CBA), 2012 WL 5386042, at \*16 (E.D.N.Y. Nov. 2, 2012) ("*Apprendi,* however, explicitly carved out an exception for the fact of a prior conviction ... Thus, the Appellate Division's determination that New York's persistent violent felony offender is constitutional was not contrary to or an unreasonable application of clearly established Supreme Court precedent."); *Martin v. Ercole,* No. 07–CV–7171(KMK), 2012 WL 4465854, at \*3 (S.D.N.Y. Sept. 27, 2012) ("[C]ourts have consistently rejected the claim ... that sentences based on a judge's determination that the defendant is a persistent violent felon, pursuant to N.Y. Penal Law § 70.08, are unconstitutional."). Moreover, the Second Circuit's decisions upholding Penal Law § 70.10, which provides more discretion to trial courts than 70.08, "confirm[s], *a fortiori,* the constitutionality of § 70.08."*Boutte v. Poole,* No. 07 Civ. 8412(GEL), 2008 WL 3166696, at \*4 (S.D.N.Y. Aug. 4, 2008).

In sum, the Appellate Division's affirmance of petitioner's conviction and enhanced sentence is consistent with *Apprendi.*Petitioner's claim on this ground therefore fails.

## 2. Adjudication as a Persistent Violent Felony Offender

Petitioner claims that he was improperly adjudicated as a persistent violent felony offender because the prosecution failed to fully comply with N.Y.Crim. Proc. Law § 400.16(2). [11] (Pet'r's Br. at 10.) Specifically, petitioner asserts that he was unable to ascertain the appropriate use of a 1983 conviction as a predicate felony because of the prosecution's error. (*Id.*) For the reasons discussed *infra,* petitioner's claim fails on the merits, and the Court denies relief.

In addressing the legality of the procedure used to adjudicate petitioner as a persistent violent felony offender, the Appellate Division noted that "the defendant does not dispute that his incarceration was long enough that the prior sentence was imposed within the 10–year limitation period. Under the circumstances, the omission of the tolling information in the statement was harmless."*Haynes,* 70 A.D.3d at 719. Because the Appellate Division's decision was on the merits, [12] this Court will apply the deferential AEDPA standard of review to petitioner's claim. *See, e.g., Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) ("When the state court has adjudicated the merits of the petitioner's claim, we apply the deferential standard of review established by [AEDPA] ....").

### i. No Review of State Law Violations

**\*13** For a conviction to qualify as a predicate felony under New York Penal Law § 70.08(1)(a), the sentencing of such conviction "must have been imposed not more than ten years before commission of the felony of which the defendant presently stands convicted." [13] N.Y. Penal Law § 70.04(1)(b)(iv). If the sentencing of a prior conviction exceeds this ten year limitation period, the prosecutor must file a statement that includes "the date of commencement and the date of termination as well as the place of imprisonment for each period of incarceration ...." N.Y. C.P.L. § 400.15(2).

Although petitioner contends that the prosecutor violated N.Y.Crim. Proc. Law § 400.16(2) by failing to include the date of commencement and the date of termination, as well as the place of imprisonment for each period of incarceration, this claim asserts only a state law violation, which is not cognizable on federal habeas corpus review. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Knapp v. Leonardo,* 46 F.3d 170, 181 (2d Cir.1995).

### ii. Failure to Raise an Objection

Even assuming, *arguendo,* that this state law claim can be reviewed in federal court, petitioner's contention fails because during the plea proceeding, petitioner did not contest the use of the prior convictions contained in the predicate felony statement. As this Court has stated, "when ... the defendant

fails to raise an objection, and when, as a result, the legality of the sentence cannot be determined by this court upon the information contained in the appellate record, review as a matter of law should be denied." *Delston v. New York,* No. 07–CV–4373(JFB), 2010 WL 3004591, at \*10 (E.D.N.Y. July 29, 2010). [14]

At the plea proceeding, petitioner did not contest the use of either the 1983 or 2001 convictions. (P. at 17.) When asked how he wished to respond to these accusations, petitioner voluntarily admitted them, instead of standing mute or denying them. (*Id.* at 18.)Although not the case for the 2001 conviction, petitioner's 1983 conviction clearly falls outside the ten year limitation period set forth in New York Penal Law § 70.04(1)(b)(iv); objecting on this ground at the plea hearing would thus seem apparent, even if specific factual information pursuant to N.Y.Crim. Proc. Law § 400.16(2) was omitted. However, petitioner failed to contest the use of the 1983 conviction at the time of his plea. (*Id.* at 17.)Moreover, petitioner conferred with his attorney before admitting to the predicate convictions. (*Id.* at 15.)

During the course of petitioner's plea, the purpose of the predicate felony statement was served. Thus, petitioner had notice of the predicate felonies the People wished to use against him in seeking a persistent violent felony offender status; moreover, petitioner had the opportunity to assert his objections, such as the use of a prior conviction exceeding the ten year limitation period. As the transcript of the plea hearing demonstrates, petitioner received "reasonable notice and an opportunity to be heard,"*Oyler v. Boles,* 368 U.S. 448, 452 (1962), relative to the predicate felonies that were used to adjudicate him as a persistent violent felony offender under New York's recidivist sentencing statute. Petitioner did not controvert the use of his prior convictions; petitioner cannot now challenge the trial judge's reliance on a conviction that he did not contest at the plea hearing. *See Delston,* 2010 WL 3004591, at \*10. Given petitioner's notice of the predicate felonies to serve in his adjudication as a persistent violent felony offender, and his opportunity to controvert the use thereon, review as a matter of law is denied. [15]

### iii. No Collateral Attack on Prior Convictions

\*14 Even assuming *arguendo* that petitioner's claim was reviewable and that petitioner adequately stated his grounds for contesting the 1983 conviction, the claim is without merit.

As the Supreme Court stated in *Lackawanna County District Attorney v. Coss,*

> once a state conviction is no longer open to direct or collateral attack in its own right ... the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

532 U.S. 394, 403–04 (2001) (citation omitted). The Court recognized an exception to this general rule for " § 2254 petitions that challenge an enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment ...." *Id.* at 404."Thus, it is clear that the Supreme Court has sharply distinguished between collateral attacks to previous convictions used for enhancing a sentence between those based on actual failure to appoint counsel and those based on other possible trial defects, including the denial of the effective assistance of counsel." *Bowers v. Miller,* No. 05–CV6023L, 2009 WL 2045680, at \*16 (W.D.N.Y. July 10, 2009).

Petitioner does not argue that he was denied counsel in his 1983 conviction. Rather, it appears that he argues his counsel in the 1983 case was ineffective for failing to procure youthful offender status. Petitioner's 1983 conviction was conclusively valid. As such, habeas relief is not warranted.

\* \* \*

For these reasons, there is no basis for this Court to conclude that the state court's decision was either an unreasonable determination or contrary to clearly established federal law.

### 3. Validity of Guilty Plea

Petitioner argues that his guilty plea was less than voluntary, knowing, and intelligent because the predicate statement allocuted to him by the court did not list specific factual information set forth in N.Y.Crim. Proc. Law § 400.15(2).

(Pet'r's Br. at 7–9.) Petitioner also argues that his guilty plea was involuntarily induced because he received ineffective assistance of counsel. (*Id.*) As discussed *supra,* this Court finds that petitioner's claim is procedurally barred on an independent and adequate state-law ground. Even if it were not, petitioner's claim is without merit. The Court therefore denies petitioner habeas relief on this ground.

In addressing the alleged effect of petitioner's factually insufficient predicate felony statement on the voluntariness of his plea, the Appellate Division stated that "the omission of the tolling information in the statement was harmless." *Haynes,* 70 A.D.3d at 719. The Appellate Division's decision is clearly on the merits of the petitioner's claims; therefore, the deferential AEDPA standard of review must be applied. In applying this standard, the Court finds that the Appellate Division's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

### a. Legal Standard

**\*15** "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant ." *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (internal quotation marks and citations omitted)); *see also Parke v. Raley,* 506 U.S. 20, 28–29 (1992) (plea is valid when it is both knowingly and voluntarily made). Where "a defendant is represented by counsel during the plea process, and enters his plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill,* 474 U.S. at 56 (internal quotation marks and citations omitted).

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is done "voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences." *United States v. Adams,* 448 F.3d 492, 497 (2d Cir.2006) (internal quotation marks and citations omitted); *accord Godinez v. Moran,* 509 U.S. 389, 400 (1993). While a guilty plea "is not ordinarily subject to collateral attack," it "may be collaterally attacked if it was not knowing or not voluntary ...." *Salas v. United States,* 139 F.3d 322, 324 (2d Cir.1998); *see also U.S. ex rel Scott v. Mancusi,* 429 F.2d 104, 107 (2d Cir.1970) ("[A]

conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus.").

"A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.' " *Manzullo v. New York,* No. 07 CV 744(SJF), 2010 WL 1292302, at \*5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988)). Indeed, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper." *Bousley v. United States,* 523 U.S. 614, 619 (1998) (internal alteration, citations, and quotation marks omitted).

### b. Application

There is nothing in the record to indicate that petitioner's plea was less than voluntary, knowing, and intelligent. A review of the transcript from the plea hearing demonstrates that petitioner was informed and aware of the consequences of his guilty plea. In fact, petitioner fully recognized the nature of the charges against him and the rights he was waiving by entering a guilty plea. (P. at 6–8 .) Petitioner assured the court that he was entering the plea, including the waiver of his right to appeal, freely and voluntarily.(*Id.* at 8.) Moreover, petitioner denied that his decision to plead guilty was the result of any threats or coercion. (*Id.* at 9.) Petitioner also stated to the court that he was not under the influence of any drugs, medicine, alcohol or any substance that could affect or impair his ability during the plea proceeding. (*Id.*) To the extent petitioner alleges that his guilty plea was involuntarily induced due to the ineffective assistance of his counsel, petitioner has not put forth any information in support of this contention. On the contrary, petitioner stated at his plea hearing that he had a sufficient amount of time to discuss the plea with his attorney, and that he was satisfied with counsel's representation. (*Id.* at 5–6.)During the plea hearing, petitioner also consulted with his attorney before and after the court allocuted him to the predicate statement pursuant to N.Y.Crim. Proc. Law § 400.16(2).(*Id.* at 15, 18.)Therefore, the record does not indicate that petitioner's guilty plea was

less than voluntary, knowing, and intelligent because he received ineffective assistance of counsel.

**\*16** In light of the statements set forth in the transcript from the plea, petitioner's unsupported claim that his guilty plea was not voluntary does not warrant habeas relief. A criminal defendant's self-inculpatory "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 F.3d 63, 74 (1977). Such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States,* 171 F.3d 728, 732 (2d Cir.1999) (citations omitted). Considering the great weight given to a defendant's statements made during his plea, petitioner has failed to demonstrate that his current allegations merit serious consideration. Therefore, the Court finds that petitioner's guilty plea was voluntary, knowing, and intelligent. The state court decision regarding the voluntariness of petitioner's plea was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### 4. Ineffective Assistance of Counsel

Petitioner further contends that he received ineffective assistance of counsel because counsel failed to: (1) explore the constitutionality of petitioner's 1983 conviction; (2) challenge the inclusion of petitioner's prior violent felony convictions in the predicate statement filed pursuant to N.Y.Crim. Proc. Law § 400.16(2), as a violation of the principles announced in *Crawford;* and (3) address petitioner's drug use at either the plea or sentencing hearing, despite the presentence investigation report making note of such history. (Pet'r's Br. at 4–7.) As discussed *supra,* this Court finds that petitioner's ineffective assistance of counsel claims are procedurally barred, and to the extent that petitioner bases such claims on his attorney's failure to investigate, this Court finds petitioner's claims unexhausted and thus not properly reviewable. For the reasons set forth below, this Court also determines that petitioner's claims of ineffective assistance of counsel are without merit.

In its decision, the Appellate Division stated that "the defendant was afforded meaningful representation." *Haynes,* 70 A.D.3d at 718–19. Because the Appellate Division disposed of petitioner's claim on the merits, this Court must

apply the deferential AEDPA standard of review. *See, e.g., Dolphy,* 552 F.3d at 238.

### a. Legal Standard

Under the standard promulgated in *Strickland v. Washington,* 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 680, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**\*17** The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a " 'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.' " *Id.* (quoting *Rompilla v. Beard,* 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments." *Id.* (quoting *Strickland,* 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord,* 77 F.3d 578, 588 n. 3 (2d Cir.1996), and " 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 588 (quoting *Strickland,* 466 U.S. at 690–91). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quoting *Strickland,* 466 U.S. at 690–91.)

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude

such that it " 'undermine[s] confidence in the outcome." *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 694). " '[T]he question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilty." *Henry v. Poole,* 409 F.3d 48, 63–64 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 695. " 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' " *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland,* the determination of prejudice may be made with the benefit of hindsight ." *Hemstreet v. Greiner,* 491 F.3d 84, 91 (2d Cir.2007) (internal quotation marks and citations omitted).

**\*18** This Court proceeds to examine petitioner's claim, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004).

### b. Application

### i. Failure to Explore the Constitutionality of Petitioner's 1983 Conviction

Petitioner alleges that the failure of defense counsel to inquire into the validity of his 1983 conviction constituted ineffective assistance of counsel. (Pet'r's Br. at 6–7.) Petitioner argues that he could have been adjudicated as a youthful offender when he was convicted in 1983, and counsel should have investigated whether his failure to be adjudicated as such was unconstitutional. (*Id.* at 6.) As discussed *supra,* petitioner's claim is procedurally barred by his valid waiver of the right to appeal. Furthermore, there is no evidence in the record to support petitioner's claim based on counsel's failure to investigate the validity of his 1983 conviction. Therefore, petitioner's claim of ineffective assistance of counsel is not exhausted and is procedurally barred. Even assuming, *arguendo,* that petitioner's claim can be reviewed, it lacks merit and cannot be the basis for habeas relief.

Under New York law,

> [w]here a defendant fails to challenge the constitutionality of a prior

conviction at the appropriate time, and fails to demonstrate good cause for such failure, he waives any future challenge to the constitutionality of the prior conviction for sentence enhancement purposes.... Where such predicate violent felony offender finding has been made, it shall be binding upon that defendant in any future proceeding in which the issue may arise. Furthermore, a defendant is precluded by statute from contesting the use of a prior conviction as a predicate conviction where he has previously been adjudicated a second violent felony offender based on that conviction.

*People v. Odom,* 63 A.D.3d 408, 409 (1st Dep't 2009) (citations omitted).

Petitioner has failed to satisfy either prong of the *Strickland* test. First, as far as the record before this Court shows, there was nothing to put petitioner's counsel on notice that his 1983 conviction may have possibly been unconstitutional. [16] In fact, during the plea hearing, petitioner did not raise any constitutional objections to his prior convictions when prompted by the court. (P. at 18.) Thus, it was not unreasonable for counsel to fail to inquire into the constitutionality of petitioner's 1983 conviction when the evidence did not indicate that counsel was aware of any reason to do so. Applying the appropriately "heavy measure of deference to counsel's judgments" regarding which issues to investigate and to what extent, *Strickland,* 466 U.S. at 691, the Court concludes that counsel's performance was not deficient.

Even if petitioner raised his concerns to his counsel, given petitioner's failure to challenge the 1983 conviction at the appropriate time, and the reliance on the 1983 conviction in the 2001 sentencing, counsel's performance in not challenging the constitutionality of the 1983 conviction was well within the objective standard for reasonableness under *Strickland.*(*See* P. at 12 ("You've already been deemed what is known as a prior violent felony offender.")).

**\*19** Even if this Court assumes that counsel's performance was deficient, petitioner is unable to demonstrate that he was prejudiced as a result; therefore he does not satisfy *Strickland'*

s second prong. As *Strickland* makes clear, petitioner must show that there is "a reasonable probability, that but for counsel's unprofessional errors, the result of the proceeding would have been different."*Id.* at 694.However, petitioner does not allege that he would have chosen not to plead guilty but for counsel's failure to investigate the validity of his 1983 conviction. Accordingly, petitioner's claim fails.

### c. Failure to Challenge Predicate Statement as a Violation of *Crawford*

Petitioner alleges that his counsel's failure to challenge the predicate statement as a violation of *Crawford* constitutes ineffective assistance of counsel. (Pet'r's Br. at 7.) As an initial matter, petitioner's claim of ineffective assistance of counsel is procedurally barred through an independent and adequate state-law ground, as discussed *supra.*However, even assuming *arguendo* that petitioner's claim is reviewable, petitioner has failed to satisfy the standard set forth in *Strickland.*The claim is therefore denied by this Court.

First, petitioner has failed to show that counsel's failure to raise a *Crawford* challenge to the inclusion of his prior convictions in the predicate statement represents deficient performance. In fact, the Second Circuit has found that the right of confrontation does not pertain to sentencing proceedings. *See United States v. Martinez,* 413 F.3d 239, 242 (2d Cir.2005) ("Both the Supreme Court and this Court, however, have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings."). Because the right of confrontation is inapplicable in sentencing proceedings, petitioner has not shown how counsel's failure to raise a *Crawford* challenge at the plea hearing establishes representation "below an objective standard of reasonableness."*Strickland,* 466 U.S. at 680. Thus, the Court does not find counsel's performance to be constitutionally defective in this respect.

Notwithstanding petitioner's failure to satisfy the first prong of *Strickland,* petitioner also is unable to demonstrate that he was prejudiced as a result of counsel's failure to raise a *Crawford* challenge to the predicate statement. Petitioner has not alleged that, but for counsel's purported error, a reasonable probability exists that "the result of the proceeding would have been different."*Strickland,* 466 U.S. at 694. Therefore, petitioner has failed to reach the second prong of *Strickland.*

### d. Failure to Address Petitioner's Drug Use

Petitioner also alleges that his counsel's failure to address his drug use at either the plea or sentencing hearing constitutes ineffective assistance of counsel. (Pet'r's Br. at 7.) As a threshold matter, petitioner's ineffective assistance of counsel claim is procedurally barred as discussed *supra.*However, even assuming *arguendo* that this claim could be reviewed, petitioner has failed to satisfy the first prong of *Strickland.*Although petitioner notes that his drug use and its relation to the crime were mentioned in the presentence investigation report, he fails to suggest how or why counsel should have presented this information to the court. As petitioner has failed to demonstrate how his counsel's behavior in this regard fell outside the "wide range of professionally competent assistance,"*Strickland,* 466 U.S. at 690, he does not meet the first prong of *Strickland.*In any event, petitioner fails to satisfy the second prong of *Strickland* because he has not demonstrated how counsel's failure to address his drug use at either the plea or sentencing hearing has prejudiced him. This Court finds that petitioner's claim is without merit.

**\*20** Because petitioner has not demonstrated that he was denied effective assistance of counsel or that he was prejudiced by any of counsel's alleged deficiencies, petitioner's claim for habeas relief on this ground fails.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. All of petitioner's claims are plainly without merit. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See*28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 6675121

Footnotes

1   The following facts were taken from the pre-trial hearing transcripts ("Apr. 9 H." and "Apr. 21 H."), the plea minutes
    ("P."), and the sentencing minutes ("S."). At the pre-trial hearings, Detective Donald Truesdell from the Suffolk County
    Police Department, Police Officer Brian Rathburn of the Suffolk County Police Department, Police Officer Eric Bowen
    of the Suffolk County Police Department, and Police Officer Marc Frascogna of the Suffolk County Police Department
    all testified.

2   The Hess gas station is located at the corner of Old Dock Road and Horseblock Road, approximately a mile from the
    victim's home. (Apr. 21 H. at 7.)

3   Police Officer Rathburn testified to hearing this statement from petitioner. Officers Rathburn and Valenti had arrived at
    the gas station shortly after 10:00 a.m. to assist Officers Frascogna and Rowe. (Apr. 9 H. at 69, 72.)

4   During a pre-trial hearing, Officer Rathburn noted that petitioner appeared calm and relaxed. Officer Rathburn also stated
    that no threats or promises were made to petitioner while questioned. (*Id.* at 73.)

5   Prior to taking petitioner's statement, Detective Truesdell informed petitioner of his constitutional rights, which petitioner
    voluntarily waived. (*Id.* at 12–20.)Detective Truesdell noted that at no point before or during the statement did petitioner
    appear confused or fail to cooperate. (*Id.* at 17–18.)

6   In petitioner's brief on appeal, he did not raise the voluntariness of his plea as a separate argument, but instead
    incorporated this argument within his other three arguments. (Def.-Appellant Br., Sept. 22, 2009.)

7   Moreover, the Appellate Division's reliance on a defendant's valid waiver of the right to appeal as a procedural bar was
    not exorbitant in this case. The Supreme Court concluded that in a limited category of "exceptional cases," when the
    state appellate court has applied a firmly established and regularly followed procedural ground in an "exorbitant" manner,
    so that the application of the ground was inadequate, federal courts are not barred from reviewing such a claim on the
    merits. *See Lee v. Kemna,* 534 U.S. 362, 376, 381 (2002). In *Cotto v. Herbert,* 331 F.3d 217 (2d Cir.2003), the Second
    Circuit stated that the factors to consider in making this determination are "(1) whether the alleged procedural violation
    was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the
    trial court's decision; (2) whether state [case law] indicated that compliance with the rule was demanded in the specific
    circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial,"
    and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest."*Id.*
    at 240.Having reviewed these factors, the Court concludes that the Appellate Division did not apply the procedural bar
    of valid waiver of right to appeal in an exorbitant manner.

8   Additionally, the Appellate Division's reliance on a defendant's valid waiver of the right to appeal as a procedural bar was
    not exorbitant in this case. *See Lee,* 534 U.S. at 376. Having considered the factors set forth in *Cotto,* 331 F.3d at 240, in
    connection with this exception, the Court concludes that the Appellate Division did not apply the procedural bar of valid
    waiver of right to appeal in an exorbitant manner.

9   C.P.L. § 220.60(3) provides that: "At any time before the imposition of a sentence, the court in its discretion may permit a
    defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible
    by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as existed at the
    time of such plea, is restored."

10  In addition, the Appellate Division's reliance on the procedural ground with respect to petitioner's claim of an involuntary
    guilty plea was not exorbitant in this case. *See Lee,* 534 U.S. at 376. Having considered the factors set forth in *Cotto,*
    331 F.3d at 240, in connection with this exception, the Court concludes that the Appellate Division did not apply the
    independent and adequate state law ground in an exorbitant manner.

11  N.Y.Crim. Proc. Law § 400.16(2) provides that: "The requirements set forth in subdivision[ ] two ... of section 400.15 with
    respect to the statement to be filed ... shall also apply to a determination of whether a defendant has been subject to two
    or more violent predicate felony convictions and is a persistent violent felony offender."

12  An "adjudication on the merits" is one that (1) disposes of the claim on substantive grounds, and (2) reduces that
    disposition to judgment. *Eze v. Senkowski,* 321 F.3d 110, 122 (2d Cir.2003)."An issue may be considered to be
    adjudicated on its merits even when the state court does not specifically mention the claim but uses general language
    referable to the merits."*Id.*

13  To calculate the ten year limitation period set forth in Penal Law § 70.04(1)(b)(iv), subparagraph (v) of the same
    subdivision states: "Any period of time during which the person was incarcerated for any reason between the time of
    the commission of the previous felony and the time of commission of the present felony shall be excluded and such ten
    year period shall be extended by a period or periods equal to the time served under such incarceration."N.Y. Penal Law

§ 70.04(1)(b)(v). Here, petitioner has not provided information, nor does the record clearly indicate, that the persistent violent felony offender statute was inapplicable at his sentencing. Moreover, the record indicates that petitioner has been convicted ten times between the time of the commission of the 1983 felony and the time of commission of the current felony. (N.Y.S DCJS Repository Response, ECF No. 10–3.)

14   In *Delston,* the petitioner alleged that his adjudication as a second felony offender was improper on two grounds. First, the petitioner contended that his adjudication was improper because the prosecutor did not file the requisite prior felony offender statement before the sentencing proceeding. Because the sentencing court allegedly failed to compare the statute on which the petitioner's felony conviction was based to the comparable New York statute, petitioner also argued that the sentencing court did not adequately determine if his conduct would be a felony in New York. *Id.* In rejecting petitioner's claim, this Court noted that, " 'the essential purpose of the predicate felony statement has been served when the prosecution has identified the prior conviction upon which it will rely in seeking a second felony offender adjudication. Once the predicate felony conviction has been identified, the defendant is fully able to assert whatever reason he might have for believing that such conviction may not be used to enhance his sentence.' " *Id.* (quoting *People v. Sullivan,* 153 A.D.2d 223, 232–33 (2d Dep't 1990) (collecting cases)). Delston therefore waived his right to challenge the use of his prior conviction and its validity by failing to contest the use thereof or request a hearing thereon. *Id.*

15   To the extent that petitioner challenges his adjudication as a persistent violent felony offender on the ground that the 1983 conviction was unconstitutional, petitioner waived his right to controvert the validity of this conviction by failing to raise such an objection at the time of his plea. *See Delston,* 2010 WL 3004591, at *10; *Phelps v. McLellan,* 95 Civ. 7868 (JFK), 1998 WL 470511, at *1 (S.D.N.Y. Aug. 11, 1998); *People v. Dickerson,* 202 A.D.2d 247, 247 (1st Dep't 1994). In any event, petitioner has not set forth an adequate basis for a finding that the 1983 conviction was unconstitutional.

16   There is nothing in the record to suggest that petitioner's counsel was aware of any constitutional problems with the prior convictions. *Compare Nunez v. Costello,* 93 Civ. 5282(JSM), 1994 WL 719686, at *4 (S.D.N.Y. Dec. 28, 1994) ("[T]he court refuses to second-guess the failure of petitioner's counsel at sentencing to inquire as to the constitutionality of petitioner's [prior] conviction" because "[a]fter conferring with counsel, petitioner voiced no objection to the prior conviction.") *and Pendleton v. Scully,* 664 F.Supp. 100, 104 (S.D.N.Y.1987) ("While counsel's failure to inquire into the circumstances of the prior conviction might in some cases be unreasonable under professional norms, this is not such a case. It was not unreasonable for counsel to fail to contest the prior guilty plea when he was unaware of any grounds on which to contest it.") *with Mask v. McGinnis,* 28 F.Supp.2d 122, 123–35 (S.D.N.Y.1998) (where New York law clearly provides that, in order to be adjudicated a violent persistent felony offender, a defendant must have at least two prior convictions and sentence must have been imposed for the prior convictions before commission of the present felony, defense counsel's failure to recognize defendant's status as a second violent felony offender rather than a persistent violent felony offender—by virtue of the fact that he had not yet been sentenced on one of the two prior felony convictions—constituted ineffective assistance), *aff'd* 233 F.3d 132 (2d Cir.2000).

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 1977435
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Julia LONG, Petitioner,
v.
Elaine A. LORD, Respondent.

No. 03-CV-0461 NPM.    |    March 21, 2006.

**Attorneys and Law Firms**

Julia Long, Bedford Hills Correctional Facility, Bedford Hills, NY, Petitioner, pro se.

Hon. Eliot Spitzer, Office of Attorney General, New York State Attorney General, The Capitol, Albany, NY, for the Respondent.

Bridget E. Holohan, Ass't Attorney General, of counsel.

***Memorandum-Decision and Order issued in***

SMITH, J.

***MEMORANDUM-DECISION and ORDER***

MCCURN, Senior J.

 **\*1** Petitioner Julia Long, a New York State prison inmate as a result of 1997 convictions for the crimes of first degree assault and criminal possession of a weapon, has commenced this proceeding seeking federal habeas relief pursuant to 28 U.S.C. § 2254. In her petition, Long asserts seven separate grounds in support of her request for federal habeas intervention. Respondent has filed a response in opposition to Long's petition, arguing therein that some of the claims asserted by Long are procedurally barred, and additionally that none of the grounds advanced in her petition have merit.

This Court finds that Long is procedurally barred from asserting several of the claims she has raised in her petition. Since petitioner has not established cause for her procedural default concerning those grounds or that she is actually innocent of any of the crimes of which he stands convicted, this Court denies those claims as procedurally barred. Furthermore, after considering the remaining grounds raised

by Long in her petition in conjunction with applicable case law, this Court finds that the additional claims asserted by Long in her habeas petition lack merit. Accordingly, this Court denies and dismisses Long's petition.

## I. *BACKGROUND*

### A. *State Court Proceedings*

According to the state court records below, in the afternoon of May 1, 1995, Long attended a meeting at the TC Club in Albany, New York in order to discuss the possibility of leasing that property from its owner. *See* Transcript of Trial of Julia Long (1/3/97) ("Trial Tr.") at 366. Ivetta Parson, an individual with whom Long had had an altercation earlier that year, was also at the club around the time of Long's meeting. *See* Trial Tr. at 120-23. For reasons not apparent from the record, Long approached Parson at that time and sprayed her face with mace. Trial Tr. at 123-24. Parson ran out of the club and went to the home of her friend, Regina Monell, where Parson washed her face. Trial Tr. at 125. The two then decided to drive to the TC Club with some friends and confront Long about the incident that had just transpired. Trial Tr. at 126-27. When the group arrived at the club, Parson observed Long holding a handgun. Trial Tr. at 132. Parson exited her vehicle, and as she was walking around her car she discovered that she was bleeding. [1] Trial Tr. at 132-33. Around this same time, Monell observed Long firing her weapon at Parson, Trial Tr. at 163-64, and soon thereafter Monell noticed that she had also been shot. Trial Tr. at 164.

 **\*2** The trial transcript also reflects that on May 1, 1995, Charles Traynham was a long time acquaintance of Robert Temple. Trial Tr. at 292. At approximately 5:00 p.m. on that date, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Traynham left the store and heard Temple calling out that he had been "hit." Trial Tr. at 294. When Traynham noticed that Temple was bleeding, Traynham drove him to a nearby hospital to be treated for his injuries, Trial Tr. at 296, which included a life-threatening gunshot wound to an artery in his right arm. Trial Tr. at 186-89. [2]

Kenneth Kennedy, a Detective with the Albany Police Department, was assigned to perform a criminal investigation relating to the above-referenced shooting. After speaking with several individuals, Detective Kennedy began looking for Long so that he could question her about her activities on

May 1, 1995. Trial Tr. at 325. When Long learned that the police were attempting to question her about the shooting, she contacted an attorney and thereafter surrendered to law enforcement agents. Trial Tr. at 438-39.

On October 13, 1995, an Albany County grand jury returned an indictment against Long. *See* Indictment No. 950631 ("Indictment"). In that accusatory instrument, Long was charged with one count of attempted murder, two counts of first degree assault, and two counts of second degree criminal possession of a weapon. *See* Indictment, Counts One through Five. Beginning on January 3, 1997, Long was tried before a jury on the foregoing charges in Albany County Court with County Court Judge Thomas A. Breslin presiding. After the parties presented their closing arguments and the court instructed the jury, the jury began its deliberations. Following several requests by the jury for the reading back of testimony and clarifications regarding the court's instructions, Trial Tr. at 634-52, the jury declared that it had reached a verdict in the case. In its verdict, the jury: i) acquitted Long of the attempted murder charge; ii) convicted her of both counts charging Long with first degree assault; iii) convicted her of the count charging Long with second degree criminal possession of a weapon (which related to victim Monell); and iv) acquitted her of the final count charging Long with second degree criminal possession of a weapon (which related to victim Temple). Trial Tr. at 652-55.

Prior to sentencing, Long's counsel filed a motion to set aside the jury's guilty verdict pursuant to New York Criminal Procedure Law ("CPL"), Section 330.30 ("CPL § 330 Motion"). *See* Record on Appeal ("Record") at 133. In that application, defense counsel alleged that the convictions must be reversed because Parson was allowed to testify that she was shot by Long despite the fact that Long had never been charged with assaulting Parson. Record at 134. Counsel also claimed that there was insufficient evidence adduced at trial to establish that Temple was shot by Long. Record at 135. After hearing argument on that application, on February 21, 1997, the county court denied Long's CPL § 330 Motion in its entirety. Record at 119-24. That court then sentenced Long to consecutive, indeterminate terms of five to fifteen years imprisonment on each of the first degree assault convictions, and a lesser, concurrent term of imprisonment on the criminal possession of a weapon conviction. *See* Record at 130-31.

**\*3** Long appealed her convictions and sentences to the New York State Supreme Court, Appellate Division, Third Department. However, on November 25, 2000, prior to

perfecting that appeal, Long filed a motion to vacate her sentence pursuant to CPL § 440.20. Record at 138. In that application, Long alleged that the consecutive sentences that had been imposed on her by the county court were illegal and contrary to her rights under both the federal and New York state constitutions. *See* Record at 139-44 ("CPL 440.20 Motion"). In support of that application, Long provided an affidavit of Temple-of whom Long had been convicted of assaulting-in which Temple declared that he could not identify the individual who shot him on May 1, 1995. Record at 145. Long's application was opposed by the District Attorney, Record at 146-47, and by Decision and Order dated January 25, 2001, Judge Breslin denied Long's CPL 440.20 Motion in its entirety. Record at 149-51 ("January, 2001 Order"). Long sought leave to appeal that decision to the Appellate Division, *see* Record at 152, and in its order dated April 20, 2001, the Third Department granted Long leave to appeal the January, 2001 Order to the Appellate Division along with her direct appeal of her conviction. Record at 155.

With the assistance of counsel, Long argued in her direct appeal that: i) she was unduly prejudiced by Parson's testimony to the effect that she was shot by Long; ii) there was insufficient evidence adduced at trial to convict Long of the first degree assault of Temple; iii) she was denied her right to a fair trial due to the manner in which the trial court mischaracterized the allegations of one of the charges in the Indictment; iv) the jury's verdict was repugnant; and v) the sentences were unduly harsh and excessive. *See* Appellant's Brief on Appeal ("App.Br.") at 1-25. That appeal was opposed by the District Attorney in his brief dated December 14, 2001, and on February 28, 2002, the Third Department unanimously affirmed Long's convictions and sentences. *People v. Long,* 291 A.D.2d 720, 738 N.Y.S.2d 721 (3d Dept.2002). New York's Court of Appeals denied Long leave to appeal in its order dated June 17, 2002. *See People v. Long,* 98 N.Y.2d 677, 746 N.Y.S.2d 467, 774 N.E.2d 232 (2002).

## B. *Proceedings in this Court*

Long commenced this proceeding, *pro se,* on April 14, 2003. *See* Petition (Dkt. No. 1). In that pleading, petitioner argues that: i) admission into evidence of an uncharged crime purportedly committed by Long deprived her of her right to a fair trial; ii) the trial court wrongfully denied Long's application to dismiss the third count in the Indictment; iii) the jury's verdict was repugnant; iv) the trial court misstated the factual allegations contained in the third count in the Indictment in its instructions to the jury; v) the sentence

imposed was both harsh and excessive; vi) the imposition of consecutive sentences was both illegal and violative of Long's right against Double Jeopardy; and vii) the Appellate Division wrongfully refused to hear Long's appeal of the denial of her CPL 440.20 Motion. *See* Petition at ¶ 13. Long has also filed a memorandum of law in support of her petition. *See* Dkt. No. 2 ("Supporting Mem.").

**\*4** By Order dated April 24, 2003, the respondent was ordered to file a response to Long's petition. On June 20, 2003, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed an answer together with a memorandum in opposition to Long's petition. Dkt. Nos. 8-9. In his opposing memorandum, respondent argues that Long is procedurally barred from asserting certain of the claims raised in her petition, and that none of Long's claims have merit. *See* Dkt. No. 9 ("Opp.Mem.").

## II. *DISCUSSION*

### A. *Procedurally Defaulted Claims*
This Court initially considers respondent's claim that Long has procedurally defaulted on her claims: i) which allege that she was denied her right to a fair because Parson was allowed to testify about an uncharged crime purportedly committed by Long; ii) that assert that the county court mischaracterized a charge contained in the Indictment; and iii) which contest both the legality and constitutionality of her sentences. *See* Opp. Mem. at 3-6.

### 1. *Admission of Evidence of an Uncharged Crime*
Petitioner's initial ground for relief is based upon Parson's trial testimony in which she suggested that she was shot by Long. *See* Petition, Ground A.

In her direct appeal, Long noted that the Indictment never charged her with committing any crime against Parson. *See* App. Br. at 3; *see also* Indictment. Prior to trial, defense counsel obtained a ruling from the county court that precluded Parson from testifying about the fact that she had been shot on May 1, 1995. *See* App. Br. at 5; *see also* Appellant's Appendix at A1. At trial, however, Parson testified that she was shot on that day in a manner which suggested that Long was the individual who had shot her. *See* Trial Tr. at 163-64. In addressing Long's appellate claim that the admission of that testimony constituted reversible error, the Third Department ruled that Long had "failed to object to

Parson's testimony and, therefore, did not preserve this issue for appellate review." *Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721 (citing CPL § 470.05[2] ) (other citation omitted).

A state court's determination that a claim was not preserved for appellate review is a finding of procedural default. *See Rivera v. Moscicki,* No. 03 CIV. 5810, 2005 WL 2347840, at \*3 (S.D.N.Y. Sept. 22, 2005); *Wilson v. Supt., Attica Corr. Facility,* No. 9:00-CV-767, 2003 WL 22765351, at \*3 (N.D.N.Y. Nov.24, 2003) (Sharpe, M.J.) (citations omitted), *adopted, Wilson v. Supt., Attica Corr. Facility,* slip op. at 2 (N.D.N.Y. Feb. 3, 2004) (Mordue, J.); *Betancourt v. Bennett,* No. 02-CV-3204, 2003 WL 23198756, at \*12 (E.D.N.Y. Nov.7, 2003). Therefore, Long has procedurally defaulted on her first ground for relief.

### 2. *Misstatement Regarding Count Three of the Indictment*
In her fourth ground seeking federal habeas intervention, Long argues that in its charge to the jury, the trial court mischaracterized the allegations contained in Count Three of the Indictment. Petition, Ground D. Specifically, she notes that such count alleged that Long shot Temple in his *chest* and right arm. *See* Indictment, Count Three (emphasis added). In its charge to the jury, however, the trial court declared that this count alleged that Long had shot Temple in the right side of his *head* and in his right arm. *See* Trial Tr. at 617 (emphasis added). Long claims in this action, as she did in her direct appeal, that as a result of the foregoing she was deprived of her right to a fair trial. *See* Supporting Mem. at 16-18; App. Br. at 16-18.

**\*5** In addressing this appellate claim, the Appellate Division determined that Long had "failed to object to the court's charge and, therefore, that error has not been preserved for review (*see,* CPL 470.05[2] )." Since the Third Department explicitly determined that Long had failed to preserve this issue for appellate review, Long has procedurally defaulted on the fourth claim asserted in her petition. [3] *Rivera,* 2005 WL 2347840, at \*3; *Wilson,* 2003 WL 22765351, at \*3; *Betancourt,* 2003 WL 23198756, at \*12.

### 3. *Claims Raised in CPL 440.20 Motion*
Long argued in her CPL 440.20 Motion, and similarly asserts in her sixth ground for relief herein, that the county court's imposition of consecutive sentences on Long was both illegal and contrary to her constitutional right to be free from Double Jeopardy. *See* Record at 139-44; Petition, Ground F.

As noted above, the Appellate Division granted Long permission to appeal the county court's January, 2001 Order denying Long's CPL 440 .20 Motion. *See* Record at 155. Long's appellate counsel did not, however, assert on appeal any claims that Long had raised in her CPL 440.20 Motion. *See* App. Br. at 4-25. In addressing this fact in the context of Long's appeal, the Third Department noted:

> Although [Long] appeals from both the judgment of conviction and the order denying the CPL 440.20 motion, her failure to address any issues pertaining to the denial of her CPL 440.20 motion constitutes an abandonment of the appeal from that order. Accordingly, we address only the arguments raised on the appeal from the judgment of conviction.

*Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721.

Where a petitioner abandons a claim at the appellate level, federal courts are to view such a claim as procedurally defaulted. *Delucia v. West,* No. 04 CIV. 3605, 2005 WL 1981708, at *4 (S.D.N .Y. Aug. 17, 2005) ("claims [that] may be considered abandoned ... result[ ] in a procedural default"); *Stephens v. Lacy,* 914 F.Supp. 44, 45 (E.D.N.Y.1996) (claims abandoned at the appellate level are procedurally defaulted). This Court accordingly finds that Long has procedurally defaulted on her sixth ground seeking federal habeas intervention.

**B. *Consequences of Procedural Default***

A federal district court is precluded from reviewing a habeas claim if the state courts' rejection of that same claim rested on a state procedural bar. *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000); *Marengo v. Conway,* 342 F.Supp.2d 222, 228 (S.D.N.Y.2004) (citations omitted). Thus, where the state court decision clearly and expressly indicates that its determination rests on a state procedural bar, a federal court may not review such claim when it is subsequently asserted in a federal habeas petition unless the petitioner demonstrates both good cause for and actual prejudice resulting from the noncompliance with the state's procedural rule. *Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 809 (2d Cir.2000); *Livingston v. Herbert,* No. 00-CV-1698, 2002 WL 59383, at *2 (N.D.N.Y.

Jan. 3, 2002) (Homer, M.J.), *adopted,* No. 00-CV-1698, docket no. 20 (N.D.N.Y. Jan. 24, 2002) (Kahn, J.), *appeal dismissed,* No. 02-2083, slip op. at 1 (2d Cir. Aug. 28, 2002) (unpublished). Additionally, review of procedurally defaulted claims is available where the petitioner demonstrates that fundamental miscarriage of justice would occur absent federal court review. [4] *Dixon,* 293 F.3d at 80; *Morales v. Greiner,* No. CV-98-6284, 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005).

**\*6** For this Court to excuse Long's procedural default under the "cause and prejudice" exception which permits federal review of procedurally barred claims, she must first establish "cause" for her default. *E.g., St. Helen v. Senkowski,* 374 F.3d 181, 184 (2d Cir.2004) (citation omitted), *cert. denied,* 543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985). To establish such cause, a petitioner must show that "some objective external factor impeded [her] ability to comply with the relevant procedural rule." *Wilson,* 2003 WL 22765351, at *3 (citing *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)); *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999)). Examples of such "external factors" include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's trial or on direct appeal. *Wilson,* 2003 WL 22765351, at *3 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)); *see Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citing *Murray* ); *United States v. Helmsley,* 985 F.2d 1202, 1206 (2d Cir.1992).

In the present action, Long has not offered any cause for her failure to preserve the above-referenced procedurally defaulted claims-all of which were based upon matters contained in the record-for review in her direct appeal of her conviction. Significantly, Long has never asserted, in the state courts or this action, that her trial counsel rendered ineffective assistance by his failure to object to either Parson's trial testimony or the manner in which the trial court described the allegations contained in the third count in the Indictment to the jury during the county court's instructions. [5] Nor has Long ever argued that her appellate counsel rendered ineffective assistance by failing to raise any of the claims Long asserted in her CPL 440.20 Motion on appeal.

Since Long has not established cause for her procedural default concerning these claims, this Court need not decide whether she suffered prejudice, because federal habeas relief is unavailable under this limited exception permitting review

of procedurally barred claims unless *both* cause and prejudice is demonstrated. [6] *See Stepney,* 760 F.2d at 45; *D'Alessandro v. Fischer,* No. 01 CIV. 2551, 2005 WL 3159674, at *9 n. 10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney* ); *Moore v. Greiner,* No. 02 CIV.6122, 2005 WL 2665667, at *12 (S.D.N.Y. Oct.19, 2005) (citing *Stepney* ); *Lutes v. Ricks,* No. 02-CV-1043, 2005 WL 2180467, at *9 (N.D.N.Y. Sept. 9, 2005) (McAvoy, S.J.) (citing *Stepney* and *Jones v. Barkley,* No. 9:99-CV-1344, 2004 WL 437468, at *9 (N.D.N.Y. Feb.27, 2004) (Sharpe, J.) (collecting cases)); *Pou v. Keane,* 977 F.Supp. 577, 581 (N.D.N.Y.1997) (Kahn, J.).

**\*7** The finding that Long has failed to establish cause for her procedural default does not necessarily preclude this Court from considering her procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly invoke habeas review as to such claims if the court is convinced of the petitioner's actual innocence. On this question, the Second Circuit has observed that:

> The Supreme Court has explained that the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo,* 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 ... (1995). " "[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 ... (1998). "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup,* 513 U.S. [at] 327-28 ... (some internal citation marks omitted)).

*Sweet v. Bennett,* 353 F.3d 135, 142 (2d Cir.2003); *see also D'Alessandro,* 2005 WL 3159674, at *8; *Marengo,* 342 F.Supp.2d at 228. Thus, in considering whether a petitioner's procedural default may be excused under this "actual innocence" exception, federal courts are to consider the sufficiency of the evidence offered against the petitioner at his or her trial. *Dixon,* 293 F.3d at 81.

Considering first Long's convictions for the crimes of first degree assault, this Court notes that "New York Penal Law § 120.10(1) provides that a person is guilty of first degree assault when, '[w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or

dangerous instrument." ' *Jackson v. Lacy,* 74 F.Supp.2d 173, 178 (N.D.N.Y.1999) (McAvoy, C.J.).

With respect to Long's assault conviction relating to Monell, the trial transcript reflects that soon after Monell observed Long firing her weapon at Parson, Monell heard Parson's friend, Charlene Gause, directing Parson to shoot Monell. [7] Trial Tr. at 165. Soon thereafter, Monell discovered that she had been shot. Trial Tr. at 165-66. Additionally, a forensic detective with the Albany Police Department testified that the location of seven shell casings found at the crime scene was consistent with having been fired from the area where Long was observed standing by Monell and Parson. Trial Tr. at 270-77. The foregoing evidence amply supported the jury's finding that Long was guilty of the first degree assault of Monell. [8]

As to Long's conviction on the first degree assault relating to Temple, after reviewing the relevant trial testimony relating to this charge, this Court adopts the Appellate Division's determination that the trial testimony "provided a valid line of reasoning and permissible inferences from which any rational trier of fact could find [Long] guilty beyond a reasonable doubt of all the essential elements of the crime of assault in the first degree" as to Temple. *See Long,* 291 A.D.2d at 722, 738 N.Y.S.2d 721. [9]

**\*8** Turning to Long's conviction of second degree criminal possession of a weapon in conjunction with her assault on Monell, the Court notes that in New York, a person is guilty of that crime when, with the intent to use a weapon unlawfully against another, a person "possesses a loaded firearm." *See* New York Penal L. § 265.03. The evidence adduced at trial was more than sufficient to establish that on May 1, 1995, Long possessed a loaded firearm which she intended to use unlawfully with respect to Monell. *See, e.g.,* Trial Tr. at 134, 164-66.

In sum, after carefully considering this issue, this Court concludes that petitioner has failed to meet her burden of proving that she is actually innocent of any of the crimes of which she was convicted. [10] Therefore, this Court finds no basis to overlook Long's procedural default regarding the above-referenced claims, and accordingly denies her first, fourth and sixth grounds for relief (delineated by petitioner as Grounds "A," "D," and "F," respectively) as procedurally forfeited. *See, e.g., Lutes,* 2005 WL 2180467, at *9; *Ayuso v. Artuz,* No. 99 CIV 12015, 2001 WL 246437,

at *8-9 (S.D.N.Y. Mar.7, 2001); *DeLeon v. Hanslmaier,* No. CV-94-5512, 1996 WL 31232, at *3-4 (E.D.N.Y. Jan.19, 1996), *aff'd,* 104 F.3d 355 (2d Cir.1996).

**C. Remaining Claims**

**1. Standard of Review**

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254. Under the AEDPA, a federal court cannot grant habeas relief to a state prisoner on a claim:

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Miranda v. Bennett,* 322 F.3d 171, 177-78 (2d Cir.2003); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry,* 403 F.3d at 66; *Boyette,* 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court

precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*\*9* *Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Francis S. v. Stone,* 221 F.3d 100, 108-09 (2d Cir.2000)).

In *Sellan v. Kuhlman,* 261 F.3d 303, 309-10 (2d Cir.2001), the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is required if the claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. *Sellan,* 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that:

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim-*even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."*

*Sellan,* 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller,* 303 F.3d 231, 246 (2d Cir.2002). When a state court's decision is found to be decided "on the merits," that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal court engaged in habeas review is to determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." *Williams,* 529 U.S. at 409; *see also Sellan,* 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness

beyond error," though "the increment need not be great[.]" *Francis S.,* 221 F.3d at 111.

## 2. *Substance of Long's Remaining Claims*

### A. *Motion to Dismiss Indictment*
In her second ground for relief, Long argues that the trial court wrongfully failed to dismiss the third count in the Indictment despite the fact that insufficient evidence was adduced at trial establishing her guilt of that charge. *See* Petition, Ground B; Supporting Mem. at 7-10; *see also* Indictment, Count Three; App. Br. at 7-10.

At the close of the prosecution's proof, Long's counsel moved pursuant to CPL § 290.10 to dismiss, *inter alia,* Count Three of the Indictment, which accused Long of the first degree assault of Temple. [11] *See* Trial Tr. 351. The county court denied that application, concluding that there existed a sufficient factual basis to submit that Count to the jury for its consideration. Trial Tr. at 352.

 **\*10** A motion under CPL § 290.10 must be denied where the trial evidence, when viewed in a light most favorable to the prosecution, is legally sufficient to support a guilty verdict. *People v. Phillips,* 256 A.D.2d 733, 734-35, 682 N.Y.S.2d 685 (3d Dept.1998) (citation omitted). A claim based upon a trial court's failure to dismiss a charge in an indictment is properly considered a challenge to the sufficiency of evidence relating to such charge. *See Gwathney v. Sabourin,* 269 F.Supp.2d 63, 66 (E.D.N.Y.2003); *Phillips,* 256 A.D.2d at 734-35, 682 N.Y.S.2d 685 (citation omitted). Accordingly, federal courts considering habeas claims premised upon a trial court's failure to dismiss one or more counts in an indictment must determine whether the state court's decision denying the motion to dismiss is contrary to, or involved an unreasonable application of, Supreme Court case law governing evidence sufficiency claims. *E.g., Ubrich v. Murphy,* No. 98-CV-0655, slip op. at 41 (N.D.N.Y. Apr. 4, 2003) (Peebles, M.J.), *adopted,* No. 98-CV-0655, Dkt. No. 28, slip op. at 2 (N.D.N.Y. May 13, 2003) (Scullin, C.J.).

### i. *Clearly Established Supreme Court Precedent*
The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he or she is charged. *See Fiore v. White,* 531 U.S. 225, 228-29, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001); *Jackson v. Virginia,* 443

U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). A habeas petitioner claiming that there was insufficient evidence supporting a challenged conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 324; *see also Schlup,* 513 U.S. at 323 n. 38; *United States v. Powell,* 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citations omitted). Moreover, in reviewing the record, the court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson,* 443 U.S. at 319.

### ii. *Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent*
The trial evidence established that on May 1, 1995, Traynham and Temple were across the street from the TC Club. Trial Tr. at 293. Soon after Traynham went into a nearby store, he heard gunshots. Trial Tr. at 293-94. Around that same time, both Parson and Monell observed Long near the TC Club brandishing a gun. Trial Tr. at 132, 163-64. Long was observed firing the weapon at Parson, Trial Tr. at 163-64, and around that same time Temple, who was near the TC Club on that date, sustained a life-threatening gunshot wound. Trial Tr. at 188-89, 294. Additionally, seven 9 mm shell casings were found in the area where Long was observed by Monell and Parson holding a gun, Trial Tr. at 270-77, evidence which strongly suggested that Long fired her weapon multiple times. The foregoing evidence, viewed collectively, is more than sufficient to surpass the relatively modest hurdle imposed by *Jackson* with respect to Long's conviction on the first degree assault charge relating to Temple. Therefore, this Court concludes that Long has not demonstrated that the Appellate Division's decision denying the aspect of her appeal which challenged the denial of her motion to dismiss the third count in the Indictment due to evidence insufficiency, *see Long,* 291 A.D.2d at 721-22, 738 N.Y.S.2d 721, is either contrary to, or involves an unreasonable application of, *Jackson* and its progeny. This Court accordingly denies her second ground for relief.

### B. *Repugnant / Inconsistent Verdict*

**\*11** As noted above, the jury acquitted Long of the attempted murder charge relating to Monell (Count One), as well as the weapons possession charge which accused her of possessing a firearm and intending to use same unlawfully as to Temple (Count Five). *See* Trial Tr. at 652-55.

Long argues in this proceeding, as she did in state court, that the jury's verdict is repugnant because she was acquitted of the charge which accused Long of criminally possessing a weapon but convicted of the assault charge as to Temple, which required, *inter alia,* a finding by the jury that Long used a firearm in conjunction with such assault. *See* Petition, Ground C; Supporting Mem. at 11-15; *see also* App. Br. at 11-15; Indictment, Counts Three, Five.

### i. *Clearly Established Supreme Court Precedent*

In *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), the Supreme Court opined that:

> The most that can be said in [ ] cases [in which the jury renders an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

*Dunn,* 284 U.S. at 393 (internal quotation and citation omitted); *see also Powell,* 469 U.S. at 64-65 (quoting *Dunn* ). Since the Government is unable to seek review of the portion of the verdict that acquits a defendant due to the Double Jeopardy Clause of the United States Constitution, it is "unclear whose ox has been gored" by an inconsistent verdict. *Powell,* 469 U.S. at 65-66 (footnote omitted). Consequently, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66; *Bradshaw v. Stumpf,* 545 U.S. 175, 125 S.Ct. 2398, 2409, 162 L.Ed.2d 143 (2005) ("inconsistent jury verdicts may be enforced") (citing *Powell, Dunn* ) (Souter and Ginsburg, concurring); *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("inconsistent verdicts are constitutionally tolerable")

(citation omitted); *Harris v. Rivera,* 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").

### ii. *Contrary To, or Unreasonable Application of, Supreme Court Precedent*

In denying Long's appellate claim relating to the alleged inconsistency of the jury's verdict, the Appellate Division opined:

> Defendant reasons that she cannot be guilty of shooting Temple if the jury also determined that she did not possess a gun. However, it is equally possible that the verdict resulted from the jury's assessment that, although she possessed a loaded handgun, she did not have the intent to use it unlawfully against Temple (*see,* Penal Law § 265.03[2] ). The jury could have determined that she acted recklessly by creating a grave risk of death to Temple causing serious physical injury (*see,* Penal Law § 120.10[3] ). Therefore, "[t]he acquittal of the former ... did not negate [any] elements of the latter [.]" Where, as here, a rational theory exists to support each verdict, the jury's determination will not be disturbed.

**\*12** *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721 (citation to case law omitted). Thus, the Third Department found that the jury's verdict was not, in fact, inconsistent.

Since the present habeas claim is rooted in the assumption that the jury's verdict was repugnant, *see* Petition, Ground C, this Court initially considers whether the verdict was, in fact, inconsistent.

In instructing the jury on the first degree assault charge relating to Monell, the trial court charged the jury that the prosecution was required to establish that on or about May 1, 1995, Long, "did, with intent to cause serious physical injury to another person, cause[ ] such injury to such person ... by means of a deadly weapon." Trial Tr. at 613-14. In sharp contrast to that charge, when instructing the jury as to the first degree assault charge relating to Temple, the county court instructed the jury that the prosecution was required to establish that on or about May 1, 1995, "under circumstances evincing a depraved indifference to human life, [Long] recklessly engaged in conduct which created a grave risk of death to another person, and thereby caused serious physical injury to another person." Trial Tr. at 616-17. Thus, unlike the assault charge relating to Monell, the jury was *not* required to find that Long *intended* to cause serious physical

injury to Temple in considering whether she was guilty of that assault charge. Both weapons possession charges, however, required the jury to find, *inter alia,* that Long possessed a firearm *with the intent to use that weapon unlawfully. See* Trial Tr. at 622, 624 (weapons possession charge relating to Monell); Trial Tr. at 626-28 (weapons possession charge relating to Temple). Thus, unlike the assault charge relating to Temple, the jury was instructed that it could *only* find Long guilty of the weapons possession charge relating to that victim if it found, *inter alia,* that: "she possessed [a loaded pistol] *with intent to use it unlawfully against ... Robert Temple."* Trial Tr. at 627.

Under New York law, "[t]wo counts are 'inconsistent' when guilt of the offense charged in one necessarily negates guilt of the offense charged in the other." CPL § 300.30(5). "Whether verdicts are repugnant or inconsistent ... is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin,* 76 N.Y.2d 804, 806, 559 N.Y.S.2d 962, 559 N.E.2d 656 (1990) (citing *People v. Tucker,* 55 N.Y.2d 1, 6-7, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981)).

In the state court matter below, the Appellate Division determined that the jury could have properly found both: i) that Long acted recklessly when she shot Temple, thereby creating a grave risk of death to him and causing him serious physical injury; and ii) that although Long possessed a loaded handgun on May 1, 1995, she did not *intend* to use it unlawfully against Temple. [12] *Long,* 291 A.D.2d at 722-23, 738 N.Y.S.2d 721. This Court agrees with the Third Department's determination that the jury's verdict was in no way inconsistent or repugnant. Thus, Long cannot prevail on her third ground for relief, which is premised upon the assumption that the jury's verdict was inconsistent.

**\*13** Additionally, as noted above, the Supreme Court has held that inconsistent verdicts are generally enforceable and not subject to judicial review. *See Powell,* 469 U.S. at 65-66. Since an allegedly inconsistent verdict is not a sufficient reason for setting it aside, *Harris,* 454 U.S. at 345, the Appellate Division's decision denying this aspect of Long's appeal is neither contrary to, nor an unreasonable application of, the above-referenced Supreme Court authority. Therefore, for this reason as well, this Court must deny Long's third ground for relief. *E.g., Brunson v. Tracy,* 378 F.Supp.2d 100, 110 (E.D.N.Y.2005) ("[i]t is well-settled that federal habeas relief is unavailable for inconsistent verdicts") (citations

omitted); *Vassell v. McGinnis,* No. 04-CV-0856, 2004 WL 3088666, at *6 (E.D .N.Y. Dec. 22, 2004); *Muldrow v. Herbert,* 299 F.Supp.2d 166, 170 (W.D.N.Y. Feb.3, 2004) ("an allegedly inconsistent verdict does not present a constitutional violation. Therefore, such a claim is not even cognizable on habeas review"), *appeal dismissed,* No. 04-1839pr (2d Cir. Jan. 20, 2005).

### C. *Harsh and Excessive Sentence*

In her fifth claim, Long alleges that in light of her age, background, familial obligations and lack of criminal history, the sentence imposed on her was harsh and excessive. [13] Petition, Ground E. She further alleges that the sentences "violate[ ] New York State and Federal Sentencing Guidelines." Petition, Ground E.

These claims, however, fail to acknowledge the established authority which holds that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (citing *Underwood v. Kelly,* 692 F.Supp. 146 (E.D.N.Y.1988), *aff'd mem.,* 875 F.2d 857 (2d Cir.1989)); *see also Brown v. Donnelly,* 371 F.Supp.2d 332, 343-44 (W.D.N.Y.2005); *Jackson,* 74 F.Supp.2d at 181 ("[i]t is well-settled ... that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law"). Although petitioner now claims that the sentences imposed on her were illegal, *see* Petition, Ground E, the Court notes that in Long's direct appeal, appellate counsel explicitly acknowledged that the sentences imposed on her client were authorized by New York law. *See, e.g.,* App. Br. at 20 (counsel conceding that the imposed sentences were "authorized by law").

Moreover, the Court's review of Long's sentences establishes that the imposed sentences were consistent with New York Penal Law. For example, Long was sentenced to terms of five to fifteen years imprisonment on each of her first degree assault convictions. *See* Record at 130-31. The Appellate Division has specifically noted that such a sentence for a conviction of that crime is "within permissible statutory ranges" in New York. *See People v. Duncan,* 279 A.D.2d 887, 889, 720 N.Y.S.2d 578 (3d Dep't), *leave denied,* 96 N.Y.2d 828, 729 N.Y.S.2d 448, 754 N.E.2d 208 (2001). Similarly, Long's sentence of five to fifteen years imprisonment on her weapons possession conviction, Record at 131, has been explicitly acknowledged as authorized under New York law. *See People v. Rodriguez,* 276 A.D.2d 326, 326-27, 714

N.Y.S.2d 267 (1st Dep't 2000), *leave denied, People v. Rodriguez,* 96 N.Y.2d 738, 722 N.Y.S.2d 805, 745 N.E.2d 1028 (2001). [14]

**\*14** With respect to the consecutive nature of the sentences imposed on Long regarding the first degree assault convictions, [15] this Court notes that the discretionary power of trial courts in New York "includes the ability to impose consecutive penalties for multiple crimes." *People v. Ramirez,* 89 N.Y.2d 444, 450, 654 N.Y.S.2d 998, 677 N.E.2d 722 (1996) (citing *Matter of Walker v. Walker,* 86 N.Y.2d 624, 629, 635 N.Y.S.2d 152, 658 N.E.2d 1025 (1995)) (other citation omitted). "[E]ven if the statutory elements of multiple offenses overlap, sentences may be imposed to run consecutively when multiple offenses are committed through separate and distinct acts, though they are part of a single transaction." *Ramirez,* 89 N.Y.2d at 451, 654 N.Y.S.2d 998, 677 N.E.2d 722 (citing *People v. Laureano,* 87 N.Y.2d 640, 643, 642 N.Y.S.2d 150, 664 N.E.2d 1212 (1996)) (other citation omitted).

Long's assault on two different victims-Monell and Temple-clearly constitutes separate acts which permitted the county court to impose consecutive sentences. *See DeSordi v. Walker,* No. 98-CV-1351, slip op at 31-32 (N.D.N.Y. Mar. 7, 2002) (Sharpe, M.J.) ("the stabbing of separate victims clearly constituted separate acts, [rendering permissible] the imposition of consecutive sentences") (citations omitted), *adopted DeSordi v. Walker,* No. 98-CV-1351 (N.D.N.Y. July 30, 2002) (Kahn, J.), *aff'd,* 84 Fed.Appx. 160 (2d Cir. Jan.12, 2004), *cert. denied sub nom. DeSordi v. Burge,* 543 U.S. 811, 125 S.Ct. 44, 160 L.Ed.2d 15 (2004). Thus, the sentences imposed on Long, including the consecutive nature of some of those sentences, are clearly permitted by state law.

Arguably, this ground could be construed as a claim that the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle,* 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272; *see Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Eighth Amendment only forbids sentences which are "grossly disproportionate" to the crime). Sentences of imprisonment that are within the limits of valid state statutes are simply not cruel and unusual

punishment in the constitutional sense. *Brumfield v. Stinson,* 297 F.Supp.2d 607, 622 (W.D.N.Y.2003) (citing *Thompson v. Lord,* No. 97-CV-0792, 2002 WL 31678312, at \*8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.)) (other citations omitted) [, *adopted, Thompson v. Lord,* No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.) ].

Long has not provided anything in support of her petition which suggests that either the terms of imprisonment or consecutive nature of the sentences imposed on her is "grossly disproportionate" to her crimes. *E.g., Harmelin,* 501 U.S. at 995. This Court therefore finds no basis upon which it may properly find that Long is entitled to habeas relief due to the sentences she received as a consequence of her convictions and accordingly denies ground E in her petition.

**D.** *Failure to Consider Appeal of Denial of CPL 440.20 Motion*

**\*15** In her seventh and final ground, petitioner argues that although the Third Department granted her leave to appeal the denial of her CPL 440.20 Motion, that court nevertheless "refused to hear [s]aid motion" in violation of her constitutional rights. *See* Petition, Ground "G." [16]

This claim appears to allege that the Third Department wrongfully determined that Long failed to assert an appellate claim relating to her CPL 440.20 Motion and had therefore abandoned those claims. *See Long,* 291 A.D.2d at 721, 738 N.Y.S.2d 721. Therefore, this Court briefly reviews Long's CPL 440.20 Motion, together with the claims raised in her appellate brief, in order to ascertain whether the Third Department's determination that Long abandoned any appellate claim relating to the denial of her CPL 440.20 Motion is supported by the record.

Long's CPL 440.20 Motion alleged that the county court's imposition of consecutive sentences violated: i) the provisions of both the federal and New York State constitutions which prohibit individuals from being placed in Double Jeopardy; and ii) New York's Penal Law which addresses the issue of when a trial court may properly impose consecutive sentences. *See* CPL 440.20 Motion. Although Long's appellate brief made one brief reference to the CPL 440.20 Motion filed by Long, *see* App. Br. at 21, that brief never referred to any of the arguments asserted in the CPL 440.20 Motion. Nor did that brief incorporate by reference any of the claims asserted in that motion. *See* App. Br. Thus, the appellate brief never asserted as a basis for relief any

claim that the sentences imposed on Long violated the Double Jeopardy clauses of either the state or federal constitutions, or which argued that the consecutive nature of the sentences rendered them illegal under New York law. [17] *See* App. Br. Rather, the portion of the appellate brief which challenged the sentences imposed on Long was limited to an argument that the sentences were harsh and excessive. *See* App. Br. at 20-24.

The foregoing conclusively establishes that although Long was afforded the opportunity to challenge the denial of her CPL 440.20 Motion on appeal, appellate counsel chose, apparently for strategic reasons, to refrain from asserting any claims relating to the denial of that motion in counsel's direct appeal of Long's conviction. Thus, to the extent Long now seeks federal habeas relief based upon a claim that the Appellate Division erred in either: i) concluding that Long failed to assert any of the claims raised by her in her CPL 440.20 Motion on appeal; or ii) deeming Long to have abandoned those claims, this Court finds such claims to be contradicted by the record and entirely without merit.

### III. *CONCLUSION*

After carefully considering all of the submissions before the Court, the undersigned concludes that Long has procedurally defaulted on her claims which allege that: i) she was denied her right to a fair because testimony relating to an uncharged crime was admitted into evidence against her at trial; ii) the trial court mischaracterized the allegations asserted against her in Count Three of the Indictment; and iii) her sentences are illegal and violative of both the federal and New York state constitutions. Since petitioner has not established cause for her procedural default concerning such claims or that she is actually innocent of any of the crimes of which she stands convicted, this Court denies those claims as procedurally barred. Furthermore, after considering the remaining grounds raised by Long in her petition, this Court finds that such claims lack merit and do not afford Long a basis for federal habeas relief. Thus, those claims are denied on the merits.

**\*16** IT IS THEREFORE HEREBY

ORDERED, that Long's habeas petition (Dkt. No. 1) is DENIED and DISMISSED, and it is further

ORDERED, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action by regular or electronic mail, and it is further

ORDERED, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 1977435

Footnotes

1    Parson did not hear Long's gun discharge. Trial Tr. at 133.

2    The prosecution was unable to locate Temple prior to the date of Long's trial. Trial Tr. at 289.

3    The Appellate Division's decision might be liberally read as one that alternatively addressed the merits of this claim. *See Long,* 291 A.D.2d at 723, 738 N.Y.S.2d 721 (after noting Long's procedural default on the claim relating to the county court's misreading of Count Three of the Indictment, the Third Department opined that "were we to address the issue, we would find it without merit since all other trial references to Temple's wound correctly characterized its nature").

     Even assuming, *arguendo,* that the above cited language may properly be characterized as an (alternative) decision addressing the merits of this claim, the undersigned notes that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990); *Glenn v. Bartlett,* 98 F.3d 721, 724-25 (2d Cir.1996) (citing *Velasquez* ); *see also Olivo v. Thorton,* No. 05 CIV.3237, 2005 WL 3292542, at \*8 (S.D.N.Y. Dec. 6, 2005); *Broome v. Coughlin,* 871 F.Supp. 132, 134 (N.D.N.Y.1994) (Kaplan, J., sitting by designation). Therefore, this Court deems Long to have procedurally defaulted on this ground.

4    A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002).

5    Long was represented by Eugene Grenz, Eq. at her criminal trial, and by Theresa M. Suozzi, Esq. on appeal.

6    The petitioner bears the burden of demonstrating cause for her procedural default and resulting prejudice. *See Simpson v. Portuondo,* 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

7    Monell testified that on the date of the shooting, she inquired of Gause why she was asking Long to shoot Monell, however Gause responded by stating: "You better back up, you better back up." Trial Tr. at 165.

8    Long never claimed in the state courts that the evidence at trial was insufficient to establish her guilt of the assault charge relating to Monell. *See* App. Br. In fact, at trial, Long's defense counsel conceded that there was "a factual basis to send that [charge] to the jury." Trial Tr. at 350-51.

9    This Court discusses in more detail the evidence adduced at trial relating to Long's conviction on the assault of Temple *infra* in conjunction with Long's habeas challenge relating to the trial court's failure to grant her motion to dismiss the count in the Indictment accusing petitioner of that crime.

10   The petitioner bears the burden of proving actual innocence where he or she seeks federal review of procedurally defaulted habeas claims. *E.g., Speringo v. McLaughlin,* 202 F.Supp.2d 178, 189 (S.D.N.Y.2002).

11   That procedure under the CPL, which is now referred to as a request for a trial order of dismissal, is derived from the prior practice utilized to secure the same result-the directed verdict of acquittal. *Faux v. Jones,* 728 F.Supp. 903, 907 (W.D.N.Y.1990) (citing CPL § 290.10).

12   Unlike the evidence adduced at trial regarding shooting victim Monell, the testimony adduced at trial established that Temple merely happened to be a bystander near the TC Club at the time Long fired her weapon. Trial Tr. at 293-94.

13   This claim was asserted by Long in her direct appeal. *See* App. Br. at 20-24.

14   As to Long's claim relating to the United States Sentencing Guidelines, *see* Petition, Ground E, the Court finds that Long has not articulated how the United States Sentencing Guidelines are germane, in any way, to her convictions, which arose out of state court prosecutions based upon Long's violation of New York's penal laws.

15   The trial court imposed consecutive sentences with respect to the assault convictions; the sentence on the weapons possession conviction was ordered to run concurrent with the other sentences imposed by the county court. Record at 130-31.

16   In her seventh ground for relief, Long also refers to a "reconsideration motion." *See* Petition, Ground G. None of the state court records provided to this Court reflect any motion for reconsideration. Thus, it appears as though Long's reference to a "reconsideration motion" merely constitutes a typographical error on the part of petitioner.

17   As noted *ante* by this Court in addressing Long's claim that the imposed sentences were harsh and excessive, appellate counsel *conceded* in her brief that the sentences imposed by the trial court were "authorized by law." *See* App. Br. at 20.

---

**End of Document**                                  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

**Appeal Filed by** SMITH v. PEOPLE OF THE STATE NEW YORK,
2nd Cir.,    March 25, 2015

2015 WL 1036328
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

William Dupree SMITH, Petitioner,
v.
SUPERINTENDENT OF the WENDE
CORRECTIONAL FACILITY, Respondent.

No. 10–CV–901A.    |    Signed March
9, 2015.    |    Filed March 10, 2015.

**Attorneys and Law Firms**

William D. Smith, Woodbourne, NY, pro se.

Matthew B. Powers, Buffalo, NY, for Respondent.

## ORDER

RICHARD J. ARCARA, District Judge.

**\*1** The above-referenced case was referred to Magistrate
Judge H. Kenneth Schroeder, Jr., pursuant to 28
U.S.C. § 636(b)(1)(B). On January 13, 2015, Magistrate
Judge Schroeder filed a Report and Recommendation,
recommending that the petition for writ of habeas corpus
(Dkt. No. 10) filed by William Dupree Smith be denied.

The Court has carefully reviewed the Report and
Recommendation, the record in this case, and the pleadings
and materials submitted by the parties, and no objections
having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for
the reasons set forth in Magistrate Judge Schroeder's Report
and Recommendation, the petition for writ of habeas corpus
is denied.

The Clerk of Court shall take all steps necessary to close the
case.

IT IS SO ORDERED.

## REPORT, RECOMMENDATION AND ORDER

H. KENNETH SCHROEDER, JR., United States Magistrate
Judge.

This matter was referred to the undersigned by the Hon.
Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for
all pretrial matters and to hear and report upon dispositive
motions. Dkt. # 26.

Petitioner, an inmate of the New York State Department of
Corrections and Community Supervision ("NYSDOCCS"),
commenced this proceeding pursuant to 28 U.S.C. § 2254,
challenging his conviction following a plea of guilty before
the Hon. Thomas P. Franczyk, Erie County Court Judge, to
one count of attempted rape in the first degree, in violation
of New York Penal Law §§ 110.00 and 130.35(1). Dkt. #
10. Petitioner argues that he received ineffective assistance
of counsel and that his plea was not knowing, voluntary and
intelligent because it was entered without accommodation of
his hearing impairment. Dkt. # 10. Petitioner also argues that
his sentence of post-release supervision is illegal. Dkt. # 10.
For the following reasons, it is recommended that the petition
be denied.

## BACKGROUND

Petitioner was charged in an indictment with rape in the first
degree, rape in the second degree, sexual abuse in the first
degree and incest following DNA testing verifying that he
was the father of a baby born to a 13–year old girl who is
alleged to be his daughter.

At his first appearance before Judge Franczyk, petitioner's
counsel advised the Court that petitioner "has a hearing
impairment" and opined that he did not believe that
petitioner had heard anything placed on the record by
the Assistant District Attorney. 8/1/2007, p. 2. Judge
Franczyk inquired whether petitioner could hear him, to
which petitioner responded, "Yes." 8/1/2007, pp .2–3. Judge
Franczyk repeated the information placed on the record by
the Assistant District Attorney and then inquired whether
petitioner understood him and whether he had any questions.
8/1/2007, p. 4. Petitioner responded in the affirmative and
then, after an off the record discussion, stated: "Yes, I
understand." 8/1/2007, p. 4.

On October 24, 2007, the Assistant District Attorney informed the Court that it was her understanding that petitioner would plead guilty to attempted rape in the first degree, with a sentencing range between 5 and 12 years, as well as mandatory post-release supervision, an order of protection and sex offender registration. 10/24/2007, p. 2. Judge Franczyk inquired whether petitioner wanted to enter a guilty plea, prompting defense counsel to inform the Court that petitioner "has a hearing deficit." Judge Franczyk asked the court reporter to read the proceedings back to petitioner and confirmed that petitioner heard the court reporter and wanted to enter a plea of guilty. 10/24/2007, p. 3. Petitioner responded appropriately to the Clerk's inquiry as to his name, address, date of birth and telephone number. 10/24/2007, p. 4. Thereafter, the following exchange transpired:

**\*2**  [Court]: Mr. Smith, is your decision to go forward with this plea of guilty, made of your own free will?

[Petitioner]: Yes.

[Court]: Has anybody, including either the Court, counsel, district attorney's office or anyone in law enforcement forced you in any way to take this plea?

[Petitioner]: No.

[Court]: Have you had enough time to discuss this case with [your lawyer], in particular your rights, your options, and the possible consequences of your choices?

[Petitioner]: Yes.

[Court]: Has he answered all of your questions to your satisfaction?

[Petitioner]: Yes.

[Court]: So I take it then that you are satisfied with his representation of you?

[Petitioner]: Yes.

[Court]: Okay. Let me repeat for the record what the Court's sentence limitations will be. That if you take this plea, under count one, to the lesser included offense of attempted rape in the first degree, which is a class C violent felony, the Court will commit to a sentencing range of a determinate sentence of anywhere between five and twelve years, to be followed by two and a half to five years of post-release supervision. You will also be

required to register as a sex offender, and will be required to sign an order of protection. Is that your understanding of the Court's sentence commitment?

[Petitioner]: Yes.

[Court]: Has anybody made any other promise of commitment to you, with respect to possible sentence?

[Petitioner]: No.

[Court]: Do you understand that a plea of guilty has the same legal force and effect as if you had gone to trial and been found guilty of this particular charge by a jury?

[Petitioner]: Yes.

[Court]: Do you understand, however, that by taking the plea, you are giving up your right to have a jury trial?

[Petitioner]: Yes.

[Court]: That means, then, that you will not require the People to attempt to prove your guilt beyond a reasonable doubt to the satisfaction of twelve jurors, you're giving up your right, therefore, to have your attorney cross-examine those witnesses, as well as the right to present witnesses in your own behalf, including yourself, do you understand all that?

[Petitioner]: Yes.

[Court]: You understand further, that you're also giving up your right to appeal the conviction and the sentence to a higher court?

[Petitioner]: Yes.

[Court]: Are you offering to plead guilty to this particular count because, in fact, you are guilty of this charge?

[Petitioner]: Yes.

10/24/2007, pp. 5–6. Petitioner then agreed to the facts underlying the charge as set forth on the record by the Assistant District Attorney and confirmed his guilty plea. 10/24/2007, pp. 7–8.

At sentencing, defense counsel reminded the Court that petitioner is "hearing impaired" and requested that the Assistant District Attorney "talk into the microphone, maybe that will help." 2/14/2008, pp. 2–3. Petitioner thereafter responded affirmatively to the Court's inquiry as to whether

he understood that he was being sentenced as a second felony offender. 2/14/2008, pp. 4–5. When asked if he wished to be heard, petitioner responded:

> **\*3** Yes, I would like to apologize for anybody that I hurt. I like to apologize to the family of the victim, the family, the victim, I mean this sincerest from my heart.

2/14/2008, p. 10. The Court sentenced petitioner to a determinate term of incarceration of twelve years. 2/14/2008, p. 11. Judge Franczyk also informed petitioner that:

> There is a period of post-release supervision that will be 12 years as well. The Court hereby certifies you to be a sexual offender under Article 168. You are advised—if you can't hear me, please tell me.

2/14/2008. Petitioner responded, "No, I can't hear," prompting the Court to repeat what had been said. 2/14/2008, p. 11. After explaining the consequences of being certified as a sexual offender, Judge Franczyk inquired whether petitioner understood that he would have the right to be present at the hearing which would determine his sex offender category. 2/14/2008, pp. 12–13. Petitioner responded affirmatively. 2/14/2008, p. 13. Petitioner also responded affirmatively when asked if he understood the requirements of the order of protection as explained by the judge and signed the order of protection when asked to do so. 2/14/2008, p. 14.

On April 22, 2008, NYSDOCCS advised Judge Franczyk that

> The commitment indicates the defendant was sentenced as a second felony offender to a period of post-release supervision that is more than five years. Penal Law 70.45(2) requires the period of post-release supervision to be five years. Longer periods are permissible for sex offenses committed after April 2007.

In response, Judge Franczyk set a date to entertain a motion to set aside the post-release supervision portion of the sentence. At the request of defense counsel, that date was adjourned and continued to be postponed while petitioner received treatment for ear infections and awaited receipt of hearing aides.

On appeal to the New York State Appellate Division, Fourth Department, petitioner argued that: (1) his plea was not entered knowingly due to "his hearing difficulties and borderline IQ;" (2) the imposition of 12 years post-release supervision violated the terms of the plea agreement; and (3) the sentence of 12 years post-release supervision was illegal. The People conceded that because the crime occurred prior to the April 13, 2007 effective date of New York Penal Law § 70.45(2–a)(h), it was improper to sentence him to twelve years post-release supervision and requested a modification of the period of post-release supervision to five years. By Order entered June 5, 2009, the Appellate Division determined that

> Defendant failed to preserve for our review his contention that his plea was not knowingly entered and in any event that contention is without merit. Defendant also failed to preserve for our review his contention that County Court erred in imposing an enhanced sentence without affording him the opportunity to withdraw his plea. We note, however, that the People correctly concede that the enhanced sentence is illegal. At the time the defendant committed the crime of which he was convicted, the maximum period of postrelease supervision that could be imposed for a class C violent felony conviction was five years. We therefore modify the judgment by reducing the period of postrelease supervision to a period of five years. Because the sentence as modified complies with the plea agreement, the sentence is no longer improperly enhanced.

**\*4** *People v. Smith,* 63 A.D.3d 1625, 879 N.Y.S.2d 650 (4th Dep't.) (internal citations omitted), *lv denied,* 13 N.Y.3d 800, 887 N.Y.S.2d 549, 916 N.E.2d 444 (2009).

On June 4, 2011, petitioner filed a Motion to Vacate his sentence pursuant to New York Criminal Procedure Law ("NYCPL"), § 440.20 on the ground that: (1) his guilty plea was not knowingly and voluntarily entered because of the Court's failure to accommodate petitioner's hearing impairment; (2) counsel was ineffective for failing to ensure that petitioner could hear what was transpiring in court

and failing to object to the illegal sentence; and (3) the imposition of twelve years post-release supervision was illegal. Petitioner attached to his motion a copy of a hearing evaluation from Buffalo Hearing and Speech Center, dated March 22, 2007, concluding that:

> Test results continue to reveal severe/ profound hearing loss 250–8000 HZ bilaterally. The loss is mixed in nature in at least one ear. Please note, results were judged to be of fair reliability. Word discrimination scores were judged to be good in the left ear and fair in the right ear.

By Memorandum and Order entered October 21, 2011, Judge Franczyk deemed the motion a motion to vacate his guilty plea pursuant to NYCPL § 440.10 and denied the motion on the ground that "defense counsel exercised the skill and diligence that one could expect from an experienced trial attorney," stating, "[i]t is apparent the defendant was provided with a capable and competent counsel who pursued effective representation through all states of the proceedings." In addition, Judge Franczyk determined that

> An examination of the record reveals that this court engaged in a thorough, careful and thoughtful discussion of the effects of pleading guilty and not going to trial. The record is further clear that this court not only discussed the legal principles involved in a guilty plea with the instant defendant, but also with the defendant's attorney. The court went so far as to ask the defendant whether or not he discussed the plea with his attorney. The defendant replied that he had and that he understood the nature and consequences of the plea. This court also asked the defendant on the record whether anyone was forcing him or coercing him into pleading guilty. The defendant answered in the negative. At no time during the plea proceeding did the defendant indicate to the court that he was unable to hear [what] was taking place in court. He evinced no difficulty in hearing the questions put to him by the court

and appeared to understand what was transpiring at the plea proceeding. It is therefore patent that the guilty plea was made knowingly, intelligently and voluntarily.

A Memorandum from the Appellate Division indicates that petitioner's motion for leave to appeal Judge Franczyk's denial of the motion to vacate was returned for failure to include all necessary papers.

## DISCUSSION AND ANALYSIS

### AEDPA Review

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), where a state court has adjudicated the merits of a petitioner's claim, relief may not be granted unless the state court's adjudication:

> **\*5** (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The amended standard of § 2254(d)(1) requires the federal court to give considerably more deference to the state court's legal determinations than did the pre-AEDPA standard. As stated by the United States Supreme Court:

> § 2254(d)(1) places a new constraint on the power of a federal *habeas* court to grant a state prisoner's application for a writ of *habeas corpus* with respect to claims adjudicated on the merits in state court.... Under the "contrary to" clause, a federal *habeas* court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the

"unreasonable application" clause, a federal *habeas* court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Thus, a federal court may only grant habeas relief where the state court's application of clearly established federal law was not only erroneous, but objectively unreasonable. *Williams,* 529 U.S. at 409; *see Yarborough v. Alvarado,* 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter.").

### Exhaustion & Procedural Default

Before a federal court can address the merits of any federal issue contained in a petition for a writ of *habeas corpus,* the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *See O'Sullivan v. Boerckel,* 526 U.S. 838, 843–44, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). "Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained." *Hogan v. Ward,* 998 F.Supp. 290, 293 (W.D.N.Y.1998), *citing Daye v. Attorney General of the State of New York,* 696 F.2d 186, 190 n. 3 (2d Cir.1982); *see O'Sullivan,* 526 U.S. at 839–40 ("a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement.").

The same concerns that bar federal *habeas* review of unexhausted claims also bar federal *habeas* review of claims that have been procedurally defaulted in state court. *See Coleman v. Thompson,* 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Federal courts may address the merits of a claim that was procedurally defaulted in state court only upon a showing of cause for the default and prejudice resulting from the alleged violation of federal law, or, that a fundamental miscarriage of justice would occur if the Court declines to consider the claim. *Id.* at 750. Cause may be

demonstrated with a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by state officials' made compliance impracticable or that the procedural default is the result of ineffective assistance of counsel. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

### Legality of Post–Release Supervision

**\*6** Petitioner exhausted his claim that the imposition of a twelve years of post-release supervision was illegal and beyond the scope of his plea agreement by presenting it to the Appellate Division, which modified the term of post-release supervision to five years as permitted under the relevant section of New York Penal Law § 70.45(2) and as set forth on the record during petitioner's plea allocution. As petitioner has received the relief he has requested with respect to his term of post-release supervision, it is recommended that this aspect of his petition for writ of *habeas corpus* be denied as moot.

### Ineffective Assistance of Counsel

"The two-part standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 ... (1984), for evaluating ineffective assistance of counsel claims applies in the context of guilty pleas." *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir.1996), *citing Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

First, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 697–88 ... Second, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59 ...

*Id.*

In the instant case, petitioner does not argue that he did not receive effective assistance of counsel regarding his decision to plead guilty, and the record does not support any such claim. To the contrary, the record reveals that despite DNA evidence establishing petitioner as the father of the child born to a 13–year old girl identified as his daughter, an agreement was reached to allow petitioner plead guilty to attempted rape with a maximum sentencing commitment of twelve years. Instead, petitioner argues that counsel was ineffective for failing to object to the fact

that petitioner was unable to hear what was going on in court because of his hearing impairment and for failing to object to the illegal term of post-release supervision. Although petitioner presented this claim to the trial court in a motion to vacate his guilty plea, it does not appear that he sought leave to appeal that decision, rendering this claim unexhausted, if not procedurally defaulted. *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990); *Weeks v. Senkowski,* 275 F.Supp.2d 331, 341 (2d Cir.2003). In any event, the record is clear that defense counsel raised petitioner's hearing impairment at every proceeding before Judge Franczyk and that Judge Franczyk confirmed that petitioner was able to hear the proceedings. In addition, as set forth above, any argument with respect to the term of post-release supervision is moot. Thus, it is recommended that the claim of ineffective assistance of counsel be denied. *See* 28 U.S.C. § 2254(b) (2) (permitting district court to deny petition containing unexhausted claims on the merits).

**Voluntariness of Plea**

**\*7** Petitioner exhausted his claim that his plea was not knowing and voluntary because of his hearing impairment by presenting it to the Appellate Division and being denied leave to appeal to the New York State Court of Appeals. However, the Appellate Division's determination that petitioner failed to preserve this claim for review renders the claim procedurally defaulted. *See Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) ("federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."); *Ross v. Superintendent,* No. 10–CV–147, 2013 WL 2128808, at \*5 (E.D.N.Y. May 15, 2013) ("Under New York law, in order to preserve a claim on direct appeal challenging the voluntariness of a guilty plea on a particular ground, the petitioner must have moved the trial court to withdraw the plea on that ground."). "Petitioner's subsequent motion to vacate his conviction pursuant to N.Y.C.P.L.R. § 440.10 on the ground that his plea was not knowing and voluntary cannot resuscitate his claim for federal habeas review." *Ross,* 2013 WL 2128808, at \*5.

To the extent that petitioner's allegations of ineffective assistance of counsel could be used to demonstrate cause and prejudice, such claims are, as discussed above, without merit. Moreover, petitioner does not claim innocence. In any event, the record clearly demonstrates that petitioner's plea was knowing, voluntary and intelligent. At the plea proceeding, defense counsel informed the Court that petitioner "has a

hearing deficit," prompting the Court to direct the Court Reporter to read back what had been said on the record so far and to confirm that petitioner was able to hear the court reporter and that he wished to plead guilty. Thereafter, petitioner responded appropriately to the Court Clerk when asked for his name, address, date of birth and telephone number. Petitioner also responded appropriately to the Court's inquiries regarding petitioner's understanding of the rights he was waiving by pleading guilty, the facts underlying the charge to which he was pleading guilty and the consequences of that plea. In addition, petitioner also agreed that he was afforded sufficient opportunity to discuss the plea agreement with defense counsel and expressed satisfaction with defense counsel's representation. In other words, there is simply no suggestion on this record that petitioner's hearing impairment interfered with petitioner's ability to enter a valid plea of guilty.

### *CONCLUSION*

Based on the foregoing, it is recommended that the petition for writ of habeas corpus be **DENIED.**

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b) (1) that:

This Report, Recommendation and Order be filed with the Clerk of the

Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

**\*8** The district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson–Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106

S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of* Rule 72(b) *may result in the District Judge's refusal to consider the objection .*

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

Filed Jan. 13, 2015.

**All Citations**

Slip Copy, 2015 WL 1036328

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.